IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

ANGELA MILNER,          *
SHAKIR WILLIAMS,        *
RASHEEDAH MAYS,         *
AMEERA BREWER,          *
                        *          CIVIL ACTION FILE
                        *           NO.
                        *
        PLAINTIFFS,     *
                        *
vs.                     *
                        *
TERI GALARDI, an individual,    *
                        *
        DEFENDANT.      *

### PLAINTIFFS' COMPLAINT FOR VIOLATING ARTICLE X, SECTION 24 OF THE FLORIDA CONSTITUTION AND THE FLORIDA MINIMUM WAGE ACT

NOW COME the above named Plaintiffs, and hereby state their claims against

the above named Defendant, respectfully showing the Court the following:

### INTRODUCTION

Defendant Teri Galardi has amassed a financial fortune in the strip club

business, by in large part, deception and trickery.  Thousands of employees (exotic

dancers) across the country have been paying her to work, on average $100-$400 a

day.  But the scheme does not stop there.  Defendant Galardi also steals up to 10% of

her employee's earning each day.  The 10% illegal tax on earnings must be paid in

cash before they leave the club or else face extremely dire repercussions from her

enforcers at the clubs.   These illegal club policies, otherwise known as wage theft, is

in fact a crime in Miami-Dade County, Florida.  Plaintiffs all worked at the King of

Diamonds located in Miami, Florida, and each were victims of the crime of wage theft

as alleged herein, perpetrated by the Defendant, Mrs. Teri Galardi.

## SUBJECT MATTER JURISDICTION

### 1.

The Court has jurisdiction to adjudicate the Plaintiffs' claims based on complete

diversity of the parties and being that the amount in controversy is over seventy five

thousand dollars ($75,000).  The combined total amount of unliquidated damages are in

excess of five hundred thousand dollars ($500,000).

## VENUE

### 2.

Venue is proper in the Southern District of Florida, under 28 U.S.C. §1391(b)(2),

because a substantial part of the events or omissions giving rise to the claims alleged

herein occurred in this judicial district.

## PARTIES TO THE COMPLAINT

### 3.

Plaintiff ANGELA MILNER  is a  resident of the State of Florida and was

previously employed by Defendant Galardi during the applicable limitations period

(2009 to 2014) as a dancers-entertainers at the Gentleman's Club known as "King of

Diamonds" located at 17800 NE Fifth Avenue, Miami, FL., 33160, by Defendant

Galardi.

**4.**

Plaintiff SHAKIR WILLIAMS is a resident of the State of Florida and was previously employed by Defendant Galardi during the applicable limitations period (2011 to 2014) as dancers-entertainers at the Gentleman's Club known as "King of Diamonds" located at 17800 NE Fifth Avenue, Miami, FL., 33160.

**5.**

Plaintiff RASHEED MAYS is a resident of the State of Florida and was previously employed by Defendant Galardi during the applicable limitations period (2010 to 2014) as dancers-entertainers at the Gentleman's Club known as "King of Diamonds" located at 17800 NE Fifth Avenue, Miami, FL., 33160.

**6.**

Plaintiff AMEERA BREWER is a resident of the State of Florida and was previously employed by Defendant Galardi during the applicable limitations period (2011 to 2014) as dancers-entertainers at the Gentleman's Club known as "King of Diamonds" located at 17800 NE Fifth Avenue, Miami, FL., 33160.

**7.**

Defendant Mrs. TERI GALARDI is domiciled in and a resident of the State of Georgia.  Defendant Galardi was the CEO and controlling shareholder Fly Low, Inc, dba King of Diamonds.

**8.**

All of the named Plaintiffs in this action were previously class members in a certified Rule 23 class action suit, <u>Espinoza et al v. Galardi South Enterprises, Inc., et al</u>, Civil Action File No. 14-cv-21244-Goodman, filed in the United States District Court for the Southern District of Florida on April 8, 2014, which also alleged violations of Article X, Section 24 of the Florida Constitution and Fl. Stat. 448.110 against the same Defendant Galardi named herein.

**9.**

Those claims were certified as a Rule 23 Class Action on January 11, 2016, in <u>Espinoza</u>, but were dismissed without prejudice on April 10, 2018, when the Court determined that it would not exercise supplemental federal jurisdiction over such claims.

**10.**

The limitations period applicable to the state law claims of the <u>Espinoza</u> class members was therefore tolled on April 8, 2014, and remained tolled until May 10, 2018. 28 U.S.C. Sec. 1367(d); <u>Griffin v. Singletary</u>, 17 F.3d 1356 (11th Cir. 1994); <u>American Pipe & Construction Co. v. U</u>tah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974);  <u>Crown, Cork & Seal Co. v. P</u>arker, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983);  <u>Latman v. Costa Cruise Li</u>nes, 758 So.2d 699 (District Court of Appeal of Florida, Division 3, 2000); <u>Kornberg v. Carnival Cr</u>uise, 7412d 1332 (11th Cir. 1984); <u>Sacred Health Health Service v Humana Military He</u>althcare, 2008 WL

2385506 (N.D. Fl. 2008); <u>Raie v. Cheminova, In</u>c., 336 F.3d 1278, 1282 (11th Cir.2003); <u>Barkley v. Pizza Hu</u>t, 2015 WL 5008468 (M.D. Fla. 2015).

