# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
Case No. 20-cv-23230-AMC

ANGELA MILNER, et al.,

**Plaintiffs,**

v.

TERI GALARDI,

**Defendant**



FILED BY ___ D.C.

OCT 2 0 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## <u>NOTICE OF BANKRUPTCY</u>

COMES NOW Thomas T. McClendon as Liquidating Trustee (the "<u>Liquidating Trustee</u>") of the Galardi Creditor Trust (the "<u>Liquidating Trust</u>") and hereby notifies the Court of the continuing automatic stay and plan injunction related to the bankruptcy of bankruptcy of Teri G. Galardi ("<u>Ms. Galardi</u>"). Ms. Galardi is the debtor in the case *In re Galardi*, Chapter 11 Case No. 22-50035-JPS (Bankr. M.D. Ga., filed January 12, 2022) (the "<u>Bankruptcy Case</u>"). Ms. Galardi is a Defendant in this action. The Bankruptcy Case created an automatic stay pursuant to 11 U.S.C. § 362(a).

For purposes of providing the Court with further context, on April 14, 2023, the Bankruptcy Court for the Middle District of Georgia entered an *Order Confirming Joint Plan of Reorganization* (Docket No. 410) (the "<u>Plan Confirmation Order</u>"), which confirmed Ms. Galardi's *Amended Joint Chapter 11 Plan of Reorganization of Teri G. Galardi and the Committee of Unsecured Creditors* (Docket No. 401) (the "<u>Plan</u>").

The Plan Confirmation Order ordered that all provisions of the Plan "shall bind Debtor, entities receiving property under the Plan, and creditors whether or not the claims of such creditors are impaired under the Plan and whether or not such creditors have accepted the Plan." *See* Plan

Confirmation Order at pg. 6. A true and correct copy of the Plan Confirmation Order is appended hereto as **Exhibit "A."**

The Plan Confirmation Order provided "that notwithstanding Bankruptcy Code § 1141(b), Debtor's assets to be contributed to the Liquidating Trust, as described in the Plan, including Section 3.2.8. and 4.3 of the Plan, shall vest in the Liquidating Trust, under the exclusive control of the Liquidating Trustee free and clear of any lien, except for the lien of Power Financial Credit Union on 18511 Royal Hammock Boulevard shall be treated as provided for under the Plan." (emphasis added).

The Plan, in turn, established the Liquidating Trust and appointed the Liquidating Trustee. Section 9.1 of the Plan, entitled "Continuing Jurisdiction", reserved the jurisdiction of the Bankruptcy Court for the Middle District of Georgia (the "Bankruptcy Court") to exclusively hear all disputes concerning the Liquidating Trust and any claims or asserted entitlements to distributions from that Liquidating Trust. A true and correct copy of the Plan is appended hereto as **Exhibit "B."**

Additionally, Section 8.5 of the Plan expressly preserved the automatic stay of 11 U.S.C. § 362 until such date as a final decree has been entered. Section 8.5 provides as follows:

8.5 Continuation of Pre-Confirmation Injunction or Stays.

All injunctions or stays, whether by operation of law or by order of the Bankruptcy Court, provided for in the Bankruptcy Case pursuant to Sections 105, 362, or 525 of the Bankruptcy Code or otherwise that are in effect on the Confirmation Date or imposed by the Confirmation Order shall remain in full force and effect until the Final Decree.

No final decree has yet been entered in the underlying Bankruptcy Case.

The Plan incorporates the terms of the Liquidating Trust Agreement, which in pertinent part provides for the following:

> **Continuation of the Automatic Stay.** In furtherance of the implementation of the Plan, except as otherwise provided in the Plan, all injunctions or stays provided for in the Bankruptcy Case, pursuant to Sections 105, 362, or 1141 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect and apply to all creditors and Beneficiaries holding claims against the Debtor, the Debtor's Estates, the Trust Assets, the Liquidating Trustee, and the Creditors Trust until the Final Distribution Date.

Liquidating Trust Agreement ¶ 2.8.

A true and correct copy of the Liquidating Trust Agreement is appended hereto as **Exhibit "C".** As such, the automatic stay remains in effect in the Bankruptcy Case as to the Liquidating Trust and Liquidating Trustee.

Finally, the Bankruptcy Court has set a briefing schedule on whether the automatic stay has been violated in the attempt to collect from, or encumber, the Liquidating Trust and or its assets.

Respectfully submitted this 19th day of October, 2023.

**LIQUIDATING TRUSTEE**

_Thom T MEClf_

By: Thomas T. McClendon
699 Piedmont Avenue, NE
Atlanta, Georgia 30308
(404) 564-9300
tmcclendon@joneswalden.com
Liquidating Trustee of the Galardi Creditor Trust

# Exhibit "A"

**SO ORDERED.**

**SIGNED this 14 day of April, 2023.**



_James P Smith_
**James P. Smith**
**United States Bankruptcy Judge**

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **In re** | : | **CHAPTER 11** |
| | : | |
| **TERI G. GALARDI,** | : | **CASE NO. 22-50035-JPS** |
| | : | |
| **Debtor.** | : | **Judge James P. Smith** |
| | : | |

## ORDER CONFIRMING JOINT PLAN OF REORGANIZATION

The above-captioned bankruptcy case came before the Court for hearing April 11, 2023, at

11:00 am (the "**Confirmation Hearing**") to consider approval of the Disclosure Statement and

confirmation of the Plan.

On February 16, 2023, Teri G. Galardi (the "**Debtor**") and the Official Committee of

Unsecured Creditors (the "**Committee**") filed their _Joint Chapter 11 Plan of Reorganization_ (Doc.

No. 299) which was amended on April 10, 2023, pursuant to the _Amended Joint Chapter 11 Plan_

_of Reorganization_ (Doc. No. 401) (as amended or modified, the "**Plan**"). Also, on February 16,

2023, Debtor and the Committee filed their *Joint Disclosure Statement for Joint Chapter 11 Plan of Reorganization* (Doc. No. 300).

On January 12, 2023, the Court entered an *Order Establishing (1) Deadline for Filing Objections to the Disclosure Statement and Plan, (2) Deadline for Voting on Plan and (3) Scheduling Combined Hearing on Approval of Disclosure Statement and Confirmation of Plan* (Doc. No. 309) (the "**Solicitation Order**"). The Solicitation Order set a deadline of March 31, 2023 for creditors and parties in interest to (i) object to the Disclosure Statement or Plan and (ii) file ballots to either accept or reject the plan. The Solicitation Order also scheduled the Confirmation Hearing. The Confirmation Hearing commenced on April 11, 2023 at 11:00 a.m.

On February 21, 2023, Ag South Farm Credit, ACA filed an objection to the Disclosure Statement and the Plan (Doc. No. 303) (the "**Ag South Objection**").

On March 13, 2023, the Georgia Department of Revenue filed a limited objection to the Plan (Doc. No. 321) (the "**GADOR Objection**").

On March 28, 2023, Wells Fargo Bank, N.A. filed an objection to the Plan (Doc. No. 377) (the "**Wells Fargo Objection**").

On March 31, 2023, Power Financial Credit Union filed a "Cautionary and Preliminary Objection to Confirmation." (Doc. No. 387) (the "**Power Financial Objection**").

On April 3, 2023, Joseph Guernsey dba Red Shield Funding filed an objection to the Plan (Doc. No. 393) (the "**Red Shield Funding Objection**"). Such objection was after the March 31, 2023 deadline as provided by the Solicitation Order.

At the Confirmation Hearing, Christopher W. Terry and Louis G. McBryan appeared on behalf of Debtor. Teri G. Galardi, as the Debtor, appeared. Leon S. Jones and Thomas T. McClendon appeared on behalf of the Committee. Mutepe Akemon appeared as committee

2

member by proxy. Elizabeth Hardy appeared on behalf of the United States Trustee. Christina

Lanier appeared on behalf of the Internal Revenue Service. Jim Silver appeared on behalf of Power

Financial Credit Union.

At the Confirmation Hearing, Debtor and Committee announced that they had reached

resolution of the Ag South Objection, the Wells Fargo Objection, and the GADOR Objection

pursuant to the *Amended Joint Plan of Reorganization* (Doc. No. 401). The Power Financial

Objection was overruled by the filing of the Amended Joint Plan of Reorganization. The Red

Shield Funding Objection was overruled because it was untimely, no one appeared to prosecute

the objection, and the objections raised therein lacked merit.

The Court has taken judicial notice of the entire record in this case including all proofs of

claim.

The Court has considered the entire record at the Confirmation Hearing including but not

limited to the Plan, Ballot Report (as defined below), argument of counsel and the evidence

proffered at the Confirmation Hearing. Accordingly, the Court has determined:

(a)      Debtor and Committee timely and properly: (i) filed the Plan (ii) solicited the Plan;

and (iii) provided due notice of the Confirmation Hearing to Holders of Claims and Interests

against Debtor and parties in interest, all in compliance with the Bankruptcy Code, Local Rules,

and Solicitation Order.

(b)      Debtor and Committee filed the *Ballot Certification and Summary of the Voting on*

*Debtor's Plan of Reorganization as Modified or Amended* (the "**Ballot Report**") (Doc. No. 399)

describing the results of voting with respect to the Plan. As announced at the Confirmation hearing,

Classes 2, 6 and 8 voted to accept the Plan as a Class.

(c)     The notice provided regarding the Confirmation Hearing and opportunity for any party in interest to object to confirmation of the Plan have been adequate and appropriate and no further notice was required.

(d)     The legal and factual bases set forth at the Confirmation Hearing and in the entire record in this Case establish just cause for the relief granted at the Confirmation Hearing.

(e)     After due deliberation and good and sufficient cause appearing therefore, and based upon the Court's acceptance of the unopposed evidentiary proffer of testimony and evidence made at the Confirmation Hearing, and further based upon the entire record in this case and the Court's findings of fact and conclusions of law made on the record at the Confirmation Hearing which are adopted herein pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014, the Plan should be confirmed, and further based upon the following determinations by the Court:

1.     The Court has jurisdiction over this Chapter 11 Case and confirmation of the Plan pursuant to 28 U.S.C. § 1334.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (L), and (O), and the Court has jurisdiction to enter a final order with respect thereto.  Debtor is eligible to be a debtor under § 109 of the Bankruptcy Code.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The Disclosure Statement contains "adequate information" within the meaning of § 1125 of the Bankruptcy Code, and no further information is necessary.

3.     Following entry of the Solicitation Order, in compliance with the Bankruptcy Code and the Bankruptcy Rules, as evidenced by Certificates of Service (Doc. Nos. 310 and 311), Debtor and Committee effectuated filing and service on all Creditors, Holders of Claims and Interests and parties in interest of the Solicitation Order containing notice of the Confirmation Hearing and

relevant deadlines and a ballot for voting on the Plan, the Plan, the Disclosure Statement, and modifications or amendments to the Plan (collectively the **"Solicitation Materials"**).

      4.     As described in the Solicitation Order and Certificates of Service: (a) service of the Solicitation Materials was adequate and sufficient under the circumstances and (b) adequate and sufficient notice of the Confirmation Hearing and other requirements, deadlines, hearings, and matters described in the Solicitation Order: (i) was timely and properly provided; and (ii) provided due process and opportunity to appear and be heard to all parties in interest.  Because of the foregoing transmittals, notice and service were adequate and sufficient, and no other or further notice is necessary or shall be required.

      5.     The Debtor, Committee, and their attorneys have solicited votes on the Plan in good faith and in compliance with applicable provisions of the Bankruptcy Code and are entitled to the protections afforded by § 1125(e) of the Bankruptcy Code.

      6.     As evidenced by the Ballot Report and submissions at the Confirmation Hearing, three impaired classes of claims (determined without including any acceptance by an insider of Debtor) voted to accept the Plan. Specifically, Class 2, the Secured Claim of Ag South ACA, Class 6, the Secured Claim of the Internal Revenue Service, and Class 8, the General Unsecured Creditors, vote to accept the Plan. Not all Classes of the Plan voted to accept the Plan.  Therefore, the Debtor and Committee were required to establish, and the Court so finds, that Plan satisfies the requirements of 11 U.S.C 1129(b) with respect to such non-accepting classes.

      7.     As evidenced by the Ballot Report and submissions at the Confirmation Hearing, the impaired classes of claims either: (a) voted to accept the Plan or (b) their treatment under the Plan satisfies the requirements of the Bankruptcy Code, including § 1129(b).

      8.     The Plan's provisions are appropriate and consistent with the applicable provisions

of the Bankruptcy Code, including without limitation the treatment of unsecured claims, priority claims and secured claims, and counterparties under executory contracts.

Accordingly, it is hereby

**ORDERED** that the foregoing determinations including those enumerated in Paragraphs 1 through 8 above are hereby incorporated into this Confirmation Order as if fully set forth herein. It is further

**ORDERED** that the Power Financial Objection is *overruled* by the filing of the Amended Joint Plan of Reorganization (Doc. No. 401).

**ORDERED** that the Red Shield Funding Objection is *overruled* in its entirety as untimely filed and further as based on the Court's findings as stated on the record at the Confirmation Hearing. It is further

**ORDERED** that the Plan is *confirmed* pursuant to 11 U.S.C. §1129. All provisions of the Plan shall bind Debtor, entities receiving property under the Plan, and creditors whether or not the claims of such creditors are impaired under the Plan and whether or not such creditors have accepted the Plan. It is further

**ORDERED** that upon the Effective Date, the Official Committee of Unsecured Creditors shall be dissolved and of no further force and effective; however, notwithstanding such dissolution, the Committee and its Professionals shall be entitled to apply for approval by the Bankruptcy Court of their Fee Claims and any other amounts requested for payment by the Debtor after the Effective Date. It is further

**ORDERED** that notwithstanding Bankruptcy Code § 1141(b), Debtor's assets to be contributed to the Liquidating Trust, as described in the Plan, including Sections 3.2.8 and 4.3 of the Plan, shall vest in the Liquidating Trust, under the exclusive control of the Liquidating Trustee

free and clear of any lien, except for the lien of Power Financial Credit Union on 18511 Royal

Hammock Boulevard shall be treated as provided for under the Plan, and including but not limited

to property taxes through the date of the transfer of such property to the Liquidating Trust, which

Debtor shall satisfy or otherwise provide for. It is further

ORDERED that, as of the Effective Date, Thomas T. McClendon is approved and

appointed as Liquidating Trustee of the Galardi Creditors Trust and is authorized to execute the

Galardi Creditors Trust Agreement on or before the Effective Date of the Plan. It is further

ORDERED that any objection to a proof of claim classified in a class other than Class 8,

shall be filed by the Debtor on or before the one hundred and twentieth day (120th) day after the

Effective Date, or such later deadline for objection to claims as may be fixed by an order of this

Bankruptcy Court upon motion by the Debtor prior to such deadline. It is further

ORDERED that any objection to a proof of claim classified in Class 8, shall be filed by

the Liquidating Trustee on or before the one hundred and twentieth day (120th) day after the

Effective Date, or such later deadline for objection to claims as may be fixed by an order of this

Bankruptcy Court upon motion by the Liquidating Trustee prior to such deadline. It is further

ORDERED that this Order shall act as a permanent injunction against any Person: (a)

commencing or continuing any action, (b) employing any process, or (c) any acting to collect,

offset, or recover any Claim except as provided for in the Plan against: (1) Debtor, (2) against any

property of Debtor, (3) the Galardi Creditors Trust, or (4) property conveyed to the Galardi

Creditor's Trust. Such injunction shall survive the closure of this bankruptcy case and this Court

shall retain jurisdiction to enforce such injunction. It is further

ORDERED that notwithstanding anything to the contrary in the Plan, this Court retains

jurisdiction in this case: (a) for the purposes set forth in the Plan and to interpret and enforce the

Plan, any attachments to the Plan, including but not limited to the Galardi Creditors Trust Agreement, and this Order, and (b) to resolve any disputes regarding the same, including claim objections whether brought as a contested matter or adversary proceeding.  It is further

       **ORDERED** that Counsel for Debtor shall serve this Order on all creditors and parties-in-interest listed on the mailing matrix in this case via ECF or U.S. Mail and file a certificate of service within three (3) days of the entry of this Order.

**[End of Order]**

*Consented to by:*

**BOYER TERRY LLC**
*/s/ Christopher Terry*
Christopher Terry
Georgia Bar No. 702484
348 Cotton Avenue, Suite 200
Macon, Georgia 31201
(487) 742-6481
chris@boyerterry.com
*Attorney for Debtor*

*Prepared and Presented By:*

**JONES & WALDEN LLC**
*/s/ Thomas T. McClendon*
Thomas T. McClendon
Georgia Bar No. 431452
699 Piedmont Avenue NE
Atlanta, Georgia 30308
(404) 564-9300
tmcclendon@joneswalden.com
*Counsel for Committee*

Exhibit "B"

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| In re | : | CHAPTER 11 |
| | : | |
| TERI G. GALARDI, | : | CASE NO. 22-50035-JPS |
| | : | |
| Debtor. | : | Judge James P. Smith |
| | : | |

### AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF
### TERI G. GALARDI AND THE COMMITTEE OF UNSECURED CREDITORS

**April 10, 2023**

**Filed by:**

Louis G. McBryan
MCBRYAN, LLC
6849 Peachtree Dunwoody Road
Building B-3, Suite 100
Atlanta, Georgia 30328
(678) 733-9322
lmcbryan@mcbryanlaw.com
Counsel for Debtor

Christopher W. Terry
BOYER TERRY LLC
348 Cotton Avenue, Suite 200
Macon, Georgia 31201
(478) 742-6481
chris@boyerterry.com
Counsel for Debtor

Leon S. Jones
Thomas T. McClendon
699 Piedmont Ave NE
Atlanta, Georgia 30303
(404) 564-9300
ljones@joneswalden.com
tmcclendon@joneswalden.com
Counsel for the Committee
of Unsecured Creditors

## INTRODUCTION AND SUMMARY OF PLAN

On January 12, 2022, Teri G. Galardi (referred to herein as the "Debtor") filed for Chapter 11 bankruptcy protection initiating the above-styled case which remains pending in the United States Bankruptcy Court for the Middle District of Georgia, Macon Division, Case No. 22-50035-JPS (the "Bankruptcy Case"). The Official Committee of Unsecured Creditors (the "Committee") was appointed by the United States Trustee on April 28, 2022, and consists of the following members: (a) Shadana Deleston, c/o Mutepe Akemon, Esq., as Proxy Holder; (b) Abrey Leahong c/o Mutepe Akemon, Esq., as Proxy Holder; (c) Addie Brooks c/o Ainsworth Dudley, Esq., as Proxy Holder.

Contemporaneously with the filing of this Plan, Debtor and Committee filed and served a Joint Disclosure Statement, as required by Section 1125 of the Bankruptcy Code. The Disclosure Statement contains a detailed history of the Debtor, financial information regarding the Debtor's assets and liabilities, and a solicitation for acceptance of this Plan.

The Debtor and Committee hereby submits this Amended Joint Plan of Reorganization (the "Plan") resolving all outstanding objections to confirmation and upon the belief that creditors will realize more and receive distributions quicker under this Plan than if Debtor's assets are liquidated under Chapter 7 of the Bankruptcy Code or any other liquidating plan. The Debtor proposes to pay her creditors through income generated by the continued operation of her business, the sale of certain assets, and the transfer of assets and capital to the Galardi Creditors Trust, all as described in more detail herein below. The Plan deals with all property of the Debtor[1] and provides for treatment of all claims against the Debtor and her property.

This Plan provides for one (1) class of non-tax priority claims, six (6) classes of secured claims, and three (3) classes of unsecured claims. Holders of allowed administrative and priority claims shall receive payment in full on the Effective Date of the Plan or, with respect to a claim of a kind specified in § 507(a)(8) (tax claims), regular installment payments as provided under 11 U.S.C. § 1129(a)(9). Holders of Allowed Secured Claims shall receive payment in full of their claims through regular installment payments or through distribution of the net proceeds from the sale of their respective collateral. Holders of Allowed Unsecured Claims in Class 8 shall receive payment of approximately 40% of their claims through a pro-rata distribution of assets conveyed to the Galardi Creditors Trust which will be administered by a liquidating trustee. Holders of Allowed Unsecured Claims in Class 5 shall receive reaffirmation of the personal guaranties executed by the Debtor which secure loans to third-party entities controlled by the Debtor. Holders of Allowed Unsecured Claims in Class 9 shall receive payment of approximately 40% of their claims through monthly installment payments. A summary of the Classes of Claims,

---

[1] For purposes of the Plan, all property held by the Teri G. Galardi Separate Property Trust u/a/d 9-27-06 (the "Separate Property Trust") is treated as property of the Debtor and included in the Debtor's bankruptcy estate and Debtor and the Separate Property Trust shall be substantively consolidated under this Plan. A detailed description of the property owned by the Debtor, but held in the Separate Property Trust, is included in the Liquidation Analysis attached to the Disclosure Statement.

including the treatment of such classes and the estimated payments to be made under the Plan is attached hereto as part of Exhibit "A".

This Plan is the result of negotiations between Debtor and the Committee, as assisted by the Hon. Mary Grace Diehl (Ret.), at mediation on January 9, 2023. The Debtor and Committee believe this Plan provides the best recovery for creditors, balancing the amount ultimately to be paid to creditors with the promptness of such payments.

The Debtor believes that any liquidating plan, including that previously proposed by the Committee, will eliminate the going concern value of the Debtor's business. The Debtor owns and operates several adult entertainment establishments in Georgia which require true licenses to operate and sell alcoholic beverages. These licenses are not transferrable property rights. The principal of the entity owning the establishment, as well as the entity operating the establishment, must be approved by the State of Georgia. The state licenses issued in Georgia are not intangibles to be sold. The Debtor believes that liquidation, whether under a liquidating plan or through a Chapter 7 bankruptcy, would force the Debtor's adult entertainment establishments to cease operations and severely limit the value available for distribution to creditors. The Committee disagrees that liquidation would force the Debtor's businesses to close, but agrees with the Debtor that this Plan provides for the most effective recovery to creditors.

The classes of claims and method of payment under the Plan may be summarized as follows:

1. Class 1 – Non-Tax Priority Claims — Paid in full on the Effective Date.
2. Class 2 – Ag South — Monthly Installments of $ 6,504.84
3. Class 3 – Business First Bank — Monthly Installments of $ 11,574.60
4. Class 4A – Wells Fargo — Monthly Installments of $ 5,516.50
   Class 4B – Wells Fargo — Monthly Installments of $ 2,061.17
5. Class 5 – Power Financial — Reaffirmation of Guaranty
6. Class 6 – Internal Revenue Service — Annual Installments of $ 1,755,146.75
7. Class 7 – Trop, Inc. Claimants — Paid in full through sale of JGP&P
8. Class 8 – Unsecured Claims — Galardi Creditor Trust Disbursements
9. Class 9 – Unsecured Jack Jr. Claims — Monthly Installments of $ 9,160.37
10. Class 10 – Red Shield Funding — Pending Preference Determination

All Creditors should refer to Articles III and VI of this Plan for information regarding the precise treatment of their claims. A Disclosure Statement that provides more detailed information regarding this Plan and the rights of Creditors has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney. (If you do not have an attorney, you may wish to consult one.)**

3

# ARTICLE I
## DEFINED TERMS, COMPUTATION OF TIME, AND
## RULES OF CONSTRUCTION

1.1   <u>Defined Terms</u>.

As used in the Plan and in the accompanying Disclosure Statement, capitalized terms have the meanings set forth on **Schedule 1** attached to this Plan. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.2   <u>Other Definitional Provisions</u>.