**11.**

Defendant Mrs. Teri Galardi (hereinafter "Galardi" or "Defendant") is a natural person who, although previously resided in the State of Florida between 2008 and 2017, is currently a resident of Butts County located in the State of Georgia, who has a long history of actively attempting to avoid service in matters involving her management and operation of strip clubs under her control and direction.

**12.**

For more than ten (10) years Galardi has frequently and routinely operated, conducted, and engaged in, and carried out a business or business venture in the State of Florida, including owning and/or operating numerous businesses licensed to do business within the State of Florida.

**13.**

True and accurate copies of Annual Reports filed with the Florida Secretary of State showing, for calendar year 2018, Galardi's positions with various Florida Business entities are attached hereto as **Exhibit "1":**

| Date | Entity | Galardi Position |
|------|--------|------------------|
| 4/18/18 | 506 Office, LLC | MGR |
| 3/29/18 | 823 Lounge, Inc | PST (President, Secretary, Treasurer) |
| 4/19/18 | Fly Low, Inc. | PST |
| 4/9/18 | Galardi Eagle Lakes, LLC | MGRM |
| 4/18/18 | Jack E. Galardi, LLC | MGRM |
| 4/24/18 | Nick 3 Mind Body S | MGR |
| 3/29/18 | Porgal, Inc | PST |
| 3/29/18 | Sugarmom, LLC | MGRM |

**14.**

During calendar years 2008 to 2018, Defendant Galardi actively served as the President, Secretary, and Treasurer of Fly Low, Inc, dba King of Diamonds.

**15.**

During the time period 2008 until 2014, Defendant Galardi actively managed and directed the terms and conditions of Fly Low/KOD employees, as more specifically alleged herein. The acceptance by Defendant Galardi of the privilege of operating, conducting, engaging in and carrying on a business or business venture in the State of Florida constituted her appointment of the Secretary of State of Florida to act as her agent, upon whom process in any action arising from her management and direction of Defendant Fly Low may be served.  Defendant Galardi is subject to the personal jurisdiction of this Court.

**16.**

During the pertinent time frame , Defendant Galardi engaged in concerted and related activities for the common business purpose of making money, and have previously admitted, in judicio, that

     a.    Defendant had employees engaged in the handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person (including but not limited to alcoholic beverages and other commodities manufactured/created in States outside of Florida); and

     b.     they had an annual gross volume of sales or business done of not less than $500,000.00.

## FACTUAL ALLEGATIONS

### 17.

As of November, 2008, Defendant Galardi and her Father, Jack Galardi, and/or the Jack E. Galardi Trust, owned and operated not fewer than six "Gentlemen's Clubs" located in Florida, Georgia, South Carolina, and Las Vegas, Nevada.

### 18.

Each Galardi-controlled Club was ostensibly owned by a separate shell corporation, for example,

    a.    Fly Low, Inc. (Fl) operated the King of Diamonds in Miami, Fl;

    b.    Bella Mia, Inc. (Fl) operated the Pink Pony in Doral, Fl;

    c.    Funnytime, Inc., operated the Pink Pony Pompano;

    d.    Trop. Inc. (Ga) operated the Pink Pony in Atlanta, Ga.;

    e.    Pony Tail, Inc. (Ga) operated Club Onyx in Atlanta, Ga.;

    f.    Country Club, Inc. (Ga) operated the Goldrush in Atlanta, Ga.;

    g.    Country Club, Inc., (SC) operated the Masters, in Myrtle Beach, SC; and

    h.    La Fuente, Inc. (Nev) and operated Cheetahs in Las Vegas, Nev.,

all of which were in turn owned by Teri Galardi.

### 19.

At all times pertinent to this litigation, Galardi South Enterprises Consulting, Inc. (and/or its predecessor, Galardi South Enterprises, Inc.) were Georgia Corporations, through which Defendant Galardi and her agent/servant Dennis Williams

operated as the centralized, Galardi-owned management company, which directed all of the subsidiary shell corporations which directly owned the respective clubs.

### 20.

At all pertinent times to this complaint, all of the Galardi-controlled "Gentlemen's Clubs" operated under a common business model initially implemented by Jack Galardi, and known of, approved and enforced by Jack Galardi and his daughter,  Defendant Teri Galardi.