(i)   <u>Accounting Terms</u>. Accounting terms which are not otherwise defined in this Plan have the meanings given to them under the Bankruptcy Code, the IRC, the Uniform Commercial Code, or GAAP, in that descending order of priority. To the extent that the definition of an accounting term that is defined in this Agreement is inconsistent with the meaning of such term under GAAP, the definition set forth in this Plan will control.

(ii)   <u>Construction</u>. Unless the context of this Plan otherwise clearly requires: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) references to any gender include the other genders, (c) the words "include," "includes" and "including" do not limit the preceding terms or words and shall be deemed to be followed by the words "without limitation," (d) the term "or" has the inclusive meaning represented by the phrase "and/or," (e) the terms "hereof," "herein," "hereunder," "hereto" and similar terms in this Plan refer to this Plan and the accompanying Disclosure Statement as a whole and not to any particular provision of this Plan; (f) the terms "day" and "days" mean and refer to calendar day(s); (g) the terms "year" and "years" mean and refer to calendar year(s); (h) any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to the Plan; (i) any reference to any Entity as a holder of a Claim includes that Entity's successors, assigns, and affiliates; (j) all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan; (k) the words "herein," "hereunder," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (l) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (m) subject to the provisions of any contract, articles of incorporation, code of regulations, similar constituent documents, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules. All Article, Section, Exhibit and Schedule references herein are to Articles, Sections, Exhibits, and Schedules of this Plan, unless otherwise specified and the rules of construction set forth in Section 102 of the Bankruptcy Code will apply.

(iii)  Computation of Time.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1     Classification Generally.

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified, and, thus, are excluded from the following Classes, but will be paid as provided in this Plan.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that the remainder of the Claim or Interest qualifies within the description of such other Classes.  **No Claim shall entitle a Creditor to a distribution of Cash or to other consideration pursuant to this Plan unless, and only to the extent that, such Claim is an Allowed Claim.**

2.2     Plan Classification.

The classification of Claims against the Debtor pursuant to this Plan is as follows:

| Class 1. | Non-Tax Priority Claims.  All allowed claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)).  Class 1 is not impaired. |
|---|---|
| Class 2. | Secured Claim of Ag South Farm Credit ("Ag South").  Class 2 includes the Allowed Secured Claim of Ag South in the amount of $235,854.00 secured by three parcels of real property in Butts County, Georgia.  Class 2 is not impaired. |
| Class 3. | Secured Claim of Business First Bank.  Class 3 includes the Allowed Secured Claim of Business First Bank in the amount of $717,075.41 secured by the real property located at 1837 Corporate Boulevard NE, Brookhaven, Georgia 30329.  Class 3 is not impaired. |
| Class 4. | Secured Claims of Wells Fargo Bank ("Wells Fargo").<br><br>Class 4A.  Class 4A includes the Allowed Secured Claim of Wells Fargo in the amount of $502,384.28 secured by the real property located at 15820 SW 53 Court, Southwest Ranches, Florida 33331.  Class 4A is not impaired.<br><br>Class 4B.  Class 4B includes the Allowed Secured Claim of Wells Fargo in the amount of $549,647.41 secured by the real property located at 2146 Highway 42 South, Butts County, Georgia.  Class 4B is not impaired. |

Class 5.       Unsecured Claim of Power Financial Credit Union ("Power Financial").
               Class 5 includes the Allowed Unsecured Claim of Power Financial arising
               from the personal guaranty executed by the Debtor in favor of Power
               Financial to secure a loan from Power Financial to Jack E. Galardi, LLC
               in the original principal amount of $2,181,000.00. Class 5 is not impaired.

Class 6.       Secured Claim of Internal Revenue Service ("IRS").  Class 6 includes the
               Allowed Secured Claim of Internal Revenue Service in the approximate
               amount of $12,422,093.66 for estate tax liabilities secured by a "special
               lien" against the gross assets of the Estate of Jack E. Galardi, Sr. Class 6 is
               impaired.

Class 7.       Secured Claims of Trop, Inc. Claimants.  Class 7 includes the Allowed
               Secured Claims held by creditors holding claims against the Debtor for a
               guaranty of debt owed by Trop, Inc. and secured by property owned by
               JGP&P, LLC.  Class 7 is not impaired.

Class 8.       Unsecured Claims of All Unsecured Claimants, other than the Jack E.
               Galardi, Jr., Sub-Trust.  Class 9 includes all Allowed Unsecured Claims,
               including (i) the IRS, (ii) the GDOR, (iii) those held by creditors holding a
               judgment or claim against the Debtor arising from certain wage & hour
               and fair labor standards act lawsuits, and (iv) other general unsecured
               claims, excluding the unsecured claims held by the JEG Family Trust -
               Jack E. Galardi, Jr. Sub-Trust. The value of the Class 8 claims varies, but
               the aggregate amount is approximately $23,925,355.92.  Class 8 is
               impaired.

Class 9.       Unsecured Claims of JEG Family Trust - Jack E. Galardi, Jr. Sub-Trust.
               Class 9 includes the Allowed Unsecured Claims held by Jack E. Galardi,
               Jr. Sub-Trust arising from obligations of the Debtor in connection with
               administration of the Estate of Jack E. Galardi, Sr. in the approximate
               amount of $1,896,700.40.  Class 9 is impaired.

Class 10.      Contested Secured Claim of Red Shield Funding, as Assignee of Alexis
               King.  Class 10 consists of a contested secured claim held by Red Shield
               Funding, as assignee of Alexis King ("Red Shield") (Claim No. 110) (the
               "King Claim"), which asserts a claim of $468,446.62 secured by "personal
               property" perfected by a "Lien Certificate" recorded within 90-days of the
               Petition Date.  The Debtor contests the secured status of the Class 10
               claim as an avoidable preference.  Class 10 is impaired.

2.3    Substantive Consolidation of Teri G. Galardi and Teri G. Galardi Separate
       Property Trust u/a/d 9-27-06, as amended and restated on February 9, 2018.

       Teri G. Galardi is the Settlor, Trustor, Trustee, and primary Beneficiary of the revocable
Trust known as the "Teri G. Galardi Separate Property Trust u/a/d 9-27-06" (the "Separate

Property Trust"). Upon information and belief, such trust is a revocable trust, as the trust may be amended or revoked at any time by the Settlor/Trustee (Teri Galardi). The Trust instrument specifically provides that its spendthrift provisions do not apply to Galardi's interest in the Trust. Assets in a revocable trust are subject to claims of debtor's creditors. O.C.G.A. § 53-12-82(a)(1) ("During the lifetime of the settlor, the property of a revocable trust shall be subject to claims of the settlor's creditors."); *In re Nichols*, 434 B.R. 906, 909 (Bankr. M.D. Fla. 2010).

As of the Effective Date, the Estate and the Separate Property Trust shall be consolidated and be considered one Person pursuant to 11 U.S.C. § 1123(a)(5)(C) ("Notwithstanding any otherwise applicable non-bankruptcy law, a plan shall . . . provide adequate means for the plan's implementation, such as . . . merger or consolidation of the debtor with one or more person.").

**ARTICLE III**
**TREATMENT OF CLAIMS AND INTERESTS**

3.0     Subject to all applicable provisions of this Plan, Allowed Claims will be paid or otherwise provided for under this Plan as follows:

3.1     <u>Unclassified Claims</u>. Pursuant to Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against Debtor are not classified for purposes of voting on the Plan.  Holders of such Adminstrative Expense Claims are not entitled to vote on this Plan.  All such Adminstrative Expense Claims are treated seperately as set forth herein below and in accordance with the requirements of set forth in Section 1129(a)(9)(A) of the Bankruptcy Code.

3.1.1   <u>Administrative Claims.</u>

<u>Statutory Fees</u>:  Allowed Administrative Expense Claims for costs of court and fees payable pursuant to 28 U.S.C. § 1930 (U.S. Trustee Fees), as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid in Cash, in full, as such fees become due.

<u>Fee Claims</u>:  Professionals having Allowed Administrative Fee Claims shall be paid in full, in Cash, by the Debtor on (i) the Effective Date, (ii) upon such other terms as may be agreed upon by such holder and the Debtor, or (iii) as otherwise ordered by the Bankruptcy Court, or, with respect to any disputed Fee Claim, the date upon which the Bankruptcy Court order allowing such Fee Claim becomes a Final Order.  Upon entry of the Confirmation Order, the Debtor shall set aside in escrow all unpaid amounts estimated to be owed to Professionals for Fee Claims through the Effective Date (less amounts previously paid or paid on an interim basis after Confirmation) pending entry of a Final Order on each such Professionals' application for Allowance of its Fee Claim.  After the Effective Date, Professionals of the Debtor shall be compensated as set forth below in this Plan.  Any Allowed Fee Claims associated with this Bankruptcy Case shall not be discharged pursuant to this Plan.

<u>General Administrative Claims</u>:  Except to the extent the holder of an Allowed Administrative Claim agrees to other, lesser treatment, each holder of an Allowed Administrative Claim shall be paid in respect of such Allowed Claim the full amount thereof, in Cash, by the later of (i) the Effective Date, (ii) the date on which such Claim becomes an Allowed Administrative Claim, or (iii) as otherwise ordered by the Bankruptcy Court.

7

**Bar Dates for Other Administrative Claims.**

(i)      General Administrative Bar Date Provisions.  The holder of an Administrative Claim *other than* (1) a Fee Claim, (2) a Post-petition Obligation incurred and payable in the ordinary course of business by the Debtor (and not past due), (3) Statutory Fees payable pursuant to 28 U.S.C. § 1930, (4) an Administrative Claim that has been Allowed on or before the Effective Date, and (5) a Cure Cost Claim, must file and serve on the Debtor, the Committee, and the United States Trustee, a request for payment of such Administrative Claim (a "Administrative Request for Payment") within thirty (30) days after the Effective Date.  Any Administrative Request for Payment must include at a minimum (a) the name and address of the holder of the Claim, (b) the amount of the Claim, and (c) the basis of the Claim.  *Failure to properly File and serve such request timely shall result in the Administrative Claim being forever barred and discharged.*  Objections to any Administrative Request for Payment by any party in interest must be Filed and served on the requesting party by the later of (a) 30 days after the Effective Date; (b) 30 days after the Filing of the applicable request for payment of Administrative Claims; or (c) such later date as provided for by order of the Bankruptcy Court, which order may be entered upon application of the Reorganized Debtor without further notice or hearing (the "Administrative Claim Objection Deadline").  *The holders of the Administrative Claims enumerated in (1) – (5) above of this paragraph shall not be required to file a request for payment of their Administrative Claims and shall be paid as specified in this Article.*

3.1.2   Priority Tax Claims.

Each holder of an Allowed Priority Tax Claim, of a kind specified in Section 507(a)(8) of the Bankruptcy Code, shall be paid in full, within 5 years of the Effective Date, in compliance with 11 U.S.C. § 1129(a)(9). The Debtor shall pay the Priority Tax Claims in full through annual installment payments, with interest, on the anniversary date of the Effective Date of the Plan. The Debtor reserves the right to pay the Priority Tax Claims in full at any time.

The Debtor estimates the existing Priority Tax Claims to include the following:

| | |
|---|---|
| Georgia Department of Revenue | $    320,710.97 |
| Internal Revenue Service | $ 1,382,049.77 |
| Total: | $ 1,702,760.74 |

The Debtor shall pay the Internal Revenue Service's Priority Tax Claim in full through annual installment payments, with interest pursuant to 26 U.S.C. § 6621 and 11 U.S.C. § 511, as of the Effective Date, which such rate is 7% per annum. Debtor shall pay the Internal Revenue Service on the Internal Revenue Services' Allowed Priority Tax Claim through a series of annual payments of $339,348.27, beginning on the first anniversary date of the Effective Date of the Plan and continuing with annual payments of $339,348.27 on the second, third, and fourth anniversary date of the Effective Date of the Plan, with a final payment of all outstanding principal and interest on the fifth anniversary of the Effective Date.

Notwithstanding any other provision of the Plan, nothing in the Plan or the Confirmation Order thereon shall discharge a federal tax debt (or interest on such a debt) of the kind specified in 11 U.S.C. § 1141(d)(2). Notwithstanding any other provision of the Plan, nothing in the Plan or the Confirmation Order thereon shall bar or enjoin the IRS from assessing or collecting any federal tax liability or penalty against a co-debtor.  Further, nothing in the Plan or the Confirmation Order thereon shall exculpate or limit the liability of any co-debtor who is liable for any federal tax debt.

Notwithstanding anything in this Plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to IRS' Priority Tax Claims. A failure by the Debtor to timely file federal tax returns and pay any future amounts due or to make a payment to the IRS pursuant to the terms of the Plan shall be an event of default as to the IRS. If the Debtor fails to cure an event of default as to the IRS' Priority Tax Claims within fifteen (15) days after the date of a written notice of default by the IRS to the Debtor and her attorneys, then the IRS may (a) enforce the entire amount of its Priority Tax Claim, less any payments previously made; (b) exercise any and all rights and remedies IRS may have under applicable law; and/or (c) seek such relief as may be appropriate in the bankruptcy court.

The Debtor shall remit all funds for payment of claims held by the Internal Revenue Service to the U.S. Department of Justice's Financial Litigation Unit via U.S. Mail (ATTN: TAXFLU, P.O. Box 310 – Ben Franklin Station, Washington, D.C. 20044) or courier service (ATTN: TAXFLU, 1275 1st Street NE, Room 11501, Washington, D.C. 20002), with the memorandum line containing "CMN 2023100080." Payments may also be made by electronic means or wire transfer, for which Debtor should coordinate with the assigned Department of Justice Trial Attorney.

The Debtor shall pay the Georgia Department of Revenue's Priority Tax Claim in full through annual installment payments, with interest pursuant to O.C.G.A. § 48-2-40 and 11 U.S.C. § 511, as of the Effective Date, which such rate is 10.5% per annum. Debtor shall pay the Georgia Department of Revenue ("GDOR") on the GDOR's Allowed Priority Tax Claim through a series of annual payments of $85,686.11, beginning on the first anniversary date of the Effective Date of the Plan and continuing with annual payments of $85,686.11 on the second, third, and fourth anniversary date of the Effective Date of the Plan, with a final payment of all outstanding principal and interest on the fifth anniversary of the Effective Date.

Notwithstanding anything in this Plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to GDOR's Priority Tax Claims. A failure by the Debtor to timely file Georgia state tax returns and pay any future amounts due or to make a payment to the Georgia Department of Revenue pursuant to the terms of the Plan shall be an event of default as to the Georgia Department of Revenue. If the Debtor fails to cure an event of default as to the Georgia Department of Revenue's Priority Tax Claims within fifteen (15) days after the date of a written notice of default by the GDOR to the Debtor and her attorneys, then the GDOR may (a) enforce the entire amount of its Priority Tax Claim, less any payments previously made; (b) exercise any and all rights and remedies GDOR may have under applicable state law; and/or (c) seek such relief as may be appropriate in the bankruptcy court.

The Debtor reserves the right to pay the Priority Tax Claims in full at any time.

3.2     Classified Claims

General Statement Regarding Treatment of Claims and Interests.  The treatment of and consideration to be received by holders of Allowed Claims pursuant to this Article III of the Plan shall be in full and in complete satisfaction, settlement, and release of the Estate's obligations with respect to such Claims. The Estate's obligations in respect of such Claims shall be satisfied in accordance with the terms of this Plan.

3.2.1   Treatment of Claims in Class 1 (Non-Tax Priority Claims).  There are no known claims in this Class. If such claims are Allowed by the Bankruptcy Court, except to the extent the holder of an Allowed Class 1 Claim agrees to other, lesser treatment, any holder of an Allowed Class 1 Claim shall be paid in full within the later of fourteen (14) days after the Effective Date or the date of allowance of such claims, which date of payment shall be deemed to be the Effective Date with respect to any such claims. The holder of the Class 1 Non-Tax Priority Claim is not impaired and not entitled to vote to accept or reject the Plan

3.2.2   Treatment of Claims in Class 2 (Secured Claims of Ag South Farm Credit ("Ag South")).

On January 20, 2022, Ag South filed Proof of Claim No. 1 asserting a secured claim in the amount of $235,854.59 (the "Class 2 Secured Claim"). Ag South's Class 2 Secured Claim is evidenced by the following loan documents (collectively, the "Ag South Loan Documents"): (i) Fixed Rate Note signed by Teri Galardi dated October 15, 2015, (ii) Deed to Secure Debt dated October 15, 2015, between Circle G Ranch Holdings, LLC, Teri G Galardi and Michael Porter naming Ag South as lender, recorded in the real property records of Butts County, Book 788, Page 410-416.

The Class 2 Secured Claim shall be paid in full in accordance with the existing loan terms through equal monthly installments of $6,504.84. The Debtor shall continue making monthly installment payments on the same date of each consecutive month until paid in full.

Ag South shall retain its lien and security interest in its collateral to the same extent, validity, and priority as such existed on the filing date pursuant to 11 U.S.C. § 1129(b)(2)(A). The underlying loan documents shall remain in effect, except as expressly modified herein, until the Debtor has paid Ag South's Class 2 Secured Claim in full. The Debtor will maintain adequate insurance and pay all property taxes as the same become due in connection with Ag South's Collateral during the pendency of this Plan.

Subject to the Ag South's right to credit bid, if Reorganized Debtor sells any of Ag South's Collateral after the Effective Date, Ag South agrees to release its lien in exchange for the lesser of: (i) full payoff of the AgSouth debt, or (ii) 100% of the net sale proceeds from a partial sale of the Collateral, provided the sale is for fair market value. AgSouth shall have the right to object to any full or partial sale of the Collateral by the Reorganized Debtor which does not pay AgSouth in full. A summary of Ag South's Class 2 Secured Claim, description of its Collateral,

and amount of Plan payments is included in Exhibit "A" attached hereto and incorporated herein by this express reference thereto.

The holder of the Class 2 Secured Claim is not impaired and not entitled to vote to accept or reject the Plan.

### 3.2.3   Treatment of Claims in Class 3 (Secured Claims of Business First Bank).

On May 17, 2022, Business First Bank filed Proof of Claim No. 122 asserting a claim in the amount of $717,075.47 (the "Class 3 Secured Claim") consisting of $714,075.47 in principal and $3,257.47 in interest. The Class 3 Secured Claim arises from the Debtor's guaranty of a debt of Teri Gale Galardi, Trustee of JEG Family Trust under the provisions of a Trust Agreement, dated November 1, 2006, and Trop, Inc. to Business First Bank.  The underlying debt is secured by the that certain property located at 1837 Corporate Boulevard, Brookhaven, Georgia 30329 ("Corporate Blvd.") owned by the Teri Gale Galardi Separate Property Trust ("SPT"). The Corporate Blvd. property was conveyed to the SPT by Warranty Deed recorded on June 6, 2015, in the real property records of DeKalb County at Book 24917, Page 49.  The Debtor and SPT shall be substantively consolidated for the purposes of this Plan.

The Class 3 Secured Claim of Business First Bank shall be paid in full in accordance with the existing loan documents through equal monthly installments of $11,574.60. Debtor shall continue making such monthly installment payments on the same date of each consecutive month until paid in full.

Business First Bank shall retain its lien and security interest in its collateral to the same extent, validity and priority as such existed on the filing date pursuant to 11 U.S.C. § 1129(b)(2)(A). The underlying loan documents shall remain in effect, except as expressly modified herein, until the Debtor has paid Business First Bank's Class 3 Secured Claim in full. The Debtor will maintain adequate insurance and pay all property taxes as the same become due in connection with Business First Bank's Collateral during the pendency of this Plan.

Subject to Business First Bank's right to credit bid, if Reorganized Debtor sells Business First Bank's Collateral after the Effective Date, Business First Bank shall, in exchange for payment of the lesser of: (i) 100% of the net sale proceeds of such Collateral, or (ii) the amount of its Class 3 Secured Claim attributable to the Collateral, release its remaining lien on such Collateral.  A summary of Business First Bank's Class 3 Secured Claim, description of its Collateral, and estimated Plan payments is included in Exhibit "A" attached hereto and incorporated herein by this express reference thereto.

The holder of the Class 3 Secured Claim is not impaired and not entitled to vote to accept or reject the Plan.

3.2.4    Treatment of Claims in Class 4 (Secured Claim of Wells Fargo Bank).

Class 4A.

Class 4A consists of the following secured claim of Wells Fargo Bank, N.A. ("Wells Fargo") ("Class 4A Secured Claim"). On March 23, 2022, Wells Fargo filed Proof of Claim No. 111 asserting a secured claim in the amount of $502,384.28, secured by a first-priority lien on that certain real estate commonly referred to as 15820 SW 53rd County, Southwest Ranch, Florida 33331 ("Southwest Ranches Property").

The Class 4A Secured Claim is evidenced by the following loan documents (collectively, the "Wells Fargo Class 4A Loan Documents"): (i) Fixed/Adjustable Rate Note dated September 15, 2008, by Teri G. Galardi and Michael A. Porter in favor of Wachovia Mortgage, FSB n/k/a Wells Fargo; (ii) Addendum to Note for Interest Only Payments dated September 15, 2008, by Teri G. Galardi and Michael A. Porter in favor of Wachovia Mortgage, FSB n/k/a Wells Fargo; (iii) Mortgage by Teri G. Galardi and Michael A. Porter, Wife and Husband, dated September 15, 2008, with Wachovia Mortgage, FSB n/k/a Wells Fargo as lender, recorded in the real property records of Broward County, Florida, Book No. 45698, Pages 1915-1937.

The Debtor and her husband, Michael Porter, conveyed their interest in the Southwest Ranches Property to the Jackson Galardi Trust & Grace Galardi Trust for the benefit of their grandchildren on September 25, 2017.  The Warranty Deed transferring the Southwest Ranches Property was filed in the Broward County, Florida real estate records on November 29, 2017, and recorded as Broward County Commission CIN No. 114744796.

The Class 4A Secured Claim of Wells Fargo shall be paid in full in accordance with the existing loan documents through equal monthly installment payments of $5,516.50. The Debtor and her husband, Michael Porter, shall continue making such monthly installment payments on the same date of each consecutive month until paid in full.

Wells Fargo shall retain its lien and security interest in its collateral to the same extent, validity and priority as such existed on the filing date pursuant to 11 U.S.C. § 1129(b)(2)(A). The underlying loan documents shall remain in effect, until the Debtor and her husband have paid Wells Fargo's Class 4A Secured Claim in full. The Debtor shall guaranty adequate insurance and payment of all property taxes as the same become due in connection with Well Fargo's Collateral during the pendency of this Plan.  All payments for property taxes and insurance during the pendency of this Plan shall remain escrowed in accordance with the Wells Fargo Class 4A Loan Documents.

In the event of Debtor's default on Wells Fargo's Class 4A Secured Claim, Wells Fargo may provide the Debtor with notice in accordance with the Wells Fargo Class 4A Loan Documents.

The holder of the Class 4A Secured Claim is not impaired and not entitled to vote to accept or reject the Plan.

<u>Class 4B.</u>

Class 4B consists of the following secured claim of Wells Fargo Bank, N.A. ("Wells Fargo") ("Class 4B Secured Claim"). Wells Fargo holds a claim of $549,647.41 secured by the Debtor's personal residence located at 2146 Highway 42 South, Butts County, Georgia ("Galardi Residence").