### 21.

As pertains to Club Dancers, the common business model applicable at all Galardi-controlled strip clubs was as follows:

    a.  Due to unequal bargaining power, dancers were forced to sign "independent contractor" agreements at the outset of their employment, and were thereafter classified as "independent contractors" rather than "employees";

    b.  Dancers received no wages whatsoever from the Clubs for whom they worked; instead,  all of their compensation was received directly from  Club customers;

    c.  As to Dancers, the Galardi-controlled clubs paid no Federal or State employer payroll taxes, social security contributions, worker's compensations insurance premiums, or unemployment compensation insuranace;

    d.  Dancers were forced to pay fees to and on behalf of the Club for the privilege of working at the Club;

    e.  Dancers were subject to immediate, direct, and pervasive control by the Clubs for whom they worked (including Fly Low - King of Diamonds), and by Jack and Teri Galardi, in the form of oral and written work rules, enforced via pervasive supervision and direction, disciplinary fines, suspensions, and other sanctions;

**22.**

A true and accurate copy of "Galardi South Enterprises Consulting, Inc. And It's Affiliate Clubs Rules of Conduct For Employees And Contractors" specifying thirty two (32) applicable rules, is attached hereto as **Exhibit "2".**

**23.**

On July 31, 2009, a group of eight (8) dancers employed at one of the Galardi-controlled clubs (Club Onyx in Atlanta, Ga), sued Galardi South Enterprises, Inc. d/b/a The Onyx, in the United States District Court For The Northern District of Georgia alleging a claim under the Fair Labor Standards Act, 29 U.S.C. Sec. 206, et. seq., that they had been misclassified by the Club as "independent contractors" (instead of "employees"), and that as a result, had not received from the the Club the federally-mandated minimum wage of $7.25 per hour. *Clincy et al v. Galardi South Enterprises, Inc., d/b/a Club Onxy",* Civil Action File No. 1:09-cv-02082-RWS (N.D. Ga) ("Clincy")

**24.**

Galardi South Enterprises, Inc., and its successor corporation, Galardi South Enterprises Consulting, Inc., were and continue to be the management companies through which Jack Galardi and his daughter, Defendant Teri Galardi managed the operations of the various strip clubs encompassed under the "Galardi South" umbrella.

**25.**

On August 28, 2009, the *Clincy* Plaintiffs filed a Second Amended Complaint

adding certain Defendants, including: Galardi South Enterprises Consulting, Inc., Pony

Tail, Inc., Mike Kap, and Jack Galardi.

**26.**

During the summary judgment briefing in *Clincy*, the Galardi-dancer plaintiffs cited

to numerous prior cases in which Courts had held that exotic dancers were "employees"

and were NOT "independent contractors".

**27.**

For example, on October 14, 2010, the *Clincy* Plaintiffs included the following

passage in their summary judgment brief:   "As stated by one court in this circuit,

> "Arrangements factually similar to the one in this case have
> been tested by federal courts in Texas, Indiana and
> Colorado. See <u>Reich v. Circle C. Investments, Inc</u>., 998
> F.2d 324 (5th Cir.1993) (whether dancer was "employee"
> under FLSA); <u>Reich v. ABC/York–Estes C</u>orp., 1997 WL
> 264379 (N.D.Ill.1997) (whether dance fees were "tips"
> under FLSA); <u>Reich v. Priba C</u>orp., 890 F.Supp. 586
> (N.D.Tex.1995) (whether dancer was "employee" under
> FLSA); <u>Reich v. ABC/York–Estes C</u>orp., 157 F.R.D. 668
> (N.D.Ill.1994) (whether dance fees were "tips" under
> FLSA), rev'd on other *1348 grounds, 64 F.3d 316 (7th
> Cir.1995); <u>Martin v. Priba C</u>orp., 1992 WL 486911
> (N.D.Tex.) (whether dancer was "employee" under
> FLSA); <u>Martin v. Circle C Investments, Inc</u>., 1991 WL
> 338239 (W.D.Tex.); <u>Donovan v. Tavern Talent &</u>
> <u>Placements, In</u>c., 1986 WL 32746 (D.Colo.) (whether
> "tips" could be used to offset completely the minimum
> wage requirement). Without exception, these courts have
> found an employment relationship and required the
> nightclub to pay its dancers a minimum wage."

quoting, <u>Harrell v. Diamond A Entertainment, Inc</u>, 992 F.Supp. 1343, 1347-48 (M.D. Fl. 1997)

**28.**

Defendant Teri Galardi and her father, Jack Galardi, knew of the holdings in <u>Harrell</u> and the cases cited therein (holding that dancers at "Gentlemen's Clubs" were not "independent contractors", but were instead, as a matter of law, "employees") in or about 1997, the sources of such knowledge being:

a.   Dennis Williams, a Galardi South Enterprise Consulting, Inc., senior executive tasked with corporate-wide FLSA legal monitoring and compliance;

b.   news reports in various form of media;

c.   adult entertainment club trade associations (including but not limited to the "Association of Club Executives" ("ACE"), and the "American Entertainment Association");

d.   trade publications (including but not limited to "Club Bulletin" Magazine"— www.EDpublications.com);

e.   legal seminars at adult entertainment conventions;

f.   information provided by executives employed at non-Galardi affiliated clubs;

g.   their own legal counsel.