The Class 4B Secured Claim is evidenced by the following loan documents (collectively, the "Wells Fargo Class 4B Loan Documents"): Open-End Deed to Secure Debt by Jack E. Galardi, dated December 27, 2004, with Wachovia Bank, National Association n/k/a Wells Fargo as lender, recorded in the real property records of Butts County, Georgia, Book No. 470, Pages 273-280.

The Class 4B Secured Claim of Wells Fargo shall be paid in full in accordance with the existing loan documents through equal monthly installment payments of $2,061.17. The Debtor shall continue making such monthly installment payments on the same date of each consecutive month until paid in full.

Wells Fargo shall retain its lien and security interest in its collateral to the same extent, validity and priority as such existed on the filing date pursuant to 11 U.S.C. § 1129(b)(2)(A). The underlying loan documents shall remain in effect, until the Debtor has paid Wells Fargo's Class 4B Secured Claim in full. The Debtor will maintain adequate insurance and pay all property taxes as the same become due in connection with Well Fargo's Collateral securing the Claa 4B Secured Claim during the pendency of this Plan. All payments for property taxes and insurance during the pendency of this Plan shall remain escrowed in accordance with the Wells Fargo Class 4B Loan Documents.

In the event of Debtor's default on Wells Fargo's Class 4B Secured Claim, Wells Fargo may provide the Debtor with notice in accordance with the Wells Fargo Class 4B Loan Documents.

Subject to Wells Fargo's right to credit bid, if Reorganized Debtor sells Wells Fargo's Collateral securing the Class 4B Secured Claim after the Effective Date, Wells Fargo shall, in exchange for payment of the lesser of: (i) 100% of the net sale proceeds of such Collateral, or (ii) the amount of its Class 4B Secured Claim, release its remaining lien on such Collateral. A summary of Wells Fargo's Class 4B Secured Claim, description of its Collateral, and estimated Plan payments is included in Exhibit "A" attached hereto and incorporated herein by this express reference thereto.

The holder of the Class 4B Secured Claim is not impaired and not entitled to vote to accept or reject the Plan.

3.2.5    Treatment of Claims in Class 5 (Unsecured Claim of Power Financial Credit Union).

Power Financial Credit Union ("Power Financial") holds an unsecured claim against the Debtor arising from a personal guaranty executed by the Debtor, on October 26, 2021, to secure a loan from Power Financial to Jack E. Galardi, LLC (the "Guaranty"). The underlying loan is evidenced by a certain Promissory Note, dated October 26, 2021, executed by Jack E. Galardi, LLC ("Borrower") in favor of Power Financial in the original principal amount of $2,181,000.00 (the "Loan").

The Debtor hereby expressly reaffirms her liability and obligations arising under the Guaranty. Nothing contained in this Plan shall modify or alter the Debtor's liability and obligations under the Guaranty. Power Financials rights and remedies under the loan documents and applicable law are not being modified or otherwise affected in any way by the Plan. No debt owed to Power Financial shall be discharged by this Plan.

The holder of the Class 5 Unsecured Claim is not impaired and not entitled to vote to accept or reject the Plan.

3.2.6    Treatment of Claims in Class 6 (Secured Claims of Internal Revenue Service).

The Class 6 Claim consists of the secured claim held by the Internal Revenue Service ("IRS") for unpaid estate tax liabilities arising from the Debtor's administration of her father's estate, as executor of the Estate of Jack E. Galardi, Sr. (Date of Death: 12/1/2012). The IRS assessed the estate tax liability on April 28, 2014, in the original amount of $16,586,905.00. The Debtor, as executor of her father's estate, remains personally liable for the unpaid estate tax liability in the approximate amount of $12,422,093.66 (the "Estate Tax Claim").

The IRS timely filed its Proof of Claim No. 35, as amended, in this Bankruptcy Case, including the Estate Tax Claim in the principal amount of $10,810,740.37, plus penalties and interest to Petition Date in the amounts of $88,078.23 (which is reduced to $35,231.29 under the Plan[2]) and $1,576,122.00, respectively, for a total secured claim in the amount of $12,442,093.66. The IRS amended its Proof of Claim No. 35, on November 4, 2022 and again on January 27, 2023, to properly reflect the secured status of the Class 6 Estate Tax Claim.

Debtor shall grant a replacement lien to the IRS to secure payment of the Estate Tax Liability and discharge the existing Special Lien. The specific property pledged to secure the IRS Class 6 Secured Claim is identified and described on Exhibit "A" attached hereto and incorporated herein by this express reference thereto. On the Effective Date, the IRS shall

---

[2] The Debtor and IRS have agreed to waive a portion of the penalties included in the Estate Tax Claim. The parties initially agreed to waive the secured status of the penalties and include the penalties as part of the IRS unsecured claim. However, rather than further dilute the distributions to holders of Class 8 claims from the Galardi Creditors Trust, the Debtor and IRS have agreed to include 40% of the amount of penalties, $35,231.29 (an amount equal to the pro-rata distribution the IRS would receive, if the penalties were treated as a general unsecured claim), as part of the secured Estate Tax Claim.

receive, under this Plan, a security interest in the specific property identified and described on Exhibit "A" (the "Replacement Lien") to secure repayment of the Class 6 Claim.  The IRS shall be entitled to take all actions necessary to perfect the Replacement Lien as to all third parties against the property listed on Exhibit "A", including but not limited to filing any deed to secure debt, liens, UCCs, or obtaining pledges of membership interests the IRS may deem necessary or desirable. Debtor, the Committee, the Liquidating Trustee, together with their agents and assigns, shall take any action or execute any document reasonably requested by the IRS in furtherance of the perfection of the IRS' Replacement Lien, provided that any such action taken shall be at no out-of-pocket cost to such party responding to the IRS.

The IRS acknowledges that the Debtor, the Committee, the Liquidating Trustee, and potential lenders and purchasers of other assets provided for in the Plan are entitled to rely on the IRS's waiver of its statutory lien rights and such waiver shall be binding on the IRS upon the Effective Date.

The Class 6 Secured Claim of Internal Revenue Service shall be paid in full over 10 years with interest as may be provided pursuant to 26 U.S.C. § 6621 and 11 U.S.C. § 511 as of the Confirmation Date, which such rate is 7% per annum.. The Debtor shall make annual installments payments, consisting of principal and interest, in an amount not less than $1,755,146.75, on or before December 31st of each year until the Class 6 Secured Claim is paid in full. The Debtor shall fund the annual installment payments through the combination of operating income generated by the Reorganized Debtor's businesses and the liquidation of IRS Collateral securing the Class 6 Secured Claim.

If Reorganized Debtor sells any of the IRS Collateral after the Effective Date, for more than the value assessed by the local Governmental Entity with taxing authority over such property, the IRS shall discharge such property from its lien in exchange for payment of the lesser of: (i) 100% of the net sale proceeds of such Collateral, or (ii) the amount of its Class 6 Secured Claim attributable to the Collateral. The net sale proceeds received by the IRS from the sale of IRS Collateral during any calendar year shall constitute a credit against the annual installment payment due under this Plan for such calendar year.  The amount of any net sales proceeds received by the IRS from the sale of IRS Collateral in excess of the oustanding balance due on the annual installment payment due under this Plan for such calendar year shall be applied as a credit against installmnet  payments due under this Plan for the subsequent year(s).

A failure by Reorganized Debtor to make a payment under Class 6, pursuant to the terms of the Plan, shall be an event of default as to the holder of the Class 6 Claim. In the event of a default under Class 6, the holder of the Class 6 Claim must send written notice ("Default Notice") to Reorganized Debtor. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that Reorganized Debtor has fifteen (15) days from receipt by Debtor and Debtor's counsel of the Default Notice (or the following business day if the fifteenth (15th) day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default). In the event of an uncured default following proper Default Notice procedures, the holder of a Class 6 defaulting claim may (a) enforce the entire amount of its Class 6 Claim; (b) exercise any and all rights and remedies it

may have under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The Debtor shall remit all funds for payment of claims held by the Internal Revenue Service to the U.S. Department of Justice's Financial Litigation Unit via U.S. Mail (ATTN: TAXFLU, P.O. Box 310 – Ben Franklin Station, Washington, D.C. 20044) or courier service (ATTN: TAXFLU, 1275 1st Street NE, Room 11501, Washington, D.C. 20002), with the memorandum line containing "CMN 2023100080." Payments may also be made by electronic means or wire transfer, for which Debtor should coordinate with the assigned Department of Justice Trial Attorney.

The holder of the Class 6 Secured Estate Tax Claim is impaired and entitled to vote to accept or reject the Plan.

### 3.2.7   Treatment of Claims in Class 7 (Secured Claim of Trop Inc. Claimants).

Class 7 consists of the claims held by creditors of Trop Inc. based on claims raised in Trop Inc.'s Chapter 11 bankruptcy, NDGA Case No. 18-65726-JWC, and to be paid in accordance with Trop Inc's confirmed Plan of Reorganization. Under Trop Inc.'s bankruptcy plan, the Debtor guaranteed the Trop Inc. Claimants payments and JPG&G, LLC executed a deed-to-secure debt in favor of the Trop Inc. Claimants to secure their claims. The amount of the Class 7 Trop Inc. Claim is approximately $1,168,000.00.

The Class 7 Claims have been paid in full through the sale of the JPG&G, LLC property. The Disbursing Agent, Walter Cohen, shall cause the Trop DSD and Guaranty to be cancelled of record and will withdraw all claims filed in this Bankruptcy Case.

The holders of the Class 7 Secured Claims are not impaired and not entitled to vote to accept or reject the Plan.

### 3.2.8   Treatment of Claims in Class 8 (Unsecured Claims other than The JEG Family Trust - Jack E. Galardi Jr. Subtrust).

The Class 8 Claims consist of all unsecured claims, except the claims held by the JEG Family Trust - Jack E. Galardi Jr. Subtrust (POC 112 & 113). The Class 8 Claims include the IRS, the Georgia Department of Revenue, FLSA creditors, and other unsecured creditors.

The IRS filed Proof of Claim No. 35, as amended, including a general unsecured claim in the amount of $1,214,972.62. GDOR filed Proof of Claim No. 121, as amended, including a general unsecured claim in the amount of $10,025.36. Numerous creditors filed claims based wholly or in part on judgments or claims against the Debtor arising from wage & hour and fair labor standards act lawsuits against businesses operated by the Debtor, excluding the Class 7 Claim held by the Trop Inc. Claimants(the "FLSA Claimants"). The claims asserted by the FLSA Claimants are in the aggregate amount of approximately $22,501,838.24. A limited number of other general unsecured claims were filed in the aggregate amount of approximately

$186,480.17. A detailed description and identity of the FLSA Claimants and other Class 8 Claims is attached to the Plan.

The holders of Class 8 Claims will be paid, Pro-Rata, through the distribution of the net proceeds of the Galardi Creditors Trust as set forth hereinbelow.

The Debtor shall contribute cash and assets with an estimated value of no less than $10,000,000.00 to fund the Galardi Creditors Trust for payment of Class 8 Unsecured Claims ("Minimum Trust Value"). The Minimum Trust Value is more than the amount that would be available for distribution to Unsecured Creditors under a liquidating plan or through liquidation in a Chapter 7 bankruptcy. Such assets are as follows:

1.   $5,091,477.35 projected net income from the following properties:

| Property | Owner/Seller |
| --- | --- |
| 506 SE 11 Court, Fort Lauderdale, FL 33316 | 506 Office, LLC |
| Royal Palm Golf Estates Replat #3 Tract B | Jack E. Galardi, LLC |
| 18511 Royal Hammock Blvd, Naples FL | Jack E. Galardi, LLC |
| Membership Interest of JGP&P, LLC | Debtor |
| 4766 Frontage Rd, Forest Park, GA | Debtor |
| Stock of Red Eyed, Inc. | Debtor |
| 2121 Highland Drive, Las Vegas, NV89102 | New International Properties, LLC |

On the Effective Date, the Debtor shall convey or, as a controlling member of the entity which owns the property, authorize and direct such entity to convey or sell the property listed above to the Galardi Creditors Trust for the benefit of Class 8 Creditors.[3] If any of the above property is sold by the Debtor or an entity controlled by the Debtor, prior to the Effective Date, the Debtor, either as individual (if the sale is on her own behalf) or as the controlling member of an entity (if the sale is by one of Debtor's entities) shall cause the net proceeds of the sale to be deposited into the IOLTA account of either McBryan, LLC or Boyer Terry LLC to hold in trust for the benefit of Class 8 Unsecured Creditors pending confirmation of the Plan. If property is being transferred to Galardi Creditors Trust, Debtor shall execute or cause to be executed a limited warranty deed and such other documents as may reasonably requested by the Committee or Liquidating Trustee to effectuate such transfer. Such transfer shall be subject to 11 U.S.C. § 1146(a) as provided in Paragraph 10.5. The Debtor shall execute any documentation reasonably

---

[3] Prior to conveyance of the 18511 Royal Hammock Blvd. property to the Galardi Creditors Trust, the Debtor shall facilitate and cause Jack E. Galardi, LLC to obtain a release of the security interest held by Power Financial against the property. If Jack E, Galardi, LLC does not obtain a release of the security interest held by Power Financial by the Effective Date, then the amount of $595,200.00 (the estimated value of the net proceeds of the sale of 18511 Royal Hammock Blvd. property) shall be added to the principal amount of the GCT Promissory Note, described in Paragraph 3.2.8(3) hereinbelow. Upon receiving a release of the security interest held by Power Financial against the 18511 Royal Hammock Blvd. property, the Debtor shall cause Jack E. Galardi, LLC to convey the property to the Galardi Creditors Trust. The Debtor shall receive a credit against the principal balance of the GCT Promissory Note in the amount of $595,200.00, if the Debtor receives a release of the security interest held by Power Financial and conveys the 18511 Royal Hammock Blvd. property to the Galardi Creditors Trust within 30 days of the Effective Date or within such extended time as agreed to by the Liquidating Trustee.

requested by the Committee or Liquidating Trustee to effectuate the transfer of property to Galardi Creditors Trust.

      2.      Initial Cash Deposit of $2,500,000.00 to the Galardi Creditors Trust.

Not later than the first scheduled hearing on confirmation of the Plan, the Debtor shall deposit $2,500,000.00 in cash into the IOLTA account of either McBryan, LLC or Boyer Terry LLC to hold in trust for the benefit of Class 8 Unsecured Creditors and the law firm holding the deposit shall file a status report on the docket reporting that the firm is holding such amount in trust for the benefit of Class 8 Unsecured Creditors pending confirmation of the Plan.

      3.      GCT Promissory Note issued to the Galardi Creditors Trust.

On or before the Effective Date, Debtor shall execute and deliver a Promissory Note in favor of the Galardi Creditors Trust, substantially in the form of the promissory note attached to the Plan, as Exhibit "B" (the "GCT Promissory Note"). The GCT Promissory Note shall be in the amount necessary to meet the Minimum Trust Value after credit for (i) the net proceeds of the property sales, (ii) the estimated net value of remaining real property to be conveyed to the trust, and (iii) the Initial Cash Deposit.

On the Effective Date, Debtor shall also execute, or authorize the entity owning the property to execute, and deliver to the Liquidating Trustee the Deeds to Secure Debt against the following properties, substantially in the form of the deeds-to-secure debt attached to the Plan, as Exhibit "B", to secure payment of the GCT Promissory Note:

| Property | Owner |
|---|---|
| 1837 Corporate Boulevard, Brookhaven, Georgia 30329 | TG Separate Property Trust |
| 2608 Metropolitan Parkway SW, Atlanta, Georgia 30315 | Trinidad Creations LLC |
| 760 Piedmont Ave NE, Atlanta, Georgia 30308 | Circle G Ranch Holdings, LLC |

The GCT Promissory Note shall be due and payable in full no later than the first Business Day that is not less than 120 days following the Effective Date. The Liquidating Trustee shall satisfy the Deeds to Secure Debt reference above within three (3) Business Days after receipt of the full amount of the GCT Promissory Note.

A failure by Reorganized Debtor to make a payment under Class 8, pursuant to the terms of the Plan, shall be an event of default as to the holders of the Class 8 Claims. In the event of a default under Class 8, the Liquidating Trustee, on behalf of the holders of Class 8 Claims, must send written notice ("Default Notice") to Reorganized Debtor. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that Reorganized Debtor has fifteen (15) days from receipt by Debtor and Debtor's counsel of the Default Notice (or the following business day if the fifteenth (15th) day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default). In the event of an uncured default following proper Default Notice procedures, the Liquidating Trsutee, on behalf of the holders of Class 8 claims, may (a) enforce the entire amount due to

Class 8; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law, include non-judicial foreclosure on the Deeds to Secure Debt in favor of Class 8; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

Until receipt of payment of the GCT Promissory Note in indefeasible funds by the Galardi Creditors Trust, Debtor expressly and knowingly agrees that she, as the sole member and manager of Trinidad Creations LLC and Circle G Ranch Holdings LLC, shall not have the authority to (i) file or cause to be filed on behalf of either entity a proceeding under Title 11 of the United States Code or any similar reorganization or liquidation proceeding, or (ii) transfer her membership interest or position as manager to another in order to cause such a filing. In the event of such a proceeding being filed, Debtor, as authorized agent on behalf of such entities, expressly and knowingly agrees that (i) such proceeding shall be subject to immediate dismissal, and (ii) the automatic stay shall not take effect. The Debtor acknowledges that she has agreed to this provision with the advice of bankruptcy counsel.

As provided hereinbelow, Thomas T. McClendon or an alternative Liquidating Trustee appointed in accordance with the terms of the Galardi Creditors Trust, shall, in its sole discretion, manage the Trust Assets, negotiate the compromise and settlement of Class 8 Unsecured Claims, and administer all disbursements to holders of Class 8 Claims in this Bankruptcy Case. The Debtor shall not be entitled to object to any claims in this Class 8 and to be paid through the Galardi Creditors Trust.

The Liquidating Trustee shall remit all funds for payment of Class 8 claims held by the Internal Revenue Service to the U.S. Department of Justice's Financial Litigation Unit via U.S. Mail (ATTN: TAXFLU, P.O. Box 310 – Ben Franklin Station, Washington, D.C. 20044) or courier service (ATTN: TAXFLU, 1275 1st Street NE, Room 11501, Washington, D.C. 20002), with the memorandum line containing "CMN 2023100080." Payments may also be made by electronic means or wire transfer, for which the Liquidating Trustee should coordinate with the assigned Department of Justice Trial Attorney.

Debtor expressly waives the automatic stay provisions of 11 U.S.C. § 362 as to Class 8 and all claims contained within the Galardi Creditors Trust in any future bankruptcy filing if a voluntary or involuntary bankruptcy proceeding is filed by or against Debtor prior to the timely payment of all amount provided in Class 8 of the Plan or recordation of any Deed Under Power as provided in such class of the Plan; and in such event, the Liquidating Trustee, its agents and assigns, shall be entitled to immediate relief from any automatic stay imposed by Section 362 of the Bankruptcy Code, or any other similar statute, in order that the Liquidating Trustee may immediately exercise its rights and remedies as provided in this Plan, the GCT Promissory Note, the Deeds to Security Debt, and any other documents executed pursuant to the Plan, or under applicable law with respect to the property secured under the Deeds to Secure Debt.

Debtor further waives any right pursuant to 11 U.S.C. § 1127 or otherwise to move the Court to modify this Plan of Reorganization as to Class 8, any rights or remedies given to the creditors treated pursuant to Class 8, the Galardi Creditors Trust, or the Liquidating Trustee, and Debtor acknowledges, with the advice of bankruptcy counsel that she knowingly and intelligently waives her right to seek to modify the Plan or any plan in any future bankruptcy as

to the parties listed above. Debtor further waives her right to seek a "hardship" discharge pursuant to 11 U.S.C. § 1141(d)(5) as to the obligations imposed under Class 8.

Holders of Class 8 Claims are impaired and entitled to vote to accept or reject the Plan.

3.2.9   Treatment of Claims in Class 9 (Unsecured Claims held by JEG Family Trust - Jack E. Galardi, Jr. Sub-Trust).

The Class 9 Claims consist of unsecured claims held by the JEG Family Trust - Jack E. Galardi, Jr. Sub-Trust ("Jack Jr. Sub-Trust") which arise from the Debtor's obligations in connection with adminstration of the Estate of Jack E. Galardi, Sr. The Jack Jr. Sub-Trust filed Proof of Claim Nos. 112 & 113 in the amounts of $843,509.20 and $1,053,191.20 (the "Jack Jr. Claims"), respectively. The total amount of the Class 9 Claims is approximately $1,896,700.40.

The Class 9 Claims are subject to an adversary proceeding currently pending before the Bankruptcy Court, Adversary Proceeding No. 22-5008 (the "Adversary Proceeding"). In the Adversary Proceeding, the Jack Jr. Sub-Trust asserts that the Class 9 Claims are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), § 523(a)(4), and § 523(a)(6). The Debtor has filed an Answer and Counterclaims, denying the non-dischargeability of the Class 9 Claims and seeking to avoid as preferential transfers and fraudulent transfers certain payments and seeking equitable subordination of the Class 9 Claims. The Adversary Proceeding is continuing, with a Renewed Motion to Dismiss, or, in the alternative, Abstain currently pending, before the Bankruptcy Court.

The holders of Class 9 Claims will be paid, if at all, after resolution of the Adversary Proceeding and a determination of the validity and amount of the Class 9 Claims held by the Jack Jr. Sub-Trust. Upon such determination by the Bankruptcy Court, the Debtor shall pay Class 9 Claims an amount equal to the same percentage of pro-rata distribution reeived by holders of Class 8 claims (i.e. a percentage equal to the total allowed Class 8 Claims divided by $10 million, which is currently estimated to equal approximately 40%). The Debtor shall pay the equal percentage of the allowed Class 9 Claims through 60 equal monthly installments, with the amount of the payments based on a 10 year amortization of the pro-rata percentage of the allowed claim amount with interest at the rate of 7% per annum, followed by a final balloon payment for the balance due after the 60th payment.

For the avoidance of doubt, the holders of Class 9 Claims shall not be entitled to participate in the Galardi Creditors Trust and shall not share pro-rata with the Class 8 Claims. Although, Class 9 Claims shall receive a percentage distribution equal to the pro-rata percentage received by holders of Class 8 Claims.

If at conclusion of the Adversary Proceeding, the Bankruptcy Court determines that the Class 9 Claims are non-dischargeable, then Debtor shall pay the full amount of the allowed Class 9 Claims in full through 120 equal monthly installments based on a 20 year amortization at 7% interest per annum, followed by a balloon payment for the balance due after the 120th payment.

A failure by Reorganized Debtor to make a payment under Class 9, pursuant to the terms of the Plan, shall be an event of default as to the holder of the Class 9 Claim. In the event of a default under Class 9, the holder of the Class 9 Claim must send written notice ("Default Notice") to Reorganized Debtor. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that Reorganized Debtor has fifteen (15) days from receipt by Debtor and Debtor's counsel of the Default Notice (or the following business day if the fifteenth (15th) day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default). In the event of an uncured default following proper Default Notice procedures, the holder of a Class 9 defaulting claim may (a) enforce the entire amount of its Class 9 Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

Holders of Class 9 Claims are impaired and entitled to vote to accept or reject the Plan.

3.2.10  <u>Treatment of Claims in Class 10 (Secured Claims held by Red Shield Funding as assignee of Alexis King).</u>

The Class 10 Claims consist of a secured claim held by Red Shield Funding, as assignee of Alexis King ("Red Shield") (Claim No. 110) (the "King Claim"), which asserts a claim of $468,446.62 secured by "personal property" perfected by a "Lien Certificate." Attached to the King Claim is an Electronic Judgment Lien Certificate filed October 26, 2021. Such date is within the 90 days prior to the filing of this bankruptcy case. Debtor asserts that such security interest is a preferential transfer.