**29.**

On September 7, 2011, relying on <u>Harrell</u> and the cases cited therein, the *Clincy* trial court granted summary judgment in the dancers' favor, holding that, as a matter of law, Club Onyx dancers were "employees" and were NOT "independent contractors"

- an outcome of which Defendant Teri Galardi was aware of at the time because she has testified in numerous depositions to this undisputed fact.

**30.**

*Clincy* was ultimately settled in exchange for payment of $1,550,000 in June of 2012.

**31.**

Jack Galardi died on December 1, 2012 at the age of 81, after suffering from poor heath and repeated hospitalizations during his last few years of life (including the removal of a lung in 2010).

**32.**

Due to his failing health, during the last few years of his life, Jack Galardi could no longer care for himself without active assistance, and could not carry out the duties he previously performed managing and directing the various stip clubs he owned and controlled.

**33.**

Due to Jack Galardi's declining health, Defendant Teri Galardi lived with and cared for him during the last few years of his life, and actively assisted him and participated in the carrying out of the business affairs of the various Galardi-controlled strip clubs.  Due to Mr. Galardi's poor health, he was hard to understand when he spoke, he could not hear very well, and did not use a cellular phone or email.

**34.**

Based on her direct and extensive involvement in the family business during

that last years of Jack Galardi's life, and based on information provided to her by Dennis Williams, and other sources, Defendant Teri Galardi was personally aware of the *Clincy* litigation from its inception, including the adverse summary judgment outcome in 2011, and she was also aware of the previous adverse decisions cited in the *Clincy* summary judgment order not later than April of 2008.

**35.**

Fly Low began doing business as the "King of Diamonds" ("KOD") in November of 2008.

**36.**

Defendant Galardi purchased a home located at 15820 SW 53 Court, Southwest Ranches, Florida, 30216, on or about September 15, 2008 worth in excess of one millions dollars ($1,000.000) for cash.

**37.**

Defendant Galardi was the President, Secretary and Treasurer of Defendant Fly Low, Inc., since at least 2008, and continued to hold those positions as of 2018. True and accurate copies of Annual Reports filed with the Florid Secretary of State for Defendant Fly Low, Inc., showing Defendant Galardi to be the President, Secretary and Treasurer of Defendant Fly Low from 2008-2018, are submitted herewith as **Exhibit "3".**

**38.**

Between December 1, 2012 and 2018, Galardi was the sole shareholder of

Defendant Fly Low.

**39.**

At all times during the applicable limitations period, Defendant Galardi, willfully mischaracterized all dancers/entertainers employed at KOD as "independent contractors" with full knowledge that doing so constituted violations of both Article X, Section 24 of the Florida Constitution ("Section 24") and the Florida Minimum Wage Act, Fl. St. 441.110 ("FMWA"), as well as the Fair Labor Standards Act, 29 U.S.C. §206 et seq, resulting in her failure and refusal to pay any wages or compensation to the Plaintiffs.

**40.**

At all times pertinent to this action, Defendant Galardi knew of and approved of the mischaracterization of KOD dancers as independent contractors, despite her actual knowledge that this practice constituted a violation of Article X and the FMWA, as well as the Fair Labor Standards Act.

**41.**

Defendant Galardi then took this misdeed a step further and charged the Plaintiffs to work each day at the King of Diamonds.

**42.**

The job duties of KOD dancers consisted primarily of dancing on stage during the stage rotation, and performing personal dances (also called "lap dances" or "private dances") for customers, and spending time in semi-private rooms.

**43.**

At all times during the applicable limitations period, Defendant Galardi exercised a great degree of operational and management control over the King of Diamonds operation, including:

a.  its location, its days of operations;

b.  its hours of operation;

c.  its theme and motif;

d.  selection and acquisition of its furnishings;

e.  the creation and implementation of club policies, practices, and procedures,

f.  the hiring and firing of club personnel;

g.  and the terms and conditions of employment applicable to club employees (Plaintiffs);

h.  choosing the legal forum to adjudicate legal disputes (many dancers were forced to sign arbitration agreements that included class action waivers).

**44.**

At all times pertinent to this action, Defendant required entertainers to audition in order to be hired; however, an entertainer's physical appearance and not any level of dance, performance, or sales skill determined their suitability to perform at KOD. No prior experience or training was required to be hired as a dancer-entertainer.

**45.**

Defendant Galardi herself, or through authorized agents imposed upon the Plaintiffs a corporate-wide, uniform rules, written guidelines and policies, as well as

verbal directives, which governed all aspects of the work to be performed by KOD dancers/entertainers.

**46.**

Defendant Galardi and her agents required KOD dancers to dance on stage according to a stage rotation established by Defendant or her agents, including the disk jockey ("DJ").

**47.**

Defendant, through her authorized agents, placed dancers/entertainers into the stage rotation and were required to dance at the time their name was called. Each stage dance was required to last for a specified number of songs. Entertainers were told how much clothing to remove during each song, i.e., top only during the first song, and then all clothing, save a G-String, during the second song, and fully nude during the third song.

**48.**

Defendant, through her authorized agents, controlled the music played in the club, and dancers/entertainers were not allowed by the Defendant to choose the songs that were played while they danced.