Debtor shall file an adversary proceeding seeking to set such secured status aside as a preference. If such action is successful and the recording of the judgment lien is set aside as a preference, the King Claim shall be reclassified as a Class 8 Unsecured Claim. The Liquidating Trustee shall have the right (but not the obligation) to object to the King Claim within 120 days of any Final Order from this Court setting aside the filing of the judgement lien as a preference. Thereafter, any Allowed Amount of the King Claim shall be paid as a Class 8 Unsecured Claim and share pro rata. The Liquidating Trustee shall treat the King Claim as a Disputed Claim until determination by the Court of the preference action.

If such preference action is not successful, as determined by Final Order of the Court, then Debtor shall pay the King Claim in full through 60 equal monthly installments with interest at the applicable judgment rate of 0.08% as noted on the Judgment Lien.

A failure by Reorganized Debtor to make a payment under Class 10, pursuant to the terms of the Plan, shall be an event of default as to the holder of the Class 10 Claim. In the event of a default under Class 10, the holder of the Class 10 Claim must send written notice ("Default Notice") to Reorganized Debtor. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that Reorganized Debtor has fifteen (15) days from receipt by Debtor and Debtor's counsel of the Default Notice (or the following business day if the fifteenth (15th) day does not fall on a business day) to cure such default (and the address for payment, which will

accept overnight deliveries, in the event of a monetary default). In the event of an uncured default following proper Default Notice procedures, the holder of a Class 10 defaulting claim may (a) enforce the entire amount of its Class 10 Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

Holders of Class 10 Claims are impaired and entitled to vote to accept or reject the Plan.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

4.1     Funding of this Plan.

This Plan is a reorganizing Chapter 11 plan for the Debtor. The funds required for implementation of this Plan and the distributions hereunder shall be provided from revenue generated from the continued operation of the Reorganized Debtor's businesses, injections of capital from the sale of the Debtor's property, loans obtained by the Reorganized Debtor, and the conveyance of certain property (or proceeds from pending sales) and capital contribution to the Galardi Creditors Trust. Furthermore, the Debtor's contribution of the Minimum Trust Value (as defined in Class 8 above) to the Galardi Creditors Trust provides the most efficient manner of distribution to holders of Allowed Unsecured Class 8 Claims. The Galardi Creditors Trust allows the Creditors Committee to manage the administration of the Trust Assets in its sole discretion, without any interference from the Debtor or Reorganized Debtor.

4.2     The Reorganized Debtor.

4.2.1     Role of the Reorganized Debtor Under the Plan. The Plan will be administered by the Reorganized Debtor, who will be vested with power and authority over all remaining assets of the Debtor and the Estate, and with the obligation to administer and consummate the conveyances and distributions in accordance with the Plan. The Reorganized Debtor shall be deemed as of the Confirmation of the Plan to be the general representative of the Estate as authorized under and pursuant to the Bankruptcy Code, specifically including without limitation Section 1123(b)(3). The Reorganized Debtor shall be indemnified by the Estate for fees and costs, including attorneys' fees, for any actions they take or fail to take, except for those done with gross negligence or malicious intent.

4.2.2     Powers of the Reorganized Debtor. Except as otherwise provided in this Plan, the Reorganized Debtor shall be vested with and shall have all rights, powers, and duties that she had immediately prior to Confirmation under Sections 1106, 1107, and 1108 of the Bankruptcy Code and otherwise, including, without limitation, with respect to Causes of Action (whether or not commenced as of Confirmation). The Reorganized Debtor shall have exclusive control of the Assets, including, without limitation, the Causes of Action. The Reorganized Debtor shall have authority to authorize the sale, abandonment, or other liquidation of the Assets as further set forth in the Plan. The Reorganized Debtor shall be the representative of the Estate and shall have the capacity to sue and be sued, as provided under Sections 323 and 1123(b)(3) of the Bankruptcy Code, and otherwise under the Plan or the Bankruptcy Code.

    4.2.3   <u>Overview of Duties of Reorganized Debtor</u>.  The Reorganized Debtor shall be empowered to and shall make all distributions required to be made under this Plan, and the Reorganized Debtor shall be authorized and empowered to fully act as of the Effective Date, including, without limitation, to (a) prosecute, settle, or release all Causes of Action, in accordance with the best interest of and for the benefit of the Creditors entitled to receive distributions under the Plan; (b) liquidate assets, including through any pending sale motions initiated by the Debtor, but not consummated as of the Effective Date or otherwise; (c) prosecute objections to Claims; (d) resolve Disputed Claims; (e) make distributions to the holders of Allowed Administrative Claims, Allowed Priority Tax Claims, and holders of other Allowed Claims (as their respective interests may appear in accordance with this Plan) in as prompt, efficient, and orderly fashion as possible in accordance with the Plan; (f) perform administrative services related to the implementation of this Plan; (g) employ attorneys and other Professionals, as further set forth below, to assist in fulfilling the Reorganized Debtor's obligations under the Plan; and (h) otherwise act in accordance with this Plan and orders of the Bankruptcy Court.

    4.2.4   <u>Plan Implementation Services</u>.  The Reorganized Debtor shall be authorized to take such actions as they may deem necessary to perform their obligations under the Plan and may retain the services of Professionals necessary to assist and advise the Reorganized Debtor in the performance of their duties under the Plan, including, without limitation, lawyers, accountants, brokers, and auctioneers.  Compensation and reimbursement of expenses earned and incurred by Professionals performing services for the Reorganized Debtor after the Effective Date shall be paid by the Reorganized Debtor monthly after rendition of bills to the Reorganized Debtor, and no further applications for compensation or reimbursement of expenses shall be necessary or required unless a dispute arises.  In the event of any such dispute, the same shall be resolved by the Bankruptcy Court after notice and hearing.

    4.2.5   <u>Reports</u>.

    (a)   <u>Monthly Operating Reports.</u>  Until the entry of a Final Decree, the Reorganized Debtor shall prepare and file the Monthly Operating Reports required by the Office of the United States Trustee in the times specified by the United States Trustee.

    (b)   <u>Tax Returns</u>.  The Reorganized Debtor shall cause to be prepared and filed all federal, state, or local tax returns required to be prepared and filed by the Debtor that have not been prepared or filed by the Effective Date, or which fall due thereafter.

    4.2.6   <u>Application for Final Decree</u>.  As soon as reasonably practicable following substantial consummation of this Plan, the Reorganized Debtor shall file a final report and application for Final Decree, if not previously filed.

    4.2.7   <u>Standard of Care for Reorganized Debtor; Exculpation</u>.  The Reorganized Debtor shall perform the duties and obligations imposed on the Reorganized Debtor by this Plan with reasonable diligence and care under the circumstances.  Upon completion of all payments due to creditors under this Plan, the Debtor shall be discharged as provided under 11 U.S.C. § 1141(d)(5) and in accordance with M.D.G.A. Local Bankruptcy Rule 3022-1.

4.2.8   <u>Revesting.</u>  Except as otherwise provided in the Plan or order confirming the Plan, all of the Debtor's property, except for property that has been or may be abandoned, released or rejected by the Debtor, will vest in and be retained by the Reorganized Debtor.  On the Effective Date, the Reorganized Debtor will be entitled to continue the operation of the Debtor's businesses and to buy, use, acquire, encumber and dispose of any property, and to obtain credit, in any manner the Reorganized Debtor may choose in accordance with applicable nonbankruptcy law and free of any restrictions of the Code.  As of the Effective Date, all property of the Reorganized Debtor shall be free and clear of all claims, liens and encumbrances, except as otherwise expressly provided for in this Plan with respect to any claims in any classes.

4.2.9   <u>Unclaimed Property.</u>  All distributions made by mail will be made to the latest mailing address filed of record with the Bankruptcy Court for the party entitled thereto.  Any security, money or other property remaining unclaimed at the expiration of ninety (90) days after such mailing shall become property of the Reorganized Debtor pursuant to § 347(b) of the Code.

### 4.3   Galardi Creditors Trust and Liquidating Trustee

On the Effective Date, the Debtor shall establish a liquidating trust for the benefit of the Holders of Class 8 Unsecured Claims (the "Galardi Creditors Trust").  The Debtor shall execute the Trust Agreement ("Trust Agreement") and it shall become effective on the Effective Date. In accordance with the Trust Agreement, the Galardi Creditors Trust shall be administered by Thomas T. McClendon or an alternative disinterested third-party selected by the Committee, subject to Court authorization, as the ("Liquidating Trustee").  Subject to the Trust Agreement, the Liquidating Trustee shall serve from and after the Effective Date until completion of their responsibilities. This section of the Plan sets forth certain of the rights, duties, and obligations of the Liquidating Trustee and the terms of the Galardi Creditors Trust, all of which will be more fully described in the Trust Agreement (a copy of the Trust Agreement, in substantially the same form as will be executed by the Debtor, is attached to this Plan as Exhibit "C"). In the event of any conflict between the terms of this section and the terms of the Trust Agreement, the terms of the Trust Agreement shall govern.

#### 4.3.1   <u>Duties and Powers of the Liquidating Trustee</u>

The Galardi Creditors Trust shall be established solely for the purposes provided for in the Trust Agreement, which shall include, without limitation, (i) administering, maintaining, and ultimately distributing the Trust Assets, as identified herein below, and the proceeds received from liquidation of the Trust Assets (collectively, the "Trust Proceeds"), (ii) providing for the compromise and settlement of Class 8 Unsecured Claims, and (iii) determining, objecting to, and resolving objections to unliquidated and Disputed Class 8 Unsecured Claims participating in the Galardi Creditors Trust. Such rights, powers, and duties granted to the Liquidating Trustee shall vest on the Effective Date without the need to obtain further Court approval.

The Liquidating Trustee, in its sole discretion, may accept compromises and settlement of any Allowed Unsecured Class 8 Claim or Disputed Class 8 Unsecured Claim participating in the Galardi Creditors Trust without further order of the Court.

Except as explicitly provided in the Plan, the Debtor nor the Reorganized Debtor shall have any liability for any cost or expense of the Galardi Creditors Trust following the Effective Date. The Liquidating Trustee shall distribute the Trust Proceeds in accordance with the Trust Agreement and the terms of the Plan.

The Liquidating Trustee shall invest any monies held at any time as part of this Trust Estate, and every other reserve or escrow fund established pursuant to the terms of this Trust Agreement, only in interest-bearing deposit or certificates of deposit issued by any federally insured banking institution or short-term investment (without regard to the limitation on amounts insured by the Federal Deposit Insurance Corporation for depositions), including short-term obligations of, or unconditionally guaranteed as payment by, the United States of America and its agencies or instrumentalities, pending the need for the disbursement thereof in payment of costs, expenses, and liabilities of the Creditors Trust or in making distributions pursuant to Section 5 of the Trust Agreement.

### 4.3.2   Transfers to the Creditors Trust

On and after (as applicable) the Effective Date, the Debtor shall transfer, assign, deliver and distribute to the Galardi Creditors Trust all right, title, and interest in certain of the assets of the Debtor, which are specifically identified in Class 8 of this Plan, including (i) certain parcels of real estate, (ii) net proceeds from the sale of real estate previously sold, (iii) cash due on the Effective Date, and (iv) the additional cash due after the Effective Date in accordance with Paragraph 3.2.8 above, and (v) all documents necessary to effectuate such transfers (collectively, the "Trust Assets.")

Subject to the terms of the Plan and the Trust Agreement, the Galardi Creditors Trust and the Liquidating Trustee shall, on the Effective Date, be vested with and succeed to all rights, privileges, immunities, title, and interest of the Debtor in and to the Trust Assets, and the Debtor and the Reorganized Debtors shall have no other further rights or obligations with respect thereto, except as set forth in the Plan and any ancillary agreements executed in connection with the Plan. In addition, on the Effective Date, the Liquidating Trustee shall be vested with and succeed to all Debtor's rights of setoff, credits, credit balances, defenses, and any right with respect to the adjustment to Class 8 Unsecured Claims but only to the extent such rights (i) existed as of or related to the period prior to the Petition Date, and (ii) do not exceed the Allowed amount of the applicable Unsecured Claim.

Notwithstanding the foregoing, the Reorganized Debtor shall make available to the Liquidating Trustee (subject to appropriate confidentiality and privilege arrangements) reasonable access during normal business hours, upon reasonable notice, to personnel and books and records of the Reorganized Debtor to enable the Liquidating Trustee to perform the Liquidating Trustee's tasks under the Trust Agreement and the Plan, and the Debtor and the Reorganized Debtor shall permit the Liquidating Trustee (subject to appropriate confidentiality

and privilege arrangements) reasonable access to information related to the unliquidated and Disputed Unsecured Claims, and any other Claim that is reasonably requested by the Galardi Creditors Trust.

Interests in the Galardi Creditors Trust shall be uncertificated and shall be non-transferable except upon death of the interest holder or by operation of law or with consent of the Liquidating Trustee upon such terms as the Liquidating Trustee, in his sole and absolute discretion, might require.

### 4.3.3    Funding of Galardi Creditors Trust Expenses

The expenses of the Galardi Creditors Trust, including the fees of the Liquidating Trustee, shall be funded from the Trust Proceeds, and shall not be funded by the Debtor or the Reorganized Debtor.

### 4.3.4    Retention of Professionals by the Galardi Creditors Trust

As more particularly set out in the Trust Agreement, the Liquidating Trustee may retain counsel and other professionals to assist in his duties, on such terms as the Liquidating Trustee deems appropriate. Without limiting the generality of the foregoing, the Liquidating Trustee may retain any of the professionals involved in the Bankruptcy Case irrespective of their prior roles in the Bankruptcy Case.

### 4.3.5    Termination of Galardi Creditors Trust

Upon the final distribution of the Trust Assets, and completion of the Liquidating Trustee's responsibilities, the Liquidating Trustee shall be relieved of further responsibility.

### 4.4    Dissolution of the Committee

Upon the Effective Date, the Committee shall be deemed dissolved and of no further force and effective. Notwithstanding the dissolution of the Committee, the Committee and its Professionals shall be entitled to apply for approval by the Bankruptcy Court of their Fee Claims and any other amounts requested after the Effective Date.

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

### 5.1    Assumption or Rejection of Executory Contracts.

On the Confirmation Date, all Executory Contracts and unexpired leases shall be deemed assumed, in accordance with the provisions of Sections 365 and 1123, and any other relevant provisions of the Bankruptcy Code.

5.2     Cure Cost Claims.

All Allowed Cure Costs (which are defined in the Plan as Administrative Claims) associated with the assumed Executory Contracts will be paid in accordance with Section 3.1.1 of the Plan.

**ARTICLE VI**
**PAYMENT AND DISTRIBUTIONS ON CLAIMS**

6.1     Manner of Payment

Any payment in Cash to be made by the Reorganized Debtor shall be made, at the election of the Reorganized Debtor, by check drawn on a domestic bank or by wire transfer from a domestic bank.

6.2     Funds and Accounts for Payment of Claims and Plan Implementation.

As soon as practicable after the Effective Date, the Reorganized Debtor shall establish and maintain the following funds and/or accounts to implement the Plan:

6.2.1     Disputed Claims Reserve.  As of and after the Effective Date, the Reorganized Debtor shall establish and maintain an interest-bearing account which shall be called the Disputed Claims Reserve, into which the Reorganized Debtor shall deposit the amounts that would otherwise be due to holders of Disputed Claims in accordance with the terms of the Plan.  Such Disputed Claims Reserve shall be maintained by the Reorganized Debtor until each Disputed Claim in each respective class has been allowed or disallowed by Order of the Bankruptcy Court.  Thereafter, any excess funds in the Disputed Claims Reserve shall be transferred back to the Reorganized Debtor. This paragraph shall not apply to the Class 8 Unsecured Claims to be paid from the Galardi Creditors Trust.

6.2.2     Plan Expense Reserve.  On the Effective Date, or as soon thereafter as reasonably practicable, the Reorganized Debtor may create out of any funds not subject to a lien a reserve for plan expenses, including costs necessary to adequately fund pursuit of Causes of Action which the Reorganized Debtor believes is likely to produce a recovery more than the costs of prosecution of such Causes of Action.  The Reorganized Debtor may reserve and transfer an appropriate amount of Cash into such plan account as the Reorganized Debtor deem necessary and desirable to pay plan expenses efficiently and promptly.

6.2.3     Accounts Established Pursuant to the Plan.  Unless otherwise provided in this Plan, monies deposited into any accounts established and maintained by the Reorganized Debtor under the Plan shall be invested as specified in this paragraph and need not comply with Bankruptcy Code Section 345.  Any accounts established by the Reorganized Debtor shall be established at a federally insured financial institution or may be invested in government-backed securities in a brokerage account approved by the United States Trustee.  For interest-bearing accounts, any interest earned upon balances

27

on deposit in such accounts shall be used to fund this Plan. The Reorganized Debtor may relocate any or all accounts to another federally insured financial institution or approved brokerage account, from time to time, until all payments provided for under this Plan have been made.

6.3     Payment of Claims and Interests.

Notwithstanding any other provision of this Plan, the Reorganized Debtor shall make no distribution to holders of Claims that are not Allowed Claims as defined in this Plan. Notwithstanding any other provision of this Plan, the Reorganized Debtor shall have discretion to make the distributions called for under the Plan at the times specified in the Plan, or earlier if the Reorganized Debtor deem such earlier distribution to be necessary or beneficial.

6.4     Disputed Claims.

The following provisions of this Plan apply only to Claims that are Disputed Claims. Notwithstanding any other provision of this Plan, a Disputed Claim shall not be deemed an Allowed Claim until such Claim becomes an Allowed Claim as provided in this Plan. The following provisions (Paragraphs 6.5—6.16) shall not apply to claims to be reviewed by the Liquidating Trustee and paid through the Galardi Creditors Trust, all as provided in the Trust Agreement, unless expressly provided herein, and Debtor specifically disclaims and waives any right to object to such claims.

6.5     Previously Disputed Claims that Are Subsequently Allowed.

6.5.1   Distributions on Subsequently Allowed Claims. Within fourteen (14) days from the date of which any order of the Bankruptcy Court allowing a previously Disputed Claim becomes a Final Order, with no appeal pending, or if an appeal is filed, the date on which all orders affirming allowance of such claims becomes non-appealable, the Reorganized Debtor shall withdraw from the applicable Disputed Claims Reserve an amount equal to the amount deposited into the Disputed Claims Reserve on account of each previously Disputed Claim and shall then pay the holder of such previously Disputed Claim the amount due on such Claim as of the date of such distribution to its Class. No interest shall be payable on account of any delayed distribution unless such interest is a distribution of Post-confirmation Interest specifically set forth in the Plan and payable for that Class. Any amounts in the Disputed Claims Reserve not paid to holders of Allowed, formerly Disputed Claims, shall be refunded to the Reorganized Debtor.

6.6     Allowance of Claims.

Except as expressly provided in this Plan, the Reorganized Debtor after Confirmation will have and retain all rights and defenses that the Debtor had with respect to any Claims as of the Petition Date, including the Causes of Action referenced in this Plan and the Disclosure Statement, and the Filing of any motions or other pleadings for estimation of the amounts of any Disputed Claims, except the Disputed Claims of Class 8 Unsecured Creditors which will be handled by the Liquidating Trustee in accordance with the Trust Agreement.

28

6.7   Examination and Objections to Claims.

6.7.1   Examination.  Following the Effective Date, the Reorganized Debtor, shall examine all Claims not previously objected to by the Debtor and shall have the responsibility of filing objections to the allowance of such Claims and continuing prosecutions of objections to Claims filed prior to the Effective Date, other than Class 8 Unsecured Claims.

6.7.2   Objection Deadlines.  Except as otherwise specified herein (including, without limitation, with respect to Administrative Claims, Fee Claims, Executory Contract Claims, and Class 8 Unsecured Claims), objections to Claims shall be Filed with the Bankruptcy Court and served upon Creditors by the Claims Objection Bar Date, which shall be no later than 120 days following the Effective Date or 120 days after such Claim is Filed, whichever date is later; provided, however, that this deadline may be extended by the Bankruptcy Court upon motion of the Reorganized Debtor, without notice or a hearing.  After an order, judgment, decree, or settlement agreement allowing a Disputed Claim becomes a Final Order, Distributions with respect to and on account of such previously Disputed Claim will be made.

6.7.3   Claims Resolution.    Objections to Claims may be litigated to judgment, settled, or withdrawn by the Reorganized Debtor.  The Liquidating Trustee shall litigate to judgment, settle, or withdraw objections to Class 8 Unsecured Claims.

6.7.4   Settlement of Disputed Claims over $50,000.00.  Any proposed settlement of a Disputed Claim where the original face amount of the Claim is more than $50,000 shall be subject to the approval of the Bankruptcy Court after 21-days' notice and an opportunity for a hearing has been served on the Special Notice Parties.

6.7.5   Settlement of Disputed Claims between $10,000 and $50,000. The Reorganized Debtor may settle Claims where the original face amount of such Claim is between $10,000 and $50,000 without Bankruptcy Court approval, provided that the Special Notice Parties shall have had 15-days' notice of any such proposed settlement prior to consummating the settlement.  If an objection to the proposed settlement is served on the Reorganized Debtor and Liquidating Trustee and not resolved consensually within 10 additional days after expiration of the 15-day notice period, the Bankruptcy Court shall determine whether such proposed settlement should be approved.

6.7.6   Settlement of Disputed Claims of less than $10,000.  If the original face amount of the Disputed Claim is less than $10,000, the Reorganized

Debtor has authority to settle such Claim without any notice or approval of any other party.

6.8     No Distributions to Holders of Disputed Claims.

Notwithstanding any other provision of this Plan, no Cash or other Property shall be distributed under the Plan or the Liquidating Trust Agreement on account of any Claim which is not an Allowed Claim.

6.9     Estimation of Claims.

The Debtor, the Reorganized Debtor, the Committee, or the Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any Claim pursuant to Section 502(c) of the Bankruptcy Code, as applicable, regardless of whether the Debtor, Reorganized Debtor, Creditors Committee, of Liquidating Trustee previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during the litigation concerning any objection to any Claims, including, without limitation, during the pendency of any appeal relating to any such objection. Subject to the provisions of Section 502(j) of the Bankruptcy Code, if the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute the Allowed amount of such Claim. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor, Reorganized Debtor, Creditors Committee or Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such Claim. The objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

6.10    Unclaimed Distributions.

Payment will be stopped on checks disbursed by the Reorganized Debtor to holders of Allowed Claims if such checks remain not cashed ninety (90) days after the date of disbursement. The Cash represented by such checks shall be property of the Reorganized Debtor pursuant to Section 347(b) of the Bankruptcy Code and shall be refunded to the Reorganized Debtor.

If any distribution on a Class 8 Unsecured Claim ("Unsecured Distribution") is tendered by the Liquidating Trustee to a Holder of a Class 8 Unsecured Claim and returned, refused or otherwise improperly returned or otherwise not cashed for a period of 120 days ("Unsecured Distribution Refusal"), the Liquidating Trustee shall not be responsible for making any further Unsecured Distribution on account of such Unsecured Claim and may stop payment on the check representing such distribution. Accordingly, in the event of an Unsecured Distribution Refusal, the Liquidating Trustee shall be relieved of any obligation to make said payment or distribution and shall disburse the distribution pro rata to the other holders of Class 8 Unsecured Claims.