**49.**

Defendant, through her authorized agents set the price of personal dances performed for KOD customers. The price for a personal dance was the same regardless of which entertainer performed the dance. KOD dancers were not allowed to charge a different price than the price established by Defendant, through her agents.  Plaintiffs

were not allowed to choose the song that played during personal dances.

**50.**

Pursuant to company practices established by the Defendant, Plaintiffs and other dancers/entertainers spent time in private rooms with customers. The price paid by Plaintiffs for time in a private room was set by Defendant's authorized agents and was the same regardless of which entertainer was spending time in the private room with a customer(s) or by herself.

**51.**

Defendant's authorized agents required KOD dancers to collect and account for monies received directly from KOD customers, and specified a method for the money to be collected and counted by other KOD employees.

**52.**

Defendant's authorized agents controlled the number of days KOD dancers worked and the times they worked by:

    a.    requiring them to work a minimum number of shifts per week (four), including two "slow" days";

    b.    charging them larger amounts as "house fees" if they worked fewer than the minimum number of shifts per week; and

    c.    and charging them an escalating scale of "house fees" depending on the time they arrived at work, i.e, the later the arrival, the more the "house fee."

**53.**

Defendant, through her appointed agents supervised, regulated, and controlled entertainers' attire and appearance, including prohibiting certain attire/accessories, or insisting that specified attire be worn, and reserving the right to determine the acceptability of dancers' appearance before beginning work.

**54.**

Based on negotiations conducted by Defendant Galardi herself, KOD was sold in July, 2014, for more then six million dollars ($6,000,000). Prior to that time Plaintiffs were routinely required by Defendant's authorized agents to attend meetings at Defendant's business (KOD), for which they receive no compensation whatsoever, on pain of being suspended or otherwise severely disciplined or terminated.

**55.**

Defendant Galardi financed and made all decisions governing all advertising, marketing, and promotional efforts undertaken on behalf of the club, as well as: club location, club hours of operation; club theme-motif, food and beverage selection and inventory, cover charges, house fees paid to the club and handled all legal disputes that were club related.

**55.**

Defendant Galardi, through her agents, controlled virtually every aspect of the Club's operations which were determinative as to the amounts of monies dancers could earn while working at KOD.

**56.**

Defendant Galardi made substantial capital and other investments in KOD's facilities, maintenance, sound system, lights, in addition to payroll, taxes, licenses, insurance, rent and food and beverage and inventory. Plaintiffs did not contribute money towards maintaining Defendant's club premises or otherwise provide facilities at the club.

**57.**

Despite the fact that Plaintiffs were "employees", they were nonetheless required by Defendant to pay for Club mandated costumes, shoes, accessories, make-up, hair styling, manicures and pedicures.

**58.**

Even taking into account Plaintiff's required investments in the costumes, shoes, accessories, make-up, hair styling, manicures, and pedicures, Defendant's investment in the KOD operation substantially dwarfed Plaintiff's Club-mandated investments.

**59.**

Defendant's authorized agents made all hiring decisions regarding waitstaff, security, entertainer, managerial and all other employees at all Galardi owned night clubs including KOD.

**60.**

Defendant did not permit entertainers to hire other persons to perform their duties for them. The right to dance as an entertainer at KOD was a personal right, and only people hired by Defendant's management staff were allowed to perform at

Defendant's clubs.

## 61.

KOD dancers were not permitted to work at non-Galardi-controlled strip clubs; if management learned that a dancer was working at another strip club, the dancer would be severely disciplined the first time and usually terminated the 2nd time.

## 62.

The only source of monies received by Plaintiffs relative to their employment with Defendant came in the form of gratuities received directly from KOD customers, a portion of which they were required to pay to Defendant Galardi every night in cash.

## 63.

Plaintiffs and all other KOD dancers/entertainers were economically dependent on tips paid by customers, making their opportunity for profit or loss a function of how many customers frequented the club (based on Management's marketing, advertising, and promotional decisions);  how much money customers had, how much they were willing to spend, and how much Defendant required entertainers to pay in order to work at KOD.

## 64.

Dancers' opportunity for profit and loss at KOD did not depend on their management skills, as their jobs did not call for or require any management skills.

## 65.

Numerous KOD dancers, including the Plaintiffs in this case, worked at KOD for lengthy, multi-year periods of time.

**66.**

The services performed by Plaintiffs and all other dancers-entertainers were integral to the success of KOD.

**67.**

Rather than paying wages to Plaintiffs, Defendant instead required KOD Plaintiffs and all other dancers/entertainers to pay *her* for the privilege of working at KOD, with such payments taking the form of:

a. "house fees" payable upon entering the club in amounts set solely by the Defendant;

b. a surcharge in an amount set by them (10% tax on their gross daily earnings, which was payable during and after their shifts in cash);

c. mandatory tip-outs to other Club personnel, including but not limited to the DJ, the House Mom, and to security personnel; and

d. routinely being fined for work rule infractions.