6.11    Rounding of Dividend Amounts.

Notwithstanding any other provision of this Plan, the Reorganized Debtor shall not be required to make any distribution of less than $5.00 to the holder of any Allowed Claim and may round all distributions to the nearest $1.00.

6.12    Distributions to the Last Known Address

Distributions to holders of Allowed Claims will be sent to the last known address set forth on such holder's proof of Claim Filed with the Court, or on the Schedules, if no proof of Claim has been filed. Holders of Claims may change the address to which distributions, if any, will be sent by furnishing written notice to the Reorganized Debtor in accordance with Article X hereof. A proper notice of change of address will be effective for a distribution if received at least 30 days in advance of such a distribution date. U.S. Postal notifications of changes of address will be honored, provided that the Reorganized Debtor and Liquidating Trustee shall have no obligation to investigate the address of the holder of an Allowed Claim following expiration of such U.S. Postal notifications.

6.13    Assignment of Claims.

Notwithstanding Bankruptcy Rule 3001(e), written notice of any assignment of an Allowed Claim shall be given to the Reorganized Debtor by the assignee thereof before the Reorganized Debtor shall be obligated to direct distributions to such assignee. Absent receipt by the Reorganized Debtor of such written notice of assignment, neither the Reorganized Debtor nor the Estate shall have any liability to any such assignee or to any other Person on account of a misdirected distribution.

6.14    Withholding or other Taxes.

Any federal, state, or local withholding or other taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Persons holding Claims shall be required to provide any information necessary to affect the withholding of such taxes.

To receive distributions under the Liquidating Trust, all Holders of a Class 8 Unsecured Claim must provide evidence of their tax identification number reasonably acceptable to the Liquidating Trustee within six (6) months of the Effective Date. The Liquidating Trustee shall report all distributions as income to the appropriate taxing authorities.

6.15    Setoffs.

Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtor, Reorganized Debtor, or Liquidating Trustee, as applicable, may, but shall not be required to, setoff against any Claim and the payments or other distributions to be made pursuant to the Plan or Trust Agreement in respect of such Claim, claims of any nature whatsoever the Debtor may have against the holder of such Claim, including, without limitation, Claims against Affiliates,

but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor, Reorganized Debtor or Liquidating Trustee, as applicable, of any such Claim or other Claims, rights, or Causes of Action that the Debtor, Reorganized Debtor, or Liquidating Trustee may have against such holder.

### 6.16    Subordination Rights.

All subordination rights, claims, and defenses of the Debtor and Reorganized Debtor shall remain valid, enforceable, and unimpaired in accordance with Section 510 of the Bankruptcy Code or otherwise, except as otherwise specifically provided in this Plan.

**ARTICLE VII**
**ACCEPTANCE OR REJECTION OF THE PLAN**

### 7.1    Voting Classes.

The holders of Claims and Interests in Classes 6, 8 and 9 are impaired under the Plan, and, thus, are entitled to vote to accept or reject the Plan.  Holders of Claims in Class 1 through 5 and 7 are unimpaired under the Plan and are deemed to accept the Plan.

### 7.2    Class Acceptance Requirement.

Only holders of Claims in a voting class and as to which an objection is not pending shall be entitled to vote to accept or reject the Plan unless such claims have been estimated for purposes of voting.  A class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such class that have voted on the Plan.

### 7.3    Non-Consensual Confirmation.

If any class of Claims votes to reject the Plan or is deemed to reject the Plan, the Plan shall constitute a request that the Bankruptcy Court confirm the Plan over such rejection in accordance with Section 1129(b) of the Bankruptcy Code.  The Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan or the Disclosure Statement, including any exhibit or attachment, if necessary to satisfy the requirements of Section 1129(b) of the Bankruptcy Code.

### 7.4    Liquidation Analysis

If a plan pursuant to Chapter 11 is not confirmed by the Bankruptcy Court, the Chapter 11 case could be converted to a liquidation case under Chapter 7 of the Bankruptcy Code in which event a Chapter 7 trustee would be elected or appointed, pursuant to applicable provisions of Chapter 7 of the Bankruptcy Code, to liquidate the assets of the Debtor for distribution in accordance with the priorities established by the Bankruptcy Code.

The Debtor believes that liquidation under Chapter 7 of the Bankruptcy Code or the proposed Plan of Liquidation previously filed by the Creditors Committee will result in a substantial reduction in the value to be realized by holders of Claims as compared to Distributions contemplated under this Plan. This is so because a Chapter 7 liquidation would require the appointment of a trustee, unfamiliar with the debtor's business operations and the events that transpired during the Chapter 11 Case and who would likely be forced to close the businesses, thereby reducing the value of the estate.

Debtor believes appointment of a Chapter 7 trustee or liquidating trustee as previously proposed by the Creditors Committee would require substantial additional expenses (including Trustee fees and the costs associated with the Trustee's retention of attorneys and other professionals) and would delay orderly liquidation of the Estate Assets, thereby lowering recoveries to holders of Claims.

Consequently, the Debtor and Committee believe that confirmation of this Plan will provide a greater return to holders of Claims than a liquidation under Chapter 7 of the Bankruptcy Code or the Plan of Liquidation previously filed by the Creditors Committee. A copy of the liquidation analysis is attached to the Disclosure Statement.[4]

## ARTICLE VIII
## EFFECTS OF CONFIRMATION

### 8.1 Discharge of Debtor.

Under the Plan, the effects of Confirmation shall be as provided under Bankruptcy Code Sections 1141(a), (b), (c), and (d) and 11 U.S.C. § 524 (a).  Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code and in accordance with M.D.G.A. Local Bankruptcy Rule 3022-1(c).

### 8.2    Post-Confirmation Effect of Evidence of Claims.

On the Effective Date, except as otherwise provided in the Plan, all promissory notes, share certificates, warrants, membership interests, instruments, indentures, agreements, or other documents evidencing, giving rise to, or governing any Claim against the Debtor shall represent only the right, if any, to participate in the distributions contemplated by this Plan.

---

[4] 11 USC § 326(a) states that a Chapter 7 trustee would incur trustee's fees equal to 25% of the first $5,000 of Liquidation Value of Assets; 10% of amount in excess of $5,000 but not in excess of $50,000 of Liquidation Value of Assets; 5% of any amount in excess of $50,000 but not in excess of $1,000,000; 3% of any amount in excess of $1,000,000 of the Liquidation Value of Asset, and commissions for auctioneers for personal property generally is equivalent to ten (10%) percent of the gross sales price and commissions for real property brokers is generally six percent (6%) of the gross sales price. In addition, the attorney for the Chapter 7 trustee would incur attorney's fees as would the attorneys for the Debtor and Creditors Committee.

8.3     Exculpation and Limitation of Liability.

The Debtor, the Reorganized Debtor, the Committee and each of their respective members, affiliates, officers, directors, agents, attorneys, and employees (including Professionals) (collectively, the "Exculpated Persons") shall neither have nor incur any liability to any Person or Entity for any act taken or omitted to be taken by any Exculpated Person in connection with or related to the formulation, negotiation, preparation, dissemination, implementation, administration, Confirmation, or consummation of this Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with this Plan (except for any obligations of the Reorganized Debtor or the Estate arising under this Plan or in the Ordinary Course of Business).  Except for obligations arising under this Plan on or after its Effective Date, the Exculpated Persons shall have no liability to any Debtor, holder of a Claim, holder of an Interest, other party in interest in the Bankruptcy Case, or any other Person for actions taken or not taken under this Plan, in connection herewith or with respect hereto, or arising out of their administration of this Plan or the property to be distributed under this Plan, including failure to obtain Confirmation of this Plan or to satisfy any condition or conditions, or refusal to waive any condition or conditions, to the occurrence of the Effective Date, and in all respects such Exculpated Persons shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan or with respect to the Bankruptcy Case.  Provided, however, that the foregoing provisions of this paragraph shall have no effect on the liability of any Exculpated Person that results from any such act or omission that is determined in a Final Order to have constituted fraud or other willful misconduct.

8.4     Terms Binding.

Upon the entry of the Confirmation Order, all provisions of this Plan, including all agreements, instruments, and other documents filed in connection with this Plan and executed by the Debtor or the Reorganized Debtor in connection with this Plan, shall be binding upon the Reorganized Debtor, all Claim holders, and all other Persons that are affected in any manner by this Plan.  All agreements, instruments, and other documents filed in connection with this Plan shall have full force and effect and shall bind all parties thereto as of the entry of the Confirmation Order, whether or not such exhibits actually shall be executed by parties other than the Debtor or the Reorganized Debtor, or shall be issued, delivered, or recorded on the Effective Date or thereafter.

8.5     Continuation of Pre-Confirmation Injunction or Stays.

All injunctions or stays, whether by operation of law or by order of the Bankruptcy Court, provided for in the Bankruptcy Case pursuant to Sections 105, 362, or 525 of the Bankruptcy Code or otherwise that are in effect on the Confirmation Date or imposed by the Confirmation Order shall remain in full force and effect until the Final Decree.

8.6     Non-recognition of Cancellation of Debt Income by the Debtor

All debts discharged or rendered uncollectible from the Debtor under this Plan or arising out of or related to the Bankruptcy Case shall not be included in the gross income of the Debtor

34

as cancellation of debt income pursuant to 26 U.S.C. §108, and the Debtor shall incur no income tax liability on account thereof.

**8.7** <u>Conditions Precedent to Effective Date</u>.

The Effective Date shall not occur and the Plan shall not become effective unless and until the Confirmation Order is entered and not subject to any stay or injunction.

## ARTICLE IX
## RETENTION OF JURISDICTION

**9.1** <u>Continuing Jurisdiction</u>.

Notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, until such time as all payments and distributions required to be made and all other obligations required to be performed under this Plan have been made and performed by the Reorganized Debtor and the Bankruptcy Case is closed by Final Decree, the Bankruptcy Court shall have and retain the maximum jurisdiction as is legally permissible, including, without limitation, jurisdiction over the Reorganized Debtor' assets (including the Property and the Causes of Action), the Reorganized Debtor, the Galardi Creditors Trust, the Liquidating Trustee, and the Estate for the following purposes:

(a) <u>Claims.</u> To determine the allowance, classification, validity, priority of, or any dispute with respect to Claims against the Debtor upon motion by the Reorganized Debtor, the Liquidating Trustee, or any other party in interest;

(b) <u>Injunction, etc.</u> To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Bankruptcy Cases on or before the Effective Date with respect to any Entity;

(c) <u>Professional Fees.</u> To determine, before or after the Effective Date, any and all applications for allowance of compensation and expense reimbursement of Professionals for services rendered before the Effective Date, as provided for in the Plan;

(d) <u>Certain Priority Claims.</u> To determine any Priority Tax Claims, Non-Tax Priority Claims, or any request for payment of Administrative Claims;

(e) <u>Dispute Resolution.</u> To resolve any dispute arising under or related to the implementation, execution, consummation, or interpretation of the Plan and the making of distributions thereunder, including, without limitation, any dispute concerning payment of Professional fees and expenses of the Reorganized Debtor;

(f)     Leases and Executory Contracts.  To determine the allowance of any Claims or other disputes resulting from the rejection of Executory Contracts and unexpired leases;

(g)     Actions.  To determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted prior to the closing of the Bankruptcy Cases, including the determination of all controversies and disputes arising under and in connection with the Debtor's Property, the Causes of Action, assets, and any remands;

(h)     Plan Modification.  To modify the Plan under Section 1127 of the Bankruptcy Code and remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order, so as to carry out its intent and purposes;

(i)     Aid Consummation.  To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Entity, to the full extent authorized by the Bankruptcy Code;

(j)     Implementation of Confirmation Order.  To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(k)     General Matters.  To determine all such other matters, and for such other purposes, as may be provided in the Confirmation Order, the Plan, or as otherwise may be authorized or not inconsistent with the provisions of the Bankruptcy Code;

(l)     Final Decree.  To enter an order and/or Final Decree closing the Bankruptcy Cases.

(m)     Galardi Creditors Trust.  To determine all matters regarding or related to the administration of the Galardi Creditors Trust.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

10.1     Pre-Confirmation Modification.

The Plan may be altered, amended, or modified by the proponent before the Confirmation Date as provided in Section 1127 of the Bankruptcy Code.

10.2     Post-confirmation Immaterial Modification.

Notwithstanding any other provision of this Plan, the Reorganized Debtor and the Liquidating Trustee, as applicable, may, without application to or specific authorization by the

Court, prepay any Allowed Claim provided for under this Plan in whole or in part at any time, or enter into an agreement with any such Holder for other or lesser treatment or payment of such claim other than provided under this Plan. The Debtors, Reorganized Debtors, and the Liquidating Trustee may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Interests, insofar as it does not materially and adversely affect the interest of holders of Claims, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary to expedite consummation of this Plan.

    10.3    Post-confirmation Material Modification.

    The Plan may be altered or amended after the Confirmation Date by the Reorganized Debtor in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects holders of Claims, provided that any such alteration or modification to or affecting a settlement agreement may be made only with the prior written consent of all parties to such settlement agreement (which such settlement agreements shall include the treatment of Class 8 Unsecured Claims negotiated between the Debtor and the Committee and which shall require the Committee or Liquidating Trustee's prior written consent to matters affecting the Class 8 Unsecured Claims or the Galardi Creditors Trust) and any other modification to the Plan is made after a hearing as provided in Section 1127 of the Bankruptcy Code. Subject to the foregoing provisions of this Section 10.3, notwithstanding the administrative closing of the Case, the Reorganized Debtor may propose amendments or modifications to this Plan at any time prior to or subsequent to Confirmation in accordance with the Bankruptcy Code and applicable Bankruptcy Rules. If the Bankruptcy Case has been closed, such modification may be approved and binding upon the holders of all claims provided under this Plan, without reopening the Bankruptcy Case, as follows:

        (a)    The Reorganized Debtor shall give written notice of the proposed modification to the remaining holders of all Claims provided for under this Plan that have not been paid in full at the time of such modification. Such notice shall provide that the holders of such Claims may approve or reject the modification within forty-five (45) days from the date of the mailing of such notice. The proponent of the modification shall mail a Ballot to each claimant with such Notice.

        (b)    Only Ballots which are completed and returned within the forty-five (45) day period shall be counted in determining whether Creditors have approved such modification. Such modification shall be deemed accepted and binding upon all remaining claimants in any Class which accept such modification by a total of fifty-one percent (51%) of the Claims voting on account of such modification, provided such voting claims constitute two-thirds (2/3) of the outstanding remaining Claims in such Class.

        (c)    If such modification is so accepted, the modification shall be deemed contractually binding upon all members of the affected Class.

        (d)    Only members of any Class of Claims affected by such modification shall be entitled to vote.

10.4    Withdrawal or Revocation of the Plan.

The Debtor and Committee jointly reserves the right to revoke or withdraw the Plan prior to Confirmation.

10.5    Exemption from Transfer Taxes.

Pursuant to Section 1146(a) of the Bankruptcy Code, the Confirmation Order, and any sale orders entered in the Bankruptcy Case, the transfer or making or delivery of any instrument whatsoever in furtherance of or in connection with the Plan and Galardi Creditors Trust, including, without limitation, any transfer of the Assets, subsequent transfers to creditors or purchaser(s), and any assignments, documents, instruments, and agreements and other conveyance documents executed and delivered by the Reorganized Debtor or Liquidating Trustee in connection with the sale of the Assets in furtherance of the implementation of the Plan and Galardi Creditors Trust or otherwise, shall not be subject to any stamp, real estate transfer, personal property, recording, or other similar tax.  Any conveyance of real property made as provided under this Plan or Galardi Creditors Trust or in furtherance of this Plan and Galardi Creditors Trust shall include the notation: "*This instrument is exempt from Transfer Taxes by virtue of 11 U.S.C. §1146(a).*"

10.6    Payment of Compensation to Professional Persons for Services Rendered after Confirmation.

Compensation and reimbursement of expenses earned and incurred by professionals performing services for the Reorganized Debtor after confirmation of the Plan shall be paid by the Reorganized Debtor monthly after rendition of bills to the Reorganized Debtor, and no further applications for compensation or reimbursement of expenses shall be necessary or required unless a dispute arises.  In the event of any such dispute, the same shall be resolved by the bankruptcy court after notice and hearing.

10.7    Final Decree.

Notwithstanding any other provision of this Plan, the Final Decree shall be entered upon substantial consummation of the Plan, notwithstanding that all payments under the Plan have not been made or are not yet due.

10.8    Effectuating Documents, Further Transactions, and Corporate Action.

The Debtor, the Reorganized Debtor, all holders of Allowed Claims receiving distributions under this Plan, the Liquidating Trustee, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

10.9    Reservation of Rights.

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order and the Confirmation Order shall continue to be in effect.  The filing of this Plan, any statement, or provision contained in this Plan, or the taking of any action by the Debtor or Reorganized Debtor, shall not be and shall not be deemed to be an admission or waiver of any rights of the Debtor or Reorganized Debtor with respect to the holders of Claims or Equity Interests or otherwise.

10.10   Successors and Assigns.

The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such Entities.

10.11   Governing Law.

Except to the extent that the Bankruptcy Code is applicable, the remaining rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of Georgia.

10.12   Notices.

10.12.1     Unless a recipient of a notice required under this Plan has consented to receive such notice electronically, all notices, requests, or other communications, required or permitted to be made in accordance with this Plan, including any change of address of any Person for the purpose of receiving distributions, shall be in writing and shall be delivered (a) personally, (b) by facsimile or email (confirmed by first class mail or express mail), or (c) mailed by first class mail.

10.12.2     Any such notice shall be deemed to have been given when received or, if mailed by first class mail, seven days after the date of mailing, postage prepaid, or, if express mailed, the next business day after the date of mailing, or if sent by facsimile or email, upon confirmation of receipt by the recipient; provided, however, that a proper notice of change of address will be effective for a distribution if received at least 30 days in advance of such distribution date.

10.12.3     Notices should be addressed as follows:

(a)     If to the Reorganized Debtor:

Teri G. Galardi
2146 Hwy 42 South
Flovilla, Georgia 30216

With a copy to:
Louis G. McBryan
MCBRYAN, LLC

6849 Peachtree Dunwoody Road
Building B-3, Suite 100
Atlanta, Georgia 30328
lmcbryan@mcbryanlaw.com
Counsel for Debtor

And a copy to:
Christopher W. Terry
BOYER TERRY LLC
348 Cotton Avenue, Suite 200
Macon, Georgia 31201
chris@boyerterry.com
Counsel for Debtor

(b) If to the Committee:

Shadana Deleston
c/o Mutepe Akemon
P.O. Box 360295
Decatur, GA 30036
mutepe.akemon@richardslegal.com

Abrey Leahong
c/o Mutepe Akemon
P.O. Box 360295
Decatur, GA 30036
mutepe.akemon@richardslegal.com

Addie Brooks
c/o Ainsworth Dudley
4200 Northside Parkway, 1-200
Atlanta, GA 30327
adudleylaw@gmail.com

JONES & WALDEN, LLC
699 Piedmont Ave NE
Atlanta, GA 30308
tmcclendon@joneswalden.com
Counsel for the Committee

(b)      If to any holder of an Administrative Claim, a Priority Tax
Claim or a Claim of any Class, at their last known address set forth on a
Proof of Claim or on the Schedules, if no Proof of Claim has been filed.

40

(c)     If to any other Persons entitled to notice, at the respective addresses that such Persons entitled to notice have provided to the Reorganizing Debtor.

10.12.4      Any party may change the address at which it is to receive notices under the Plan by furnishing written notice pursuant to the provisions of this Article X to the Entity to be charged with knowledge of such changes.

10.13   Conflicts.

To the extent any provision of the Disclosure Statement, and any documents executed in connection with the Confirmation Order (or any exhibits, schedules, appendices, supplements, or amendments to the foregoing), conflict with or is in any way inconsistent with the terms of this Plan, the terms and provisions of this Plan shall govern and control.

10.14   Severability.

If, following Confirmation of this Plan, any provision of this Plan is determined to be unenforceable in whole or in part, either facially or applied, such determination shall in no way limit or affect the enforceability or operative effect of any other provision of the Plan or require the re-solicitation of any acceptance or rejection of the Plan, unless, in the absence of such provision, this Plan would fail of its essential purpose, as determined by the Bankruptcy Court. Upon such a finding, the Debtor' period of exclusivity within which to file an amended plan shall be reinstated for a period of 60 days from the date such a finding becomes a Final Order, and the Debtor' period of exclusivity for solicitation of acceptances shall be enlarged for 105 days from the date such a finding becomes a Final Order.

10.15   Prior Orders are Superseded by Plan Provisions.

Except as otherwise expressly provided by a previous order of the Court, this Plan and the order confirming this Plan expressly supersede all orders entered during the pendency of this case relating to cash collateral or adequate protection to the holder of any claim.  Upon confirmation of this Plan, such orders shall be of no further effect, except that any replacement lien or security interest granted thereby shall be deemed as continuing from the Petition Date, until and including the claim associated with such lien or security interest has been paid in full.

IN WITNESS WHEREOF, the undersigned have caused this Plan to be duly executed as of the date written below, which execution may be in multiple identical counterparts.

*[Signatures on following page.]*

41

Dated this 10th day of April 2023.

**TERI G. GALARDI**

*/s/ Teri G. Galardi*
Debtor

**MCBRYAN, LLC**

*/s/ Louis G. McBryan*
Louis G. McBryan
6849 Peachtree Dunwoody Road
Building B-3, Suite 100
Atlanta, Georgia 30328
(678) 733-9322
lmcbryan@mcbryanlaw.com
Counsel for Debtor

**BOYER TERRY LLC**

*/s/ Christopher W. Terry*
Christopher W. Terry
348 Cotton Avenue, Suite 200
Macon, Georgia 31201
(478) 742-6481
chris@boyerterry.com
Counsel for Debtor

**The Official Committee of Unsecured Creditors**

*/s/Shadena Deleston (by Mutepe Akemon as proxy holder)*
Shadana Deleston
By: Mutepe Akemon, as Proxy Holder
Member, Committee of Unsecured Creditors of Teri G. Galardi

*/s/Abrey Leahong (by Mutepe Akemon as proxy holder)*
Abrey Leahong
By: Mutepe Akemon, as Proxy Holder
Member, Committee of Unsecured Creditors of Teri G. Galardi

*/s/Addie Brooks (by Ainsworth Dudley as proxy holder)*
Addie Brooks
By: Ainsworth Dudley, as Proxy Holder
Member, Committee of Unsecured Creditors of Teri G. Galardi

**JONES & WALDEN, LLC**

*/s/ Thomas T. McClendon*
Leon S. Jones
Georgia Bar No. 003980
Thomas T. McClendon
Georgia Bar No. 431452
699 Piedmont Avenue, NE
Atlanta, Georgia 30308
(404) 564-9300
ljones@joneswalden.com
tmcclendon@joneswalden.com
Attorneys for Committee of Unsecured Creditors

42

**SCHEDULE 1**
**TO**
**PLAN OF REORGANIZATION OF THE DEBTOR**

**DEFINED TERMS**

As used in the Plan and in the accompanying Disclosure Statement, capitalized terms have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1   "Administrative Claim" means Post-Petition Obligations evidencing a right to payment for costs and expenses of administration allowed under Sections 507(a) and 503(b) and otherwise under the Bankruptcy Code, including, but not limited to: (a) Fee Claims including reimbursement of expenses awarded or allowed under Sections 330(a) or 331 of the Bankruptcy Code or otherwise arising under this Plan; (b) plan expenses and the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor; (c) Cure Costs; (d) payroll obligations; and (e) all fees and charges assessed against the Debtor's Estate under Chapter 123 of Title 28 of the United States Code, 28 U.S.C. Sections 1911-1930. Except as otherwise provided herein, Administrative Claims must be allowed by Order of the Bankruptcy Court.