**68.**

Named Plaintiffs have been subject to a variety of fines and other discipline for work rule infractions during the applicable limitations period.

**69.**

Defendant Galardi failed to create and maintain records reflecting the dates, times, and hours worked by KOD dancers/entertainers.

**70.**

At no time did the Defendant ever include monies received by Dancers from

KOD customers in the recorded gross revenues of Fly Low, Inc. dba KOD.

**71.**

Defendant Galardi met with KOD management employees, including but not limited to Terry Elliott shortly after the death of Jack Galardi, to assert her power and to give directives as to how the Club would be operated going forward.

**72.**

Defendant Galardi toured the Club to assess conditions after her Father's death, and personally decided to remodel the Club, choosing the carpeting, upholstery, and furniture, and ultimately expending $300,000 of her own funds in connection with the remodeling.

**73.**

Both before and after the death of Jack Galardi, Teri Galardi maintained an office and conducted business  at the King of Diamonds facility.

**74.**

After her Father's death, Defendant Galardi was universally considered by the General Managers of all Galardi-controlled Clubs to be their "boss".

**75.**

Defendant Galardi carefully monitored and made inquiries re: sales reports and "girl counts" regarding KOD.

**76.**

Defendant Galardi personally supervised and directed   KOD Office Manager

Jennifer Saunders.

## 77.

Defendant Galardi gave directions and instructions to Fly Low employees Bob Hilton and Steve Ennis.

## 78.

Defendant Galardi personally supervised KOD office employee Mary Albenaz.

## 79.

Defendant Galardi monitored important club events and promotions.

## 80.

Defendant Galardi made the decision to wholesale change of KOD management personnel.

## 81.

In the years 2013-14, Defendant Galardi selected Akinyele Adams to become KOD's General Manager and authorized agent to act in her place.

## 82.

Defendant Galardi personally ordered the firing of KOD General Manager Liz Cedeno during 2013, as well as other KOD managers months after she installed Akinyele Adams as KOD's general manager and agent.  Mr. Adams was given full authority by Defendant Galardi to represent her interests in the club.

## 83.

Defendant Galardi was Adams's boss, and Adams admitted to at least one KOD

dancer that he had to do whatever he was told to do by Defendant Galardi.

**84.**

Defendant Galardi was Fly Low VP Steve Ennis's boss—she supervised and directed him.

**85.**

Defendant Galardi–with knowledge of the illegality of the "independent contractor business model"---chose to continue that policy during the last years of Jack Galardi's life and after his death.

**86.**

Defendant Galardi continued the policy of mandatory house fees/tip outs, despite the adverse ruling in *Clincy*.

**87.**

During the last years of Jack Galardi's life, only he or Defendant Teri Galardi possessed the authority to change the "independent contractor" business model applicable at all Galardi South Enterprise Consulting Inc.'s "affiliated clubs", including the King of Diamonds.

**88.**

Defendant Galardi, with the aid of her attorneys and subordinates, implemented, as a condition of continued employment, a mandatory arbitration policy for KOD dancers in April of 2014.

**89.**

After a KOD dancer was fired for refusing to sign the arbitration policy in April

of 2014, and after being threatened with legal action as a result, Defendant Galardi (not Akinyele Adams) ordered that the Dancer be permitted to return to work.

**90.**

Defendant Galardi signed Fly Low, Inc. checks, including paychecks (or authorized others to use her signature stamp to do so), and transferred the KOD payroll function from Atlanta to Miami.

**91.**

Defendant Galardi made decisions regarding settlement of lawsuits against Fly Low/ KOD.

**92.**

During the course of the Espinoza litigation, Defendant Galardi unilaterally made the decision to fraudulently convey Fly Low, Inc, the club KOD and the parcel of land  KOD sits on without ever disclosing the transaction to the Court, her counsel, or Plaintiffs' counsel, Mr. Harlan Miller in 2014.

**93.**

 On April 8, 2014, a group of KOD dancers sued Defendant Galardi and non-party Fly Low, Inc., in the United States District Court For The Southern District of Florida, asserting claims for minimum wage compensation under the FLSA and under Florida Law, in particular, under Article X, Section 24 of the Florida Constitution. *Espinoza et al v. Fly Low, Inc., and Teri Galardi,* Civil Action File No. 1:14-CV-21244-Goodman.

**94.**

The Florida law and Fair Labor Standards Act claims asserted in *Espinoza* by other KOD dancers against the Defendant in this proceeding shared the legal issues as those presented in this action, that is, whether Galardi:

    a.  was the "employer" of KOD dancers;

    b.  willfully misclassified KOD dancers as "independent contractors" when, based on clearly established law, KOD dancers should have been treated and paid as "employees";

    c.  failed to pay KOD dancers a single penny in wages; and

    d.  unlawfully forced KOD dancers to pay her "kickbacks" for the privilege of working at KOD.