1.2   "Administrative Claim Bar Order" means an Order of the Bankruptcy Court, to be entered at the time of, or as a provision of the Confirmation Order, setting a Bar Date for the filing of requests for allowance of Claims for Administrative Expenses to which such Bar Date is applicable under the terms of this Plan.

1.3   "Affiliate" shall have the meaning set forth in Section 101(2) of the Bankruptcy Code.

1.4   "Allowed Claim" means:

(a)   Claim that has been listed by the Debtor on her Schedules, as filed or as subsequently amended, as other than disputed, contingent, or unliquidated, to the extent that it is not otherwise a Disputed Claim;

(b)   Claim for which a Proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law, to the extent that it is not otherwise a Disputed Claim; or

(c)   Claim that is allowed: (i) in any Stipulation of Amount and Nature of Claim executed by the Debtor or the Reorganized Debtor, as applicable, and Creditor; (ii) in any contract, instrument, or other agreement entered into in connection with the Plan; (iii) in a Final Order; or (iv) pursuant to the terms of the Plan.

(d)     Notwithstanding any other provision of this Plan, no Allowed Claim may include any claim for statutory attorneys' fees under O.C.G.A. §13-1-11.

1.5     "Allowed . . . Claim" means an Allowed Claim in the particular Class or category specified.

1.6     "Allowed Priority Tax Claim" means an Allowed Claim that is a Priority Tax Claim, except that such claim shall not include any interest or penalty accruing after the Petition Date, except as specifically provided for in the Plan.

1.7     "Allowed Secured Claim" means the amount of each Allowed Claim against the Debtor which is equal to: (a) the amount stipulated as constituting the Allowed Secured Claim between the Debtor and the holder of such claim, (b) the amount found to constitute such Allowed Secured Claim by the Bankruptcy Court, or (c) the lesser of (i) the total amount of indebtedness owed to the holder of such claim; or (ii) the value of any property of the Estate or proceeds thereof with respect to which such creditor held a security interest or judgment lien properly perfected under the laws of the applicable jurisdiction on the Petition Date, and on the Effective Date to the extent provided under 11 U.S.C. Section 506.

1.8     "Allowed Unsecured Claim" means an Allowed Claim that is an Unsecured Claim.

1.9     "Asset(s)" mean all Property of the Debtor and the Estate and all Causes of Action of the Debtor and the Estate, all of which shall be deemed to be retained and preserved for enforcement and under the custody and control of the Estate and the Debtor, as applicable, through the Reorganized Debtor, as the authorized representative of the Debtor and the Estate, and administered by the Reorganized Debtor as of the Effective Date, as further set forth herein.

1.10     "Ballot" means a ballot filed in the Bankruptcy Case, within the time set by the Court for filing such Ballots, accepting or rejecting this Plan.

1.11     "Balloting Report" means a report of all valid ballots filed by the Debtor prior to the Confirmation of this Plan, as required by the Local Rules of the Bankruptcy Court.

1.12     "Bankruptcy Case" means that certain case filed in the United States Bankruptcy Court for the Middle District of Georgia, Macon Division by the Debtor under Chapter 11 of the Bankruptcy Code captioned *In re: Teri G. Galardi; Chapter 11, Case No. 22-50035-JPS.*

1.13     "Bankruptcy Causes of Action" means all causes of action available to the Debtor as Debtor-in-Possession in the Bankruptcy Case, including, but not limited to, all other Claims, actions, avoiding powers, rights of recovery, subordination rights, or other actions against Insiders and/or any other Persons or Entities under the Bankruptcy Code, including Sections 505, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or any other applicable fraudulent conveyance, fraudulent transfer, or preference or otherwise under the Bankruptcy Code, or otherwise arising in law, equity, or admiralty, and maintainable by the

Debtor-in-Possession and the Reorganizing Debtor for the recovery of money or property, seeking modification, disallowance, re-characterization, or equitable subordination of Claims, or other relief.

    1.14    "<u>Bankruptcy Code</u>" or "<u>Code</u>" means title 11 of the United States Code.

    1.15    "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Middle District of Georgia, Macon Division.

    1.16    "<u>Bankruptcy Rules</u>" or "<u>Rules</u>" mean, collectively, the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, as now in effect with respect to the Bankruptcy Case.

    1.17    "<u>Bar Date</u>" means the applicable bar date by which a Proof of Claim, proof of Interest, Ballot, or Notice must be or must have been Filed, as established by an order of the Bankruptcy Court, Bankruptcy Code, or Bankruptcy Rules, including the Bar Date Order and the Confirmation Order.

    1.18    "<u>Bar Date Order</u>" means, as applicable, the Confirmation Order or the Order Establishing Bar Dates for Filing Proofs of Claims, proofs of Interests, Ballots, or Notices, entered by the Bankruptcy Court, as the same may have been or may be amended, modified, or supplemented.

    1.19    "<u>Cash</u>" means cash, cash equivalents and other readily marketable securities or instruments, including, without limitation, direct obligations of the United States of America and certificates of deposit issued by federally insured banks.

    1.20    "<u>Causes of Action</u>" includes all Claims, actions, choses in action, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and cross claims, or any other claims whatsoever of the Debtor, the holders of Interests in the Debtor (but only with respect to Causes of Action of such Interest-holders against the Debtor on account of or arising out of ownership of such Interests) and/or the Estate that are or may be pending on the Effective Date or instituted by the Debtor or the Reorganized Debtor, either before or after the Effective Date against any Person or Entity, including, without limitation, Bankruptcy Causes of Action or Claims against Affiliates, whether under the Bankruptcy Code, or otherwise, whether direct, indirect, derivative, or otherwise, and whether asserted or unasserted, known or unknown, suspected or unsuspected, whenever arising, whether prior to, on, or after the Effective Date, and of any character or kind whatsoever, whether based in contract, in tort, or otherwise, at law or in equity or under any other theory of law, including, but not limited to, (a) those actions generally or specifically retained or discussed in the Disclosure Statement or Plan; (b) Bankruptcy Causes of Action; (c) Commercial Tort Claims; (d) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law; (e) the right to object to Claims or interests; (f) claims pursuant to Section 362 of the Bankruptcy Code; (g) such claims and defenses as fraud, mistake, duress, usury; and (h) any other theory, without limitation and all other claims

arising out of or related to any of the foregoing or discovered during or as a consequence of the pursuit of any of the foregoing. As used in the Plan, Causes of Action is intended to have the broadest possible meaning to ensure the ability of the Debtor, or the Reorganized Debtor to pursue any available action supported in fact, in law, in equity, in admiralty, or otherwise, and none of the specific examples provided herein shall be construed as limiting the scope or meaning of such term.

1.21    "Claim" means "the term claim," as defined in Section 101(5) of the Bankruptcy Code, against the Debtor or in favor of the Debtor or the Estate against third parties.

1.22    "Claims against Affiliates" include: all Causes of Action available to Debtor as a debtor-in-possession in the Bankruptcy Case against Affiliates or Insiders, including, but not limited to, all Claims, actions, avoiding powers, rights of recovery, subordination or re-characterization rights or other actions against Insiders or Affiliates under the Bankruptcy Code, including Sections 505, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or any other applicable fraudulent conveyance, fraudulent transfer, or preference statute, rule, regulation, or ordinance or otherwise under the Bankruptcy Code or otherwise arising in law, equity, or admiralty, and maintainable for the recovery of money or property, seeking modification, disallowance, re-characterization, or equitable subordination of Claims, or other relief.

1.23    "Claims Objection Bar Date" means the latest of: (a) thirty-five (35) days following the Effective Date; (b) 120 days after the Filing of a Proof of Claim for such Claim; (c) such other period of limitation as may be specifically fixed by the Plan, the Confirmation Order, the Bankruptcy Rules, or a Final Order for objecting to the applicable Claim; and (d) such later date as provided for by order of the Bankruptcy Court, which order may be entered without further notice.

1.24    "Class" means a class of Claims or Interests, as described in Article II of this Plan.

1.25    "Collateral" means any property of the Debtor that is subject to a valid and enforceable lien to secure a Claim.

1.26    "Commercial Tort Claims" means any tort claim of the Debtor arising in connection with the Debtor's operations, formation, acquisition of his assets, or otherwise including, but not limited to, claims for professional malpractice, director or officer liability, trespass to real or personal property, negligent construction, interference with existing or prospective contractual rights or relationships, or violations of the bankruptcy automatic stay.

1.27    "Confirmation" means the entry of the Confirmation Order on the docket of the Bankruptcy Court within the meaning of Bankruptcy Rules 5003 and 9021.

1.28    "Confirmation Date" means the date of Confirmation.

1.29    "Confirmation Hearing" means the hearing held by the Bankruptcy Court on Confirmation of the Plan, as such hearing may be continued from time to time.

1.30    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.31    "Creditor" means any Person that is the holder of a Claim against any of the Debtor.

1.32    "Creditors Committee" or "Committee" means The Official Committee of Unsecured Creditors appointed by the Court in this Bankruptcy Case.

1.33    "Cure Costs" means such amount as may be found by the Bankruptcy Court to be due to the holder of an Executory Contract to assume an Executory Contract in accordance with 11 U.S.C. § 365.

1.34    "Debtor" means Teri G. Galardi, Debtor and Debtor-in-Possession under the Bankruptcy Case and as Debtor and Debtor-in-possession under the Bankruptcy Code.

1.35    "Deficiency Claim" means the Allowed Unsecured Claim held by the holder of an Allowed Secured Claim after treatment of such Allowed Secured Claim as provided in this Plan, or the amount by which any holder of an Allowed Secured Claim is owed amounts by the Debtor after repossession, foreclosure, and the sale of property securing such claim, to the extent enforceable under applicable law.

1.36    "Disclosure Statement" means the disclosure statement (including all exhibits and schedules thereto or referenced therein) that relates to the Plan, incorporating the terms of this Plan, including the defined terms provided herein, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code, as the same may be amended, modified, or supplemented.  The terms of the Disclosure Statement are incorporated herein and made a part of this Plan by this reference thereto.  *In the event of any conflict of terms between the Disclosure Statement and this Plan, the term or terms of this Plan shall govern.*

1.37    "Disposable Income" means current monthly income received by the Debtor less amounts reasonably necessary to be expended (i) for the maintenance or support of the Debtor or a dependent of the Debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; (2) for charitable contributions in an amount not to exceed fifteen percent (15%) of gross income of the Debtor for the year in which the contributions are made; and (3) if the Debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

1.38    "Disposition" means any sale, conveyance, transfer, assignment, liquidation, or abandonment of any Assets by the Reorganized Debtor.

1.39    "Disputed Claim" means:

(a)      if no Proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law: (i) a Claim that is listed on the Debtor's Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtor, the Reorganized Debtor, or any other party in interest has Filed an objection by the Claims Objection Bar Date; or

(b)      if a Proof of Claim or request for payment of an Administrative Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law, a Claim for which an objection has been Filed by the Debtor, the Reorganized Debtor, or any other party in interest, by the Claims Objection Bar Date, if such objection has not been withdrawn or denied by a Final Order.

1.40    "Disputed Claims Reserve" means the interest-bearing account to be established and maintained by the Reorganized Debtor or Liquidating Trustee, as applicable, to reserve for all Disputed Claims, as further provided in the Plan, provided that claims for Statutory Attorneys' Fees shall not be considered Allowed Claims for any purpose under this Plan and no escrow shall be provided hereunder with respect to any such claim.

1.41    "Effective Date" means the first day that is a Business Day (a) that is not less than fourteen (14) days following the Confirmation Date and (b) no stay of the Confirmation Order is in effect.

1.42    "Equity Interest" means the rights of the Debtor in her Assets.  The value of the Debtor's Equity Interest shall equal the value of the Debtor's interest in her Assets as of the Petition Date.

1.43    "Estimated Claim" means any Claim, the amount of which has been estimated by the Bankruptcy Court pursuant to 11 U.S.C. § 502(c).  An Estimated Claim shall not be deemed an Allowed Claim and no distribution shall be made on account of an Estimated Claim under this Plan until the Bankruptcy Court has determined the actual amount of the Claim.  Until such time, all Estimated Claims shall be treated as Disputed Claims under this Plan.

1.44    "Estate" means the Estate created for the Debtor in the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

1.45    "Exculpated Persons" shall have the meaning set forth in Section 8.3 of the Plan.

1.46    "Executory Contract" means a contract between or among the Debtor and a third party under which all parties owed continuing obligations of performance on the Filing Date as defined under case law interpreting Section 365 of the Bankruptcy Code, notwithstanding O.C.G.A. § 13-1-2.

1.47    "Federal Judgment Rate" means the Federal Judgment Rate provided under 28 U.S.C. §1961 in effect on the Effective Date, or such other rate as the Bankruptcy Court may determine at the Confirmation Hearing is appropriate, such interest to accrue from the Effective Date with respect to those Allowed Claims specifically entitled to such interest under this Plan.

1.48    "Fee Claim" means a Claim under Sections 330(a), 331, 503, or 1103 of the Bankruptcy Code for compensation of a Professional or other Entity for services rendered or expenses incurred in the Bankruptcy Case from the Petition Date through the Effective Date.

1.49    "File," "Filed," or "Filing" means file, filed, or filing with the Bankruptcy Court in the Bankruptcy Case.

1.50    "Final Decree" means a final decree as described in Bankruptcy Rule 3022.

1.51    "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Bankruptcy Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired.

1.52    "GAAP" means United States generally accepted accounting principles, consistently applied, as in effect on the Effective Date of this Plan.

1.53    "Galardi Creditors Trust" means the liquidating trust created by the Plan for distribution to payments to holders of Allowed Unsecured Claims by the Liquidating Trustee in accordance with the terms of the Plan and the Liquidating Trust Agreement.

1.54    "Governmental Entity" means any federal, state, or local or foreign government, any political subdivision thereof or any court, administrative or regulatory agency, department, instrumentality, body or commission or other governmental authority or agency, domestic or foreign.

1.55    "IRC" means the United States Internal Revenue Code of 1986, as amended.

1.56    "IRS" means the Internal Revenue Services agency of the United States.

1.57    "Insider" shall have the meaning set forth in Section 101 of the Bankruptcy Code.

1.58    "Insurance Claim" means any claim of the Debtor under any Insurance Contract covering the Debtor or any interest of the Debtor in property, arising prior to or following the Effective Date of this Plan, including claims of the Debtor against third parties to the extent covered by Debtor's insurance.

1.59    "Insurance Contract" means any contract of insurance to which the Debtor was a party on the Petition Date or on any date thereafter until the Effective Date of this Plan, or thereafter for the term of the Insurance Contract.

1.60    "Litigation Costs" means the good faith estimate of the Reorganized Debtor of all actual and necessary costs and expenses to be incurred after the Effective Date in connection with investigating, prosecuting, settling, or otherwise pursuing the Causes of Action and the actual costs of the Litigation.

1.61    "Liquidating Trustee" means Thomas T. McClendon, or an alternative disinterested third-party selected by the Committee, as the Trustee of the Galardi Creditors Trust, approved by the Court and established under the Plan.

1.62    "Non-Tax Priority Claims" means any Claim that is entitled to priority in payment pursuant to Section 507(a)(3), (4), (5) or (6) of the Bankruptcy Code and that is not a Priority Tax Claim, Administrative Claim, or a Secured Claim.

1.63    "O.C.G.A." means the Official Code of Georgia Annotated, as amended.

1.64    "Person" means a natural person, or any legal entity or organization including, without limitation, any corporation, partnership (general or limited), limited liability company, business trust, unincorporated organization or association, joint stock company, trust, association, governmental body (or any agency, instrumentality, or political subdivision thereof), or any other form of legal entity.

1.65    "Petition Date" means January 12, 2022.

1.66    "Plan" means this plan of reorganization for the Debtor and all exhibits and schedules attached hereto or referenced herein, which exhibits shall be part of the Plan as if set forth fully herein, as any of the same may be amended, modified, or supplemented.

1.67    "Post-Confirmation Interest" means simple interest at five percent (5%) per annum, or such other rate as the Bankruptcy Court may determine at the Confirmation Hearing is appropriate, such interest to accrue from the Effective Date with respect to those Allowed Claims specifically entitled to such interest under this Plan.

1.68    "Post-petition Obligations" means, with respect to accounts payable or other obligations of the Debtor, such accounts or obligations which have arisen in the ordinary course of the Debtor's business, or obligations that are otherwise granted Administrative Expense status under the Plan, after the date of the filing of the Bankruptcy Case and before confirmation of this Plan, exclusive of interest accruals on account of Pre-petition Obligations of the Debtor.

1.69    "Pre-petition" means prior to January 12, 2022, the date of the filing of the voluntary petitions under Chapter 11 by the Debtor.

1.70    "Pre-petition Obligations" means all obligations of the Debtor arising Pre-petition.

1.71    "Priority Tax Claim" means a Claim that is entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.72    "Professional" means any professional employed in the Bankruptcy Case pursuant to Sections 327 or 1103 of the Bankruptcy Code or any professional or other Entity

seeking compensation or reimbursement of expenses in connection with the Bankruptcy Case pursuant to Section 503(b)(4) of the Bankruptcy Code.

1.73    "Proof of Claim" means a writing complying in all respects with Bankruptcy Rule 3001, and filed in compliance with Bankruptcy Rule 3003, within the time provided by any Bar Date Order entered in the Bankruptcy Case, or any other Order specifically applicable to such writing.

1.74    "Pro Rata" means, when used with reference to a distribution to Holders of Allowed Claims, that the gross amounts to be paid will be divided and paid proportionately, so that with respect to a particular Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of such Claim to (ii) the Allowed Amount of such Claim, is the same as the ratio of (b)(i) the amount of property distributed on account of all Allowed Claims of the Class in which such Claim is included to (ii) the amount of all Allowed Claims in that Class.  In determining such ratio, the Reorganized Debtor and Liquidating Trustee shall not include interest otherwise accruing upon such Claim after the Effective Date, may round percentages to the nearest 1/100th (.01), and may round each resulting claim to the nearest one dollar ($1.00).

1.75    "Reorganized Debtor" means the Debtor following the Effective Date of this Plan.

1.76    "Sales" means the sale by the Debtor to buyers in the Ordinary Course of Business either before or following the Effective Date of this Plan.

1.77    "Schedules" mean the schedules of assets and liabilities and the statements of financial affairs Filed by the Debtor, as required by Section 521 of the Bankruptcy Code and the official bankruptcy forms, as the same may have been or may hereafter be amended, modified, or supplemented by the Debtor or the Reorganized Debtor, as the case may be.

1.78    "Secured Claim" means a Claim that is secured by a lien on Property in which Debtor's Estate has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such Property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Sections 506(a), and if applicable, 1129(b) of the Bankruptcy Code.

1.79    "Set-off Claims" means all Allowed Secured Claims secured solely by rights of set-off against Accounts Receivable due the Debtor on the Petition Date, to the extent allowed under Section 553 of the Code.

1.80    "Special Notice Parties" means the Debtor, Creditors Committee, Liquidating Agent, and United States Trustee, and any other parties that have requested in writing a relevant special notice from the Reorganized Debtor.

1.81    "Statutory Attorneys' Fees" shall mean the portion of any Claim constituting Pre-petition attorneys' fees charged against the Debtor under O.C.G.A. § 13-1-11.

1.82    "Stipulation of Amount and Nature of Claim" means a stipulation or other agreement between the Debtor or the Reorganized Debtor and a Creditor, or an agreed order of the Bankruptcy Court, establishing the amount and nature of a Claim.

1.83    "Subsequently Allowed Claims" means any Claim which becomes an Allowed Claim after the Effective Date.

1.84    "Uniform Commercial Code" means the Uniform Commercial Code suggested by the Commission of Uniform State Laws, as enacted and in force in the State of Georgia on the Closing Date.

1.85    "Unsecured Claim" means any Claim allowed under 11 U.S.C. § 502, that is not an Administrative Claim, Non-Tax Priority Claim, Priority Tax Claim, Secured Claim, or an Interest.

1.86    "Voting Deadline" means the deadline set by the Court for receipt of Ballots respecting this Plan.

[END OF DEFINED TERMS]

Exhibit "C"

# TRUST AGREEMENT

### *for the*

# GALARDI CREDITORS TRUST

**Dated as of April 25, 2023**

*by and between*

***Teri G. Galardi***
***as Debtor and Debtor-in-Possession***

**AND**

**THOMAS T. MCCLENDON**
***as Liquidating Trustee***

## GALARDI CREDITORS TRUST AGREEMENT

This Trust Agreement (the "Trust Agreement"), dated as of April 25, 2023, by and between TERI G. GALARDI (the "Debtor") and Thomas T. McClendon, as Liquidating Trustee ("Liquidating Trustee"), is made and executed in connection with the *Amended Joint Chapter 11 Plan of Reorganization of Teri G. Galardi and the Committee of Unsecured Creditors*, under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), dated April 10, 2023 (as may thereafter be amended, the "Plan"), in the U.S. Bankruptcy Court for the Middle District of Georgia, Macon Division (the "Bankruptcy Court"), which Plan was confirmed by Order of the Bankruptcy Court dated April 14, 2023.

The Plan provides for the establishment of the "Galardi Creditors Trust" (hereinafter referred to as the "Creditors Trust") to liquidate certain assets of the Debtor and distribute the net proceeds of the trust in accordance with the terms and conditions of the Plan.

### RECITALS

**WHEREAS**, Teri G. Galardi filed a voluntary petition on January 12, 2022 (the "Petition Date");

**WHEREAS**, on April 14, 2023, the Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order"); and

**WHEREAS**, the Plan provides for the distributions of Cash from the Creditors Trust to the holders of Allowed Class 8 Unsecured Claims, as specifically provided for herein and in the Plan, which holders comprise one hundred percent (100%) of the holders of beneficial interests of the trust created hereby (the "Beneficiaries"); and

**WHEREAS**, the Plan provides for the creation of the trust to hold the Trust Assets in trust for the benefit of all Beneficiaries pursuant to the terms of this Creditors Trust and the Plan; and

**WHEREAS**, this Trust Agreement is executed to establish the Creditors Trust (as defined in Section 2 hereof) and to facilitate implementation of the Plan and fund of payments to holders of Allowed Class 8 Unsecured Claims under the Plan; and

**WHEREAS**, the primary purpose of the Creditors Trust is to liquidate the Trust Assets for the benefit of the Beneficiaries in accordance with Treasury Regulation Section 301.7701-4(d) and the Creditors Trust will not be operated with the objective of continuing or engaging in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Creditors Trust; and

**WHEREAS**, the Creditors Trust is intended to qualify as a liquidating trust that is treated as a "grantor trust" for federal income tax purposes and the Liquidating Trustee shall operate and maintain the Creditors Trust in compliance with Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, and Treasury Regulation Sections 1.671-4(a) and 301.7701-4(d) and all subsequent guidelines regarding liquidating trusts issued by the Internal Revenue Service; and

i

**WHEREAS**, the Beneficiaries desire to exchange their Allowed Class 8 Claims or Interests under the Plan for Beneficial Interests in the Creditors Trust.

## AGREEMENTS

**NOW THEREFORE**, for and in consideration of the premises, and the mutual promises and agreements contained in the Plan and the Creditors Trust, the receipt and sufficiency of which are hereby expressly acknowledged, the Debtor and Liquidating Trustee hereby agree as follows:

**SECTION I.    DEFINITIONS**

**1.1    Terms Defined in Recitals.** As used in this Liquidating Trust Agreement, each of the terms "Trust Agreement," "Debtor," "Liquidating Trustee," "Bankruptcy Code," "Plan," "Bankruptcy Court," "Petition Date," and "Confirmation Order" shall have the meanings set forth in the Plan.