**95.**

On January 1, 2016, the *Espinoza* court certified Plaintiffs' Florida law claims as a Rule 23 class action. On April 10, 2018, however, the Court elected not to exercise Supplemental Jurisdiction over the Florida law claims pursuant to 28 U.S.C. §1367( c), noting that under 28 §1367(d), the state law claims had been tolled during the pendency of the lawsuit.[1]

**96.**

On November 28, 2017, the *Espinoza* court denied Defendant Galardi's motion for summary judgment, which was predicated on the assertion that she was not Plaintiffs' "employer" and therefore could not be held individually liable under the

---

[1] This judicial finding was never appealed and is now obviously final.

FLSA.

**97.**

Thereafter, the *Espinoza* Plaintiffs' minimum wage claims were tried to a jury beginning on June 18, 2018, and concluding on June 26, 2018.

**98.**

Prior to the jury commencing its deliberations, the trial court instructed it on the applicable law, including a) the "economic realities" test (which governs the determination as to whether a particular individual is an "employee" or is instead an "independent contractor"), as well as the concepts of "willfulness", and personal liability.

**99.**

On June 26, 2018, the *Espinoza* jury reached a verdict. More specifically, the jury was submitted "Special Interrogatories", which resulted in the following determinations:

a) Both Fly Low and Galardi were the "employers" of KOD dancers;

b) KOD dancers were Fly Low's and Galardi's "employees";

c) Fly Low and Galardi failed to pay KOD dancers the minimum wage required by law; and

d) Fly Low and Galardi acted "willfully" (i.e., "kn[e]w or show[ed] reckless disregard for whether the FLSA prohibited their conduct")

**100.**

Based on these findings, the jury in *Espinoza* awarded the KOD dancers

minimum wage and overtime damages totaling $818,236, plus an additional $75,000 to one of the named Plaintiffs for retaliatory firing after the filing of the lawsuit. A true and accurate copy of the verdict form is submitted herewith as **Exhibit "4".**

### 101.

On September 20, 2018, the *Espinoza* Magistrate Judge Goddman awarded liquidated damages to all Plaintiffs that testified pursuant to the FLSA, and entered final judgment. True and accurate copies are submitted herewith as **Exhibit "5".**

### 102.

Galardi appealed the final judgment to the Eleventh Circuit Court of Appeals. On May 7, 2019, the Appellate Court affirmed the final judgment against Galardi and sanctioned the Defendant and her counsel for filing a frivolous appeal. **Exhibit "6".**

### 103.

On September 24, 2018, Arbitrator Michael Kohler granted a motion for summary judgment on the issue of Teri Galard's status as statutory "employer" of KOD dancers in a proceeding initiated by other KOD dancers. A true and accurate copy of said order is attached hereto as **Exhibit "7"**

### 104.

On February 26, 2019, Arbitrator Michael Kohler entered final judgment against Defendant Galardi as to the FLSA and Florida law minimum wage claims being pressed by four other former King of Diamonds dancers. A true and accurate of the judgment is submitted herewith as **Exhibit "8".** On April 24, 2019, Arbitrator Kohler

entered a final award including attorney's fees. **Exhibit "9".**

## 105.

On July 10, 2020, over the objection of Defendant Galardi, this Court

confirmed the arbitral awards attached as Exhibits 8 & 9 without any modification

(Case 1:19-cv-25248-MGC)(**Exhibit "10"**).

## 106.

"[T]he judgment [arbitral award] so entered shall have the same force and

effect, in all respects, as, and be subject to all the provisions of law relating to, a

judgment in an action; and it may be enforced as if it had been rendered in an action

in the court in which it is entered" 9 U.S. Code § 13(c).

## 107.

Under these set of unique circumstances Plaintiffs are each entitled to apply

offensive collateral estoppel because Defendant Galardi has been found to be an

employer and personally liable in the Espinoza matter (which was affirmed on appeal

and appellate counsel sanctioned ) and the above referenced arbitration matters that

were converted into a federal court judgment by this Court.

## 108.

Moreover, Plaintiffs have satisfied all conditions precedent to bringing this

action, including with respect to Plaintiffs' claim under the Florida Minimum Wage

Act, having sent written notice of the legal claims not less than 15 days prior to the

initiation of this lawsuit and/or the filing of this pleading, identifying in such notices

"the minimum wage to which [they] claim[ed] entitlement, the actual or estimated work dates and hours for which payment is sought, and the total amount of alleged unpaid wages through the date of the notice."

**109.**

As a consequence of Defendant's violations of Plaintiffs' rights under Article X, Sec.24 of the Florida Constitution and the Florida Minimum Wage Act, Plaintiffs have suffered lost wages, including being forced to pay illegal kickbacks to or on behalf of the Defendant all in an amount to be determined at trial. [2]

## COUNT I
## ARTICLE X, SECTION 24 MINIMUM WAGE CLAIMS

**110.**

Plaintiffs repeat and reallege each and every allegation contained in paragraphs one through one hundred and nine above with the same force and effect as if herein fully set forth herein.

**111.**

During the November 2004 general election, Florida voters passed Amendment 5 establishing a state minimum wage. 5,198,514 votes (71.25%) were cast in favor of the Amendment, 2,097,151 votes (28.75%) were cast in opposition. http://elections.dos.state.fla.elections.