**1.2    Terms Defined in the Plan.** Capitalized terms used in this Trust Agreement without definition shall have the meanings assigned to them in the Plan. Terms defined in the Bankruptcy Code and not otherwise specifically defined in the Plan or herein shall, when used herein, have the meanings attributed to them in the Bankruptcy Code.

**SECTION II.    AUTHORITY OF AND CERTAIN DIRECTIONS TO LIQUIDATING TRUSTEE: DECLARATION OF TRUST**

**2.1    Creation of Creditors Trust.** Pursuant to the Plan and the Confirmation Order, and effective as of the Effective Date of the Plan, the Beneficiaries and Debtor hereby create the Creditors Trust, to be formally known as the "Galardi Creditors Trust," for the benefit of the Beneficiaries. Pursuant to the terms of the Plan, the Debtor executes this Trust Agreement and irrevocably transfers, absolutely assigns, conveys, sets over, and delivers to the Creditors Trust, and its successors and assigns, all right, title and interest of the Debtor in and to the Trust Assets (as defined herein), in trust, to and for the benefit of the Beneficiaries for the uses and purposes stated herein and in the Plan, except as may otherwise be specifically provided by the Plan. The Debtor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation, and will cooperate and take such other actions as the Liquidating Trustee may deem reasonably necessary or desirable to transfer, convey, and assign all rights, title, and interests, in the Trust Assets to the Creditors Trust.

**2.2    Purpose of Creditors Trust.** This Creditors Trust is created and organized for the sole purposes of collecting, holding, liquidating, and distributing the Trust Assets and administering, compromising, settling, withdrawing, objecting to Class 8 Unsecured Claims under the Plan, with no objective to engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Creditors Trust. In accordance with such express and limited purposes, as of the Effective Date, the Creditors Trust is hereby authorized and directed: (i) to take any and all steps necessary to maintain the Creditors Trust as a liquidating trust for federal income tax purposes in accordance with Treasury Regulation § 301.7701-4(d) and as a "grantor trust" subject to the provisions of Subchapter J, Subpart E of the IRC unless otherwise required; (ii) to take all reasonable and necessary actions to conserve and protect the Trust Estate; (iii) to administer, compromise, and settle Class 8 Unsecured Claims, (iv)

2

to the extent necessary and appropriate, and as provided in the Plan, object to any Class 8 Claims asserted against the Debtor's Estate and the Creditors Trust; and (v) to maintain, operate, or lease (for purposes of holding for sale), or sell or otherwise liquidate or dispose of the Trust Assets, in accordance with the terms of this Liquidating Trust Agreement, the Plan, and the Confirmation Order, and to distribute the net proceeds of such disposition to the Beneficiaries, in as prompt, efficient, and orderly a fashion as possible in accordance with the provisions hereof.

       **2.3**    **Title to Trust Assets.** Upon the transfer of the certain Assets of the Debtor, to the Creditors Trust as provided in the Plan, the Liquidating Trustee shall succeed to the Debtor's right, title, and interest in the Trust Assets and the Debtor will have no further interest in or with respect to the Trust Assets or the Creditors Trust. The **"Trust Assets"** shall consist of the Assets listed on **Exhibit "A"** attached hereto and incorporated herein by this express reference thereto.

       **2.4**    **Tax Treatment of Transfer of the Assets to the Creditors Trust.** For all federal income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee, and the Beneficiaries) shall treat the transfer of the Trust Assets to the Creditors Trust, as set forth in Sections 2.1 and 2.3 of this Liquidating Trust Agreement and in accordance with the Plan, as a transfer of such Trust Assets to the Beneficiaries and a transfer by the Beneficiaries of such Trust Assets to the Creditors Trust. In all events, the Beneficiaries of the Creditors Trust shall be treated as the grantors and deemed owners of the Creditors Trust.

       For the avoidance of any doubt, following the contribution of Trust Assets to the Creditors Trust pursuant to Article 4.1 and 4.3 of the Plan and Sections 2.1 and 2.3 hereof, the Liquidating Trustee shall have standing to administer the Trust Assets, and accept compromises and settle any Class 8 Unsecured Claims on behalf of the Creditors Trust.

       **2.5**    **Assignment and Assumption of Claims.** In accordance with Section 1141 of the Bankruptcy Code and Section 2.1 hereof, the Debtor hereby transfers and assigns the Trust Assets to the Creditors Trust free and clear of any Liens, Claims, interests, encumbrances, or any liability of any kind and the Liquidating Trustee, on behalf of the Creditors Trust, hereby assumes and agrees that all such Trust Assets will be transferred to the Creditors Trust free and clear of any Liens, Claims, interests, encumbrances, or any liability of any kind.

       **2.6**    **Property in the Creditors Trust.** The Creditors Trust shall hold the legal title to all property at any time constituting a part of the Trust Estate and shall hold such property in trust to be administered and disposed of by it pursuant to the terms of this Trust Agreement, the Plan, and the Confirmation Order for the benefit of the Beneficiaries. The Liquidating Trustee is authorized to make disbursements and payments from the Trust Estate in accordance with the provisions of Sections 5 and 6 of this Liquidating Trust Agreement and pursuant to the Plan.

       **2.7**    **Valuation of Trust Assets.** As soon as possible after the Effective Date, and within the time frame required by applicable Treasury Regulations, the Liquidating Trustee, based upon his good faith determination after consultation with his counsel and other professionals, shall inform the Beneficiaries in writing solely as to his estimate of the value of the Trust Assets transferred to the Creditors Trust. The valuation shall be used consistently by all parties (including, without limitation, the Debtor, the Liquidating Trustee, and the Beneficiaries) for federal income tax purposes; *provided, however*, that such valuation shall not be binding on the Liquidating

Trustee or any other party for any other purposes, including without limitation, in regard to the liquidation of the Trust Assets, whether by disposition, liquidation, litigation, settlement, or otherwise.

**2.8    Continuation of the Automatic Stay.**  In furtherance of the implementation of the Plan, except as otherwise provided in the Plan, all injunctions or stays provided for in the Bankruptcy Case, pursuant to Sections 105, 362, or 1141 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect and apply to all creditors and Beneficiaries holding claims against the Debtor, the Debtor's Estates, the Trust Assets, the Liquidating Trustee, and the Creditors Trust until the Final Distribution Date.

## SECTION III.    *BENEFICIAL INTERESTS.*

**3.1    No Transfer or Exchange.**  Unless the Liquidating Trustee determines otherwise, Beneficial Interests in the Creditors Trust shall not be transferable.  In the event the Liquidating Trustee does authorize the transfer of Beneficial Interests, the Liquidating Trustee, with the advice of counsel, shall establish procedures to govern the registration and transfer of Beneficial Interests ("Permitted Transfer").  Once such procedures have been established, if ever, the Liquidating Trustee shall notify all holders of Beneficial Interests of such procedures.  Notwithstanding the foregoing, a transfer of a Beneficial Interest shall be not be permitted by the Liquidating Trustee if such transfer would be contrary to maintaining the Creditors Trust as a liquidating trust for federal income tax purposes in accordance with Treasury Regulation § 301.7701-4(d) and as a "grantor trust" subject to the provisions of Subchapter J, Subpart E of the IRC.

**3.2    No Certification.**  Unless the Liquidating Trustee determines otherwise, the Beneficial Interests will not be certificated and no security of any sort will be distributed to the Beneficiaries with respect to their interest in the Creditors Trust.  In the event the Liquidating Trustee does permit the certification of the Beneficial Interests, the Liquidating Trustee, with the advice of counsel, shall establish procedures to govern such certification.  Once such procedures have been established, if ever, the Liquidating Trustee shall notify all Beneficiaries of such procedures.

**3.3    Absolute Owners.**  The Liquidating Trustee may deem and treat the persons who are Beneficiaries (as determined in accordance with the Plan) as the absolute owners of the Beneficial Interests in the Creditors Trust for the purpose of receiving distributions and payments thereof, or on account thereof, and for all other purposes whatsoever.  Unless the Liquidating Trustee receives actual written notice of a Permitted Transfer from the duly authorized transferee not less than thirty (30) days prior to a distribution made pursuant to the terms of this Liquidating Trust Agreement, and subject to the applicable provisions of Bankruptcy Rule 3001(e), the Liquidating Trustee shall have no duty or obligation to make or direct any distributions or payments to such transferee of a Permitted Transfer.

**3.4    Means of Payment.**  Cash payable to Beneficiaries pursuant to Section 5 hereto will be paid by checks drawn on a domestic bank account maintained by the Creditors Trust or by wire transfer from a domestic bank account maintained by the Creditors Trust at the option of the Liquidating Trustee.

**3.5    Amount of Payment.**   The amount of Cash payments and distributions to Beneficiaries shall be made and calculated in accordance with the Plan, and the sole discretion of the Liquidating Trustee.

**3.6    Acceptance of Conveyance.**   The Liquidating Trustee is hereby directed to, and the Liquidating Trustee agrees that he will: (a) accept delivery of the Trust Assets on behalf of the Creditors Trust;  (b) accept all bills of sale, deeds, assumptions and assignments, and all other instruments of conveyance required to be delivered by the Debtor or the Trustee with respect to the Trust Assets transferred to the Liquidating Trustee on behalf of the Creditors Trust pursuant to or in connection with the Plan, the Confirmation Order, or this Liquidating Trust Agreement; and (c) take such other action as may be required of the Creditors Trust hereunder, including the receipt and acceptance as part of the Trust Estate of any property or rights, including, without limitation, notes, other negotiable instruments, and claims belonging to the Debtor or her Estate.

**3.7    Title.**   On the Effective Date, legal title to the Trust Assets shall be vested in the Creditors Trust in accordance with and pursuant to the terms of the Plan and this Trust Agreement. Without limiting the foregoing, on the Effective Date, the Liquidating Trustee, on behalf of the Creditors Trust, shall be authorized to act as representative of the Debtor's Estate in respect of any and all Class 8 Unsecured Claims and be substituted as successor to Debtor and Reorganized Debtor in all actions and proceedings pending or thereafter commenced in the Bankruptcy Court or elsewhere in regarding any disputes over the allowance of an Unsecured Claim.

## SECTION IV.   *ADMINISTRATION OF TRUST ESTATE.*

**4.1    Claims Reserves.**

a.    As more particularly and definitively provided in the Plan, the Liquidating Trustee shall establish a reserve fund (the "Disputed Claims Reserve") for the payment by the Liquidating Trustee of all Disputed Class 8 Unsecured Claims participating in the Trust.  Each time a distribution is made to any Class 8 Unsecured Claim so participating, the Liquidating Trustee shall deposit into the Disputed Claims Reserve an amount equal to the distribution that each holder of a participating Disputed Class 8 Unsecured Claim would have received were the face amount of its Disputed Class 8 Claim been an Allowed Claim.  At the time a Person's Disputed Class 8 Unsecured Claim is allowed, in whole or in part, such Person shall receive from the Disputed Claims Reserve, a distribution equal to the distributions such Person would have received on account of its Allowed Class 8 Claim had it been an Allowed Class 8 Claim at the time of such prior distributions, with any surplus Cash held in the Disputed Claims Reserve on account of such Disputed Class 8 Claim becoming generally available for use by the Liquidating Trustee. Such Person shall also become a new Beneficiary of the Creditors Trust and such Person shall be deemed, at such time, to have received a distribution of assets of the Trust Estate equal to the amount of the Allowed Class 8 Claim immediately followed by a transfer by such Person to the Creditors Trust of such assets and said new Beneficiary shall be treated, at such time, as a new grantor and deemed owner and Beneficiary of the Creditors Trust to the extent of his Allowed Class 8 Claim.

**4.2    Administrative Powers of the Liquidating Trustee.**   During the Liquidating Trustee's administration of the Creditors Trust, and subject to: (i) all the other provisions of this

Liquidating Trust Agreement (including, but not limited to, Sections 4.3 and 4.4) and (ii) the Plan, the Liquidating Trustee may exercise the power:

(i)     To receive and hold all of the assets of the Trust Estate and to have exclusive possession and control thereof as permissible under applicable law;

(ii)     To manage, market, sell, and convert all or any portion of the assets in the Trust Estate to Cash and distribute the net distributable proceeds as specified in the Plan and this Trust Agreement;

(iii)    To enter into, perform, and exercise rights under contracts binding upon the Creditors Trust (but not upon the Liquidating Trustee in his respective individual or corporate capacity) which are reasonably incident to the administration of the Creditors Trust and which the Liquidating Trustee, in the exercise of his best business judgment, reasonably believes to be in the best interests of the Creditors Trust;

(iv)    To delegate his authority under this Creditors Trust to other persons, provided that such delegation must be made pursuant to a written agreement that has been approved by the Bankruptcy Court in conjunction with the confirmation of the Plan;

(v)     To establish and maintain accounts at banks and other financial institutions, in a clearly specified fiduciary capacity, into which Cash and property of the Trust may be deposited, and draw checks or make withdrawals from such accounts, and to pay or distribute such amounts of the Trust Estate, all as permitted or required under the Plan and this Trust Agreement;

(vi)    To employ attorneys, accountants, real estate agents, real estate brokers, appraisers, expert witnesses, insurance adjusters, or other persons whose services may be reasonably necessary or advisable in the sole judgment of the Liquidating Trustee to advise or assist him in the discharge of his duties as Liquidating Trustee, or otherwise in the exercise of any powers vested in the Liquidating Trustee, and to pay reasonable compensation to such attorneys, accountants, real estate agents, real estate brokers, appraisers, expert witnesses, insurance adjusters, or other persons out of the Trust Estate;

(vii)   Pursuant to Section 1123(a)(5)(D) of the Bankruptcy Code, to sell or otherwise dispose of, and liquidate or convert to Cash, any assets of the Trust Estate, either subject to or free of any Lien, or distribute all or any part of the property of the Trust Estate among those having an interest in such property of the Trust Estate;

(viii)  To pay any and all reasonable and necessary expenses attributable or relating to the management, maintenance, operation, preservation, or liquidation of the Trust Estate;

(ix)    Unless otherwise provided in the Plan, to investigate, file, compromise, settle, withdraw, or litigate in the Bankruptcy Court or on appeal (or pursuant to a withdrawal of the reference of jurisdiction) objections to Class 8 Claims filed against the Debtor's Estate, the Trust Estate, or the Creditors Trust;

(x)    To sue or be sued in connection with any matter arising from or related to the Plan or this Trust Agreement that affects in any way the rights or obligations of the Creditors Trust, the Liquidating Trustee, or the Beneficiaries;

(xi)   To represent the interests of the Beneficiaries with respect to any matters relating to the Plan, this Trust Agreement, or the Creditors Trust affecting the rights of such Beneficiaries;

(xii)  If the Creditors Trust shall become subject to federal or state income tax, the Liquidating Trustee shall have the power, exercisable at his reasonable discretion, to take any action reasonably necessary to minimize any adverse federal or state income tax consequences to the Beneficiaries resulting from any distribution made by the Creditors Trust to such Beneficiaries;

(xiii) In general, without in any manner limiting any of the foregoing or the following, to deal with the Trust Assets or any part or parts thereof in all other ways as would be lawful for any person owning the same to deal therewith; *provided, however,* that the investment powers of the Liquidating Trustee, other than those reasonably necessary to maintain the value of the Trust Assets of the Creditors Trust and to further the liquidating purpose of the Creditors Trust, are limited by the terms herein;

(xiv)  To do any and all other things, not in violation of any other terms of the Plan, the Confirmation Order, and this Liquidating Trust Agreement, which, in the reasonable business judgment of the Liquidating Trustee, are necessary or appropriate for the proper liquidation, management, investment and distribution of the assets of the Trust Estate in accordance with the provisions of this Trust Agreement and the Plan;

(xv)   To file tax returns for the Creditors Trust.

**4.3    Limitations on Liquidating Trustee; Investments.**

a.    **No Trade or Business.**  The Liquidating Trustee shall carry out the purposes of the Creditors Trust and the directions contained herein and shall not at any time cause the Creditors Trust to enter into or engage in any business (except as may be consistent with the limited purposes of the Creditors Trust), including, without limitation, the purchase of any assets or property (other than such assets or property as are reasonably necessary to carry out the purposes of the Trust Agreement, on behalf of the Creditors Trust or the Beneficiaries).  The Liquidating Trustee is directed to take all reasonable and necessary actions to dispose of the Trust Estate in as prompt, efficient, and orderly a fashion as possible, to make timely distributions of the proceeds of the Trust Estate, and to otherwise not unduly prolong the duration of the Creditors Trust.

b.    **Investments.**  Except as otherwise provided in the Plan, the Liquidating Trustee shall invest any monies held at any time as part of this Trust Estate, and every other reserve or escrow fund established pursuant to the terms of this Trust Agreement, only in interest-bearing deposits or certificates of deposit issued by any federally insured banking institution or short-term investments, including short-term obligations of, or unconditionally guaranteed as to payment by, the United States of America and its agencies or instrumentalities, pending the need for the disbursement thereof in payment of costs, expenses, and liabilities of the Creditors Trust or in

making distributions pursuant to Section 5 of this Trust Agreement. The Liquidating Trustee shall be restricted to the collection and holding of such monies and any income earned on such monies and to the payment and distribution thereof (at least annually if such monies are not necessary to maintain the value of the Trust Estate or to satisfy Claims against the Trust Estate) for the purposes set forth in the Plan and this Trust Agreement, and to the conservation and protection of the Trust Estate in accordance with the provisions hereof.

**4.4    Bankruptcy Court Approval of Settlements Are Not Required.** Notwithstanding the provisions of the Plan, the Liquidating Trustee is authorized to compromise and settle any Unsecured Class 8 Claim regardless of the amount of such Unsecured Class 8 Claim without Bankruptcy Court approval.

**4.5    Transferee Liabilities.** If any liability shall be asserted against the Creditors Trust, as transferee of the Trust Estate, on account of any claimed liability of or through the Debtor, the Liquidating Trustee may use such part of the Trust Assets as may be necessary in contesting any such claimed liability and in payment, compromise, settlement, and discharge thereof on terms reasonably satisfactory to the Liquidating Trustee. In no event shall the Liquidating Trustee be required or obligated to use his own property, funds, or assets for any such purposes.

**4.6    Administration of Trust.** In administering the Creditors Trust, the Liquidating Trustee, subject to the express limitations contained herein, is authorized and directed to do and perform all such acts, to execute and deliver such deeds, bills of sale, instruments of conveyance, and other documents as he may deem reasonably necessary or advisable to carry out the purposes of the Creditors Trust.

**4.7    Payment of Expenses and Other Liabilities.** The Liquidating Trustee shall pay all reasonable expenses, charges, liabilities and obligations of the Creditors Trust, including without limiting the generality of the foregoing, such debts, liabilities, or obligations as may be payable from the Trust Estate, interest, taxes, assessments, and public charges of every kind and nature, and the costs, charges and expenses in connection with or arising out of the execution or administration of the Creditors Trust and the Trust Estate, and such other payments and disbursements as are provided for in this Trust Agreement or which may be reasonably determined by the Liquidating Trustee to be proper charges against the Creditors Trust and the Trust Estate, and the Liquidating Trustee, in his reasonable discretion and business judgment may determine to be necessary or advisable to meet or satisfy unascertained, unliquidated or contingent liabilities of the Creditors Trust. The Liquidating Trustee shall make such payments without application to or order of the Bankruptcy Court, except as otherwise herein expressly provided.

**4.8    Liquidating Trustee Fees.** The Liquidating Trustee is entitled to reasonable compensation for services performed pursuant to the terms of and in accordance with the terms of this Trust Agreement. The Liquidating Trustee will be paid at their standard hourly rate customarily charged to other clients or such other compensation arrangement approved by the Bankruptcy Court as a part of confirmation of the Plan.

**4.9    Fiscal Year.** The Creditors Trust's fiscal year shall end on December 31 of each year, unless the Liquidating Trustee deems it advisable to establish some other date on which the fiscal year of the Creditors Trust shall end.

**4.10   Reports.** The Liquidating Trustee shall:

a.   Prepare and file unaudited interim financial reports as may be required by regulatory authorities, applicable laws, rules or regulations or as the Liquidating Trustee deems advisable during the fiscal year;

b.   Prepare, file and mail, within the time required by applicable law or regulation, necessary income tax information, tax returns or reports to the Beneficiaries and applicable taxing authorities, including, on an annual basis, the manner and calculation of the Creditors Trust's taxable gain or loss which the Creditors Trust would recognize if it were a separate taxable entity.  In this connection, the Liquidating Trustee shall file returns for the Creditors Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a); and

c.   As soon as practicable after each calendar quarter, and in no event later than thirty (30) days after the end of each quarter, the Liquidating Trustee shall submit to the United States Trustee, and any Beneficiary who requests copies of such quarterly report after the Confirmation Date, an unaudited written report and account showing:

(i)   the assets and liabilities of the Creditors Trust;

(ii)   any distributions made and expenses paid pursuant to the Plan and the Trust Agreement during that calendar quarter;

(iii)   any changes in the Trust Assets that have not been previously reported; and,

(iv)   any material action taken by the Liquidating Trustee in the performance of his or her duties under the Trust Agreement that has not been previously reported.

**4.11   Abandonment of Assets.** The Liquidating Trustee may abandon or otherwise not accept any Trust Assets that the Liquidating Trustee believes, in good faith, has no value or will be unduly burdensome to the Liquidating Trust by filing a notice of abandonment on the Bankruptcy Court's docket in this case or serving a notice of such abandonment upon Debtor. Any Trust Assets that the Liquidating Trustee so abandons or otherwise does not accept shall cease to be Trust Assets.

**SECTION V.   *PAYMENTS AND DISTRIBUTIONS.***

**5.1   Distributions to Beneficiaries.**

a.   As often as in the reasonable discretion and judgment of the Liquidating Trustee there shall be available cash in an amount sufficient to render feasible a distribution of Cash to the Beneficiaries, the Liquidating Trustee shall transfer and pay, or cause to be transferred and paid, to the Beneficiaries (subject to the provisions of Section 3 hereof) such aggregate amount of Available Cash, if any, as shall then be held in the Creditors Trust, excluding reasonable amounts of Cash needed to pay the expenses, debts, charges, liabilities and obligations of the Creditors Trust (the "Distribution Amount").  The aggregate amounts required to be distributed to the Beneficiaries shall be determined by the Liquidating Trustee pursuant to and in accordance

with the terms of the Plan and this Trust Agreement. The Distribution Amount(s) shall be paid to the Beneficiaries at least annually so long as there are sufficient funds to make distributions and shall be determined by the Liquidating Trustee in his reasonable discretion and his determination shall be final and conclusive on all persons, in the absence of gross negligence or willful misconduct on the part of the Liquidating Trustee, and shall not be reviewed by the Bankruptcy Court. In determining the amount of any such distribution, the Creditors Trust may rely and shall be fully protected in relying upon the advice and opinion of independent public accountants or of counsel to the Creditors Trust.

    b.  All payments to be made hereunder to the Beneficiaries shall be made only from the Available Cash, and income and proceeds thereof, and only to the extent that the Liquidating Trustee shall have received sufficient Available Cash, income or proceeds thereof to make such payments in accordance with the terms of this Section 5. Each Beneficiary shall look solely to the assets, income and proceeds of the Creditors Trust available for distribution to such Beneficiary as herein provided.

    c.  If any distribution on a Class 8 Unsecured Claim ("Unsecured Distribution") is tendered by the Liquidating Trustee to a Holder of a Class 8 Unsecured Claim and returned, refused or otherwise improperly returned or otherwise not cashed for a period of 120 days ("Unsecured Distribution Refusal"), the Liquidating Trustee shall not be responsible for making any further Unsecured Distribution on account of such Unsecured Claim and may stop payment on the check representing such distribution. Accordingly, in the event of an Unsecured Distribution Refusal, the Liquidating Trustee shall be relieved of any obligation to make said payment or distribution and shall disburse the distribution pro rata to the other holders of Class 8 Unsecured Claims.