---

[2] (See, Reich v. Priba, 895 F.Supp. 586 (N.D. Tx. 1995)(Club required to reimburse dancers for costumes forced to wear).

**112.**

The central purpose of the Amendment was to ensure that "All working Floridians are entitled to be paid a minimum wage that is sufficient to provide a decent and healthy life for them and their families..." <u>See</u>, <u>In Re Advisory Opinion To The Attorney General Of Florida Re: Minimum Wage Amendment</u>, 800 So.2d 636 (Fla. 2004); <u>City of Miami Beach v. Florida Retail Federation, In</u>c, 233 So.3d 1236, (Fla. 3d DCA, 2017).

**113.**

Amendment 5 was later codified as Article X, Sec. 24 of the Florida Constitution. It provides in pertinent part as follows:

e)     **ENFORCEMENT. *Persons aggrieved by a violation of this amendment*** may bring a civil action in a court of competent jurisdiction against an Employer or person violating and, ***upon prevailing, shall recover the full amount of any back wages unlawfully withheld plus the same amount as liquidated damages***, and shall be awarded reasonable attorney's fees and costs...Actions to enforce ***this amendment*** shall be subject to a statute of limitations of four years or, in the case of willful violations, five years. Such actions may be brought as a class action pursuant to Rule 1.220 of the Florida Rules of Civil Procedure.

**114.**

Defendant's failure and refusal to pay the Plaintiffs any wages whatsoever constitutes a willful violation of Article X, Section 24 of the Florida Constitution.

**115.**

Plaintiffs are therefore entitled to recover the applicable minimum hourly rate specified under Florida law for each hour worked during the applicable limitations

period, restitution of fees and fines unlawfully exacted from them by the Defendant, repayment of all sums paid for costumes, shoes, accessories, make-up; hair dressing and all other work expenses foisted on Plaintiffs by the Defendant, plus liquidated damages and attorney's fees and costs of litigation.

## COUNT II
## (In that alternative)
## FLORIDA MINIMUM WAGE ACT (FMWA) MINIMUM WAGE CLAIMS

### 116.

Plaintiffs repeat and reallege each and every allegation contained in paragraphs one through one hundred and nine above with the same force and effect as if herein fully set forth herein.

### 117.

Defendant's failure and refusal to pay the minimum wage required under Fla. Stat. 448.110 to the Plaintiffs constitute a willful violation of FMWA, Fl. Stat. §448.110.

### 118.

Each named Plaintiff has sent presuit notice to the Defendant more than 15 days prior to the filing of this civil action.

### 119.

Plaintiffs have satisfied all conditions precedent to the filing of this claim.

**120.**

Plaintiffs are therefore entitled to recover the applicable minimum hourly rate specified under Florida law for each hour worked during the applicable limitations period, restitution of fees and fines unlawfully exacted from them by the Defendant, repayment of all sums paid for costumes, shoes, accessories, make-up; hair dressing and all other work expenses foisted on Plaintiffs by the Defendant plus liquidated damages for willful violation and attorney's fees and costs of litigation.

## **DEMAND FOR JURY TRIAL**

**121.**

Plaintiffs demand a trial by jury on all their claims so triable.

**WHEREFORE,** Plaintiffs respectfully pray that this Court GRANT relief as follows:

a. as to Count I , Article X, Section 24 of the Florida Constitution,  an award to the Plaintiffs for the minimum wage specified under Florida law  for all  hours worked by the Plaintiffs during the applicable limitations period, as well as restitution of all fees, fines, charges and mandatory  tip-out outs paid to the Defendant (or to others on Defendant's behalf) by the Plaintiffs, repayment of all funds Defendant required Plaintiffs to expend for costumes, shoes, accessories, makeup, hair styling, manicures, pedicures and the like. liquidated  damages, interest and attorney's fees as provided for under Article  X, Section 24 of the Florida Constitution;

b. as to Count II, FMWA, in the alternative, an award to the Plaintiffs for the minimum wage specified under Florida law  for all hours worked by the Plaintiffs during the applicable limitations period, as well as restitution of all fees, fines, charges and mandatory  tip-out outs paid to the Defendant (or to others on Defendant's behalf) by the Plaintiffs, repayment of all  funds

Defendant required Plaintiffs to expend for costumes, shoes, accessories, makeup, hair styling, manicures, pedicures and the like. liquidated damages, interest and attorney's fees as provided for under the FMWA;

c. liquidated damages in amount equal to the amount of damages assessed for willful violations of the Article X or the FMWA;

d. an award of attorneys and expenses of litigation;

e. trial by jury as to all issues of fact;

f. such other and/or further relief as the Court may deem just and necessary.

Respectfully submitted this 4th day of August, 2020.

/s/ Astrid E. Gabbe, Esq.
FL Bar #635383
The Law Office of Astrid E. Gabbe, P.A.
P.O. Box 4216
Hollywood, FL, 33083
954-303-9882
Email: astridgabbe@gmail.com