  **5.2**  **Establishment of the Claim Accounts.** The Liquidating Trustee will establish on the Creditors Trust's books and records an account representing each Allowed or Disputed Unsecured Class 8 Claim as set forth on the official claims register maintained by the Clerk of the Bankruptcy Court to the extent that such claim is participating in the Creditors Trust (each, a "Claim Account"). It is expressly understood that the establishment of the Claim Accounts by the Liquidating Trustee or his agents is solely for administrative convenience, and that amounts allocable to such Claim Accounts need not be segregated and may be commingled for investment purposes as specified herein. The Liquidating Trustee may rely on the official claims register as correct.

  **5.3**  **Distributions from Trust Estate.** Distributions will be made to the Beneficiaries in accordance with the terms of the Plan and the Claim Accounts will be adjusted by the Liquidating Trustee to reflect such distributions.

  **5.4**  **Fractional Distributions.** No distribution in fractions of cents shall be issued. If the Distribution Amount allocated to an Allowed Class 8 Claim or Interest at the time of a distribution hereunder would include fractions of cents, the amount to be distributed shall be rounded down to the highest integral number of cents in the applicable Claim Account, but such rounding down shall not affect such allocation. The aggregate amount of the retained fractional distributions from the Distribution Amount shall be retained in the Creditors Trust by the Liquidating Trustee and shall remain part of the Trust Estate.

**5.5     Final Distribution.** Upon the final collection or liquidation of all of the assets, rights and interests comprising the Trust Estate, and in any event prior to the Termination Date (as defined in Section 5.6 hereof), the Liquidating Trustee shall prepare a final accounting of any and all monies remaining in any accounts maintained by the Liquidating Trustee on behalf of the Creditors Trust (the "Final Cash"). Once the amount of the Final Cash has been determined, the Liquidating Trustee shall make the Final Distribution, in accordance with the Plan and this Trust Agreement.

**5.6     Termination Date.** The Creditors Trust shall terminate on such date that all assets in the Trust Estate have been distributed (the "Termination Date"). However, the term of the Creditors Trust shall not exceed five (5) years from the Effective Date, provided that, upon a finding that an extension is necessary to the liquidating purpose of the Creditors Trust and upon approval by the Bankruptcy Court, the term may be extended for a finite term based on the particular facts and circumstances. Each such extension must be approved by the Bankruptcy Court within six (6) months of the beginning of the extended term. The Liquidating Trustee shall be released of all liabilities and discharged from his or her obligations under the Plan or this Trust Agreement once the Creditors Trust has terminated.

**SECTION VI.     *OTHER DUTIES OF THE LIQUIDATING TRUSTEE.***

**6.1     Management of Trust Estate.** With respect to the assets of the Trust Estate, the Liquidating Trustee may purchase and maintain in existence such insurance as the Liquidating Trustee deems reasonable and necessary or appropriate from time to time to protect the Creditors Trust, the Trust Assets, the Liquidating Trustee, and the Beneficiaries' interests in the assets of the Trust Estate or from any potential claims or liabilities relating thereto or the distribution thereof.

**6.2     Tax and Related Matters.** Pursuant to and in accordance with the Plan, the Liquidating Trustee shall be responsible for all tax matters of the Trust Estate, including, but not limited to, the filing of all tax returns and other filings with governmental authorities on behalf of the Trust Estate for time periods ending on or before the final tax day, including the filing of tax returns for the Creditors Trust as a grantor trust pursuant to § 1.671-4(a) of the United States Income Tax Regulations, the filing of determination requests under Section 505(b) of the Bankruptcy Code, and responding to any tax audits of the Trust Estate. The Liquidating Trustee shall provide such information to the Beneficiaries as will enable them to properly file their separate tax returns and withhold and pay over any amounts required by tax law. The Liquidating Trustee is authorized to act as agent for the Trust Estate in withholding or paying over any amounts required by law (including tax law) to be withheld or paid with respect to the Trust Estate. The Creditors Trust shall file all income tax returns with respect to any income attributable to the Disputed Claims Reserve and shall pay the federal, state, and local income taxes attributable to the Disputed Claims Reserve, based on the items of income, deduction, credit, or loss allocable thereto. The Liquidating Trustee shall be entitled to deduct any federal or state withholding taxes from any payments made with respect to Allowed Unsecured Claims, as appropriate. To receive distributions under the Liquidating Trust, all Holders of a Class 8 Unsecured Claim must provide evidence of their tax identification number reasonably acceptable to the Liquidating Trustee within six (6) months of the Effective Date. The Liquidating Trustee shall report all distributions as income to the appropriate taxing authorities.

6.3    **No Implied Duties.** The Liquidating Trustee shall not manage, control, use, sell, dispose, collect, or otherwise deal with the Trust Estate or otherwise take any action hereunder except as expressly provided herein, and no implied duties or obligations whatsoever of the Liquidating Trustee shall be read into this Trust Agreement.

**SECTION VII.   *CONCERNING THE LIQUIDATING TRUSTEE.***

7.1    **Acceptance by Liquidating Trustee.**   The Liquidating Trustee accepts the Creditors Trust hereby created for the benefit of the Beneficiaries and agrees to act as Liquidating Trustee of the Creditors Trust pursuant to the terms of this Trust Agreement and the Plan.   The Liquidating Trustee shall have and exercise the rights and powers herein granted and shall be charged solely with the performance of the duties herein declared on the part of Liquidating Trustee.   The Liquidating Trustee also agrees to receive and disburse all monies actually received by him constituting part of the Trust Estate pursuant to the terms of this Trust Agreement and the Plan.

7.2    **Discretionary Submission of Questions.** Subject to the provisions of this Section 7, the Liquidating Trustee, in his sole discretion and reasonable business judgment, may, but shall not be required to, submit to the Bankruptcy Court, from time to time, any question or questions with respect to which the Liquidating Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Liquidating Trustee with respect to the Trust Estate, or any part thereof, and the administration and distribution of the Trust Estate.   The written authorization of the Bankruptcy Court set forth in a Final Order shall constitute approval by the Bankruptcy Court of the proposed action to be taken by the Liquidating Trustee.   All costs and expenses incurred by the Creditors Trust in the exercise of any right, power, authority conferred by this Section 7.2 shall be costs and reasonable expenses of the Trust Estate.

7.3    **Liability of the Liquidating Trustee.**

a.    **Limitation on Liability.**   No provision of this Trust Agreement shall be construed to impart any liability upon the Liquidating Trustee unless it shall be proven that the Liquidating Trustee's actions or omissions constituted gross negligence or willful misconduct in the exercise of or failure to exercise any right or power vested in the Liquidating Trustee under this Trust Agreement.

b.    **Reliance on Certificates or Opinions.**   In the absence of gross negligence or willful misconduct on the part of the Liquidating Trustee, the Creditors Trust may conclusively rely on the truth of the statements and correctness of the opinions expressed upon any certificates or opinions furnished to the Liquidating Trustee and conforming to the requirements of this Trust Agreement.

c.    **Discretion of Liquidating Trustee.**   The Liquidating Trustee, within the limitations and restrictions expressed and imposed by this Trust Agreement, may act freely under all or any of the rights, powers and authority conferred hereby, in all matters concerning the Trust Estate, after forming his best reasonable business judgment based upon the circumstances of any particular question or situation as to the best course to pursue, without the necessity of obtaining

the consent or permission or authorization of the Beneficiaries, the Bankruptcy Court, or of any official or officer; and the rights, powers and authority conferred on the Liquidating Trustee by this Trust Agreement are conferred in contemplation of such freedom of reasonable business judgment and action within the limitations and restrictions so expressed and imposed; *provided, however*, that the Liquidating Trustee shall not be liable for any error or exercise of judgment, unless it shall be proved that such Liquidating Trustee was grossly negligent or acted in a manner which constituted willful misconduct.

**7.4     Reliance by Liquidating Trustee.**

a.     **Genuineness of Documents.** The Liquidating Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, objection, order, judgment, decree, or other paper or document reasonably believed by him to be genuine and to have been signed, made, entered, or presented by the proper party, parties, official, officials, entity or entities.

b.     **Retention of Counsel.** The Liquidating Trustee may retain and consult with legal counsel, independent public accountants, and other experts. The Liquidating Trustee shall not be liable for any action taken or suffered by him or omitted to be taken by him without gross negligence or willful misconduct in reliance on any opinion or certification of such accountants or in accordance with the advice of such counsel or experts, provided that such accountants, counsel and experts were selected and retained with reasonable care.

**7.5     Reliance on Liquidating Trustee.** No person dealing with the Liquidating Trustee shall be obligated to see to the application of any monies, securities, or other property paid or delivered to them or to inquire into the expediency or propriety of any transaction or the right, power, or authority of the Liquidating Trustee to enter into or consummate the same upon such terms as the Liquidating Trustee may deem advisable. Persons dealing with the Liquidating Trustee shall look only to the Trust Estate to satisfy any liability incurred by the Liquidating Trustee to such persons in carrying out the terms of this Trust Agreement, and, except as otherwise expressly provided herein, the Liquidating Trustee shall have no personal, individual or corporate obligation to satisfy any such liability.

**7.6     Indemnification.**

a.     **Indemnification of Liquidating Trustee and Agents.** The Liquidating Trustee hereby agrees that the Creditors Trust will indemnify to the full extent of the Trust Estate any person or entity who was or is a party, or is threatened to be made a party to any threatened, pending, or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative by reason of the fact that such person or entity is or was a Liquidating Trustee or an employee, attorney or agent of the Creditors Trust or Liquidating Trustee, from and against any and all expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such person or entity in connection with such action, suit or proceeding, including appeals thereof, if such person or entity acted without gross negligence and willful misconduct in the exercise and performance of any power or duties of such person or entity in accordance with this Trust Agreement.

b.  **Payment of Expenses.**  Expenses (including attorneys' fees) incurred in defending any action, suit, or proceeding referred to in this Section 7.6 may be paid by the Creditors Trust from the Trust Assets in advance of the final disposition of such action, suit, or proceeding, upon an undertaking by the Liquidating Trustee or an employee or agent of the Creditors Trust entitled to be indemnified.

c.  **Insurance.**  The Creditors Trust may maintain insurance during its existence and after its termination, at its expense, to protect itself and the Liquidating Trustee, and each of their officers, employees or agents of and from any liability, whether or not the Creditors Trust would have the legal power to directly indemnify the Liquidating Trustee and each of its officers, employees, or agents against such liability. The terms "Liquidating Trustee," "employer" or "agent" as used herein, where applicable, include the heirs, successors, executors, administrators, personal representatives, or estates of such persons or entities.

d.  **Costs and Expenses of Liquidating Trustee.**  Except as set forth in subsection c, the Liquidating Trustee shall pay out of the Trust Assets, on a monthly basis and without notice or application to the Bankruptcy Court, all reasonable costs, expenses, and obligations incurred by the Liquidating Trustee in carrying out his duties under the Liquidating Trust Agreement or in any manner connected, incidental, or related to the administration of the Creditors Trust, including, without limitation:

(i)  Any reasonable, documented fees and out-of-pocket expenses of attorneys, accountants, investment advisors, expert witnesses, insurance adjusters, professionals, or other persons whom the Liquidating Trustee may reasonably deem advisable to employ in connection with the Creditors Trust in accordance with the terms of this Trust Agreement; and

(ii)  Any taxes, charges and assessments which may be owed by, or levied or assessed against, the Trust Estate or any property held in trust pursuant to the Trust Agreement.

After the Effective Date of the Plan, any professionals who have received reimbursement of fees and expenses from the Creditors Trust shall apply to the Bankruptcy Court for approval of such fees and expenses no less than once every six (6) months.

**7.7   Resignation and Removal.**

a.  **Resignation.**  The Liquidating Trustee may resign and be discharged from any future obligations and liabilities hereunder by giving written notice thereof to the Bankruptcy Court at least thirty (30) days prior to the effective date of such resignation. Such resignation shall become effective on the date specified in such notice.

b.  **Removal.**  The Liquidating Trustee may be removed at any time by order of the Bankruptcy Court upon motion by any party in interest, pursuant to the standard under applicable law for removal of a Chapter 7 trustee. Upon any such removal, such removed Liquidating Trustee shall be entitled to any reimbursement and indemnification set forth in this Trust Agreement which remain due and owing to such Liquidating Trustee at the time of such removal.

c.      **Appointment of a Successor Liquidating Trustee.** If, at any time, the Liquidating Trustee shall give notice of his intent to resign pursuant to Section 7.7 hereof or be removed or shall become incapable of acting, counsel to the Liquidating Trustee shall provide notice thereof to the Bankruptcy Court. The Creditors Committee or the United States Trustee, with the approval of the Bankruptcy Court, shall designate a successor Liquidating Trustee to act under this Trust Agreement.

d.      **Acceptance of Appointment by Successor Liquidating Trustee.** Any successor Liquidating Trustee appointed hereunder shall execute an instrument accepting such appointment hereunder and shall deliver counterparts thereof to the Bankruptcy Court. Thereupon, such successor Liquidating Trustee shall, without any further act, become vested with all of the estates, properties, rights, powers, trusts, and duties of his predecessor in the Creditors Trust hereunder with like effect as if originally named herein.

e.      **Trust Continuance.** The death, resignation, incompetency, or removal of the Liquidating Trustee shall operate neither to terminate the Creditors Trust created by this Trust Agreement nor to revoke any existing agency created pursuant to the terms of this Trust Agreement or invalidate in any action theretofore taken by such Liquidating Trustee. In the event of the resignation or removal of the Liquidating Trustee, such Liquidating Trustee shall (i) promptly execute and deliver any such documents, instruments, and other writing as maybe necessary to effect the termination of such Liquidating Trustee's capacity under this Trust Agreement and the conveyance of the Trust Estate then held by such Liquidating Trustee to the temporary or successor trustee; (ii) deliver to the temporary or successor trustee all documents, instruments, records, and other writings relating to the Creditors Trust or Trust Estate as may be in the possession of such Liquidating Trustee; and (iii) otherwise assist and cooperate in effecting the transfer and assumption of his obligations and functions by the temporary or successor trustee.

## SECTION VIII. *SUPPLEMENTS AND AMENDMENTS TO THIS LIQUIDATING TRUST AGREEMENT.*

**8.1      Supplements and Amendments.** Subject to the provisions of Sections 2, 8.2, and 8.3 hereof, at any time and from time to time, and subject to approval by the Bankruptcy Court if sought by the Liquidating Trustee pursuant to Section 7.2 of this Trust Agreement, the Liquidating Trustee may execute a supplement or amendment hereto for the purpose of adding provisions to, or changing or eliminating provisions of, this Trust Agreement, or amendments thereto; *provided, however*, that no such supplement or amendment shall (i) require any Beneficiary to furnish or advance funds to the Liquidating Trustee or shall entail any additional personal liability or the surrender of any individual right on the part of any Beneficiary except with the written consent of such Beneficiary, or (ii) without the consent of those Beneficiaries holding not less than seventy-five percent (in aggregate dollar amount) of the Beneficial Interests, change or modify any other provisions for distribution of the Trust Estate. In no event shall this Trust Agreement be amended so as to change the purposes of the Creditors Trust as set forth in Section 2 or the treatment of Claims under the Plan and this Trust Agreement.

**8.2      Liquidating Trustee, Declining to Execute Documents.** If, in the reasonable opinion of the Liquidating Trustee, any document required to be executed pursuant to Section 8.1 hereof materially and adversely affects any immunity or indemnity in favor of the Liquidating

Trustee under this Trust Agreement, the Liquidating Trustee may in his discretion decline to execute such document.

**8.3    Notice of Form of Supplement and Amendments Requiring Vote or Consent.** A copy of each amendment or supplement (or a fair summary thereof) shall be furnished to the Beneficiaries, promptly after the execution thereof, except that with respect to any proposed amendment or supplement for which the consent of the Beneficiaries is required, the form of such proposed supplement or amendment (or a fair summary thereof) shall be furnished to the applicable Beneficiaries prior to the Liquidating Trustee seeking the approval thereof by vote or consent of such necessary parties.

**8.4    Notice and Effect of Executed Amendment.** Upon the execution of any declaration of amendment or supplement, this Trust Agreement shall be deemed to be modified and amended in accordance therewith and the respective rights, limitations of rights, obligations, duties and immunities under this Trust Agreement of the Liquidating Trustee and the Beneficiaries shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modification and amendment, and all the terms and conditions of any such amendment or supplement shall be thereby deemed to be part of the terms and conditions of this Trust Agreement for any and all purposes.

## SECTION IX.    *MISCELLANEOUS.*

**9.1    Title to Trust Estate.** No Beneficiary or any other party other than the Creditors Trust shall have title to any part of the Trust Estate.

**9.2    Sales of Assets of the Trust Estate.** Any sale or other conveyance of any assets of the Trust Estate, or part thereof, by the Liquidating Trustee made in accordance with the terms of this Trust Agreement shall bind the Beneficiaries and shall be effective to transfer or convey all right, title and interest of the Liquidating Trustee and the Beneficiaries in and to such asset of the Trust Estate.

**9.3    Notices.** Unless otherwise expressly specified or permitted by the terms of the Plan or this Trust Agreement, all notices shall be in writing and delivered by registered or certified mail, return receipt requested, or by a hand or facsimile transmission (and confirmed by mail), in any such case addressed as follows:

**If to the Liquidating Trustee:**

Thomas T. McClendon
JONES & WALDEN, LLC
699 Piedmont Ave NE
Atlanta, Georgia 30303
tmcclendon@joneswalden.com

**If to any Beneficiary:**

addressed to its latest mailing address reflected on the Claims List.

**If to the Debtor:**

Teri G. Galardi
2146 Hwy 42 South
Flovilla, Georgia 30216

With a copy to:
Louis G. McBryan
McBryan, LLC
6849 Peachtree Dunwoody Road
Building B-3, Suite 100
Atlanta, Georgia 30328
lmcbryan@mcbryanlaw.com
Counsel for Debtor

And a copy to:
Christopher W. Terry
BOYER TERRY LLC
348 Cotton Avenue, Suite 200
Macon, Georgia 31201
chris@boyerterry.com
Counsel for Debtor

     **9.4     Severability.** Any provision of this Trust Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

     **9.5     Counterparts.** This Trust Agreement may be executed in multiple counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument.

     **9.6     Binding Agreement.** All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Debtor and her respective successors and assigns, the Liquidating Trustee and his respective successors and assigns and any successor Liquidating Trustee provided for in Section 7, his respective successors and assigns, and the Beneficiaries, and their respective personal representatives, successors and assigns. Any request, notice, direction, consent, waiver or other instrument or action by any party hereto or any Beneficiary shall bind their respective heirs, personal representatives, successors and assigns.

     **9.7     No Personal Liability of Beneficiaries.** The Beneficiaries will not incur any personal liability through their ownership or possession of their Beneficial Interests, except for taxes imposed on the Beneficiaries pursuant to applicable provisions of federal, state or local law with respect to the receipt of such Beneficial Interests or distributions from or transactions of the Creditors Trust and other charges specified herein. Liabilities of the Creditors Trust are to be

satisfied in all events (including the exhaustion of the Trust Estate) exclusively from the Trust Estate and such liabilities are not to attach to or be paid from any amounts distributed to the Beneficiaries, regardless of the time at which such distribution took place, or from the assets of the Beneficiaries.

**9.8    Headings.**  The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

**9.9    Construction.**  Except where the context otherwise requires, words importing the masculine gender shall include the feminine and the neuter, if appropriate; words importing the singular number shall include the plural number and vice versa; and words importing persons shall include partnerships, associations, and corporations.

**9.10    Governing Law.**  This Trust Agreement, including all matters of construction, validity and performance hereof, shall in all respects be governed by, and construed and interpreted in accordance with the internal laws of the State of Georgia without reference to the choice of law provisions of the same.

**9.11    Construction with the Plan.**  The Plan is hereby incorporated fully by reference and is made a part hereof for all purposes.  In the event of any inconsistency or conflict between the terms, conditions, definitions and provisions of this Trust Agreement and the terms, conditions and provisions of the Plan, the terms, conditions, definitions, and provisions of the Plan shall control.

**9.12    Subject to Bankruptcy Court's Jurisdiction.**  The Bankruptcy Court shall retain jurisdiction over this Creditors Trust, the Trust Estate, the Liquidating Trustee, and the Debtor to issue all orders and to take other actions necessary to the implementation of this Trust Agreement, such jurisdiction to include, without limitation, the jurisdiction contemplated by Section 1142 of the Bankruptcy Code.

**9.13    Intention of the Parties.**  The Debtor, the Beneficiaries and the Liquidating Trustee hereby express their intent to create and maintain the Creditors Trust as a liquidating trust for Federal income tax purposes in accordance with Treasury Regulation §301.7701-4(d) and as a "grantor trust" subject to the provisions of Subchapter J, Subpart E of the IRC, and the Liquidating Trustee further represents that the Creditors Trust shall not: (a) receive transfers of listed stocks or securities, any readily-marketable assets (other than those constituting the Trust Estate), or any assets of a going business; or (b) receive and will not retain Cash in excess of a reasonable amount to meet claims and contingent liabilities, determined in the reasonable discretion of the Liquidating Trustee in accordance with the provisions of Section 4 and 5 hereof.

*[Signatures on following page.]*

**IN WITNESS WHEREOF,** the parties have executed and have hereunto caused this Liquidating Trust Agreement to be duly executed, as of the day and year first written above.

**THOMAS T. MCCLENDON**

Thomas T. McClendon
Title: Liquidating Trustee

**TERI G. GALARDI**

Teri G. Galardi, Debtor

19

# EXHIBIT "A"

## GALARDI CREDITORS TRUST

### List of "Trust Assets"

Cash:

1. Balance of Trust Deposits          $6,636,277.35

Real Property:

2. 18511 Royal Hammock Blvd, Naples, Florida      Est. $595,200.00

3. 4766 Frontage Road, Forest Park, Georgia      Est. $360,000.00

Promissory Note:

4. GCT Promissory Note from Teri G. Galardi:      Est. $2,408,522.65



**XS MPBA**

TRK# 7738 0542 6889

0201

FRI - 20 OCT 10:30A
PRIORITY OVERNIGHT

33128
MIA
FL-US

ORIGIN ID:QFEA   (404) 584-9300
JONES & WALDEN, LLC
JONES & WALDEN, LLC
699 PIEDMONT AVE NE
ATLANTA, GA 30308
UNITED STATES US

TO  CLERK, U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
ATTN: CIVIL FILING
400 NORTH MIAMI AVE, 8TH FLOOR
MIAMI FL 33128
(305) 523-5100

SHIP DATE: 18OCT23
ACTWGT: 1.00 LB
CAD: 105679807/INET4680

BILL SENDER

REF: GAL ADD/TRUST ATTYS
DEPT:

INV:
PO:

FedEx Express

583J1/8C89/9AE3

After printing this label:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